UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

| | |
|---|---|
| In re: | Chapter 7 |
| US Capital/Fashion Mall, LLC; | Case No. 14-32819-JKO |
| US Capital Holdings, LLC; | *Jointly Administered* |
| Mapuche LLC | Case Nos. 14-32819-JKO |
| | 14-32822-JKO, 14-32827-JKO |
|        Debtors, | |

_____/

### DEBTORS' RESPONSE TO GANGLU'S REQUEST FOR STAY RELIEF[1]

Mapuche, LLC ("Mapuche"), US Capital Holdings, LLC and US Capital/Fashion Mall, LLC (collectively, the "Debtors"), pursuant to Fed. R. Bankr. P. 4001 and Local Rule 4001-1, file their response in partial opposition to and in conditional agreement with the *Motion of Tangshan Ganglu Iron & Steel Company, Ltd.* ("Ganglu") *for Relief from the Automatic Stay pursuant to 11 U.S.C. section 362(d) and Federal Rule of Bankruptcy Procedure 4001* (ECF #10) (the "Stay Relief Motion"), to take certain action in a circuit court case, Case No. 14-0009677(19) (the "Lawsuit"), and state:

### INTRODUCTION

Ordinarily, a debtor would have no interest in a dispute over its governing documents. However, a debtor always has an interest in good faith and fair dealing in all things that concern it. Here, Mapuche has no funds to hire counsel and, by otherwise applicable law, may only be heard through counsel. Granting Ganglu stay relief – to begin a lengthy motions practice process, substantial legal argument, and possible trial (without Mapuche having legal counsel) – implicates notions of good faith and fair dealing.

---

[1] The response herein also addresses that certain Stipulation (defined herein) between the Trustee and Ganglu. Debtors note that the representations of the Stipulation are binding upon the parties to the Stipulation, including Ganglu, irrespective of whether this Court grants stay relief. *See In re O'Neill*, 468 B.R. 308, 337 (Bankr. N.D. Ill. 2012) *quoting PPX Enters., Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 123 (2d Cir.1984).

Moreover, on the facts presented before the Court, Ganglu lacks legal standing to request stay relief. There is an unresolved question about whether (or not) there will be a distribution to equity. *See* ECF Nos. 53, 54 and 55.  Also, as presented in the schedules, the Section 341 Meeting of Creditors, and in summary argument hereinafter, Ganglu may not hold a claim against the estate.

At this time, consideration of the Stay Relief Motion ought to be denied without prejudice to bring it before the Court if it is later determined that equity is "in the money".

Finally, and irrespective of the foregoing, inasmuch as Ganglu bears the burden of proof to demonstrate "cause" exists for stay relief, its Stay Relief Motion is woefully inelegant and, absent evidence not yet presented, fails on its face.

## SUMMARY OF RESPONSE

1.      The Debtors have little to no objection to stay relief to submit the Proposed Order (defined herein) to the Honorable Jack Tutor and for his entry of an order that he deems appropriate to memorialize his October 3, 2014 oral ruling in the Lawsuit.  Submission of the Proposed Order ought to be done by the Trustee without comment or argument of any kind whatsoever by the Trustee, Ganglu, Mapuche, their principals or their counsel.

2.      However, the Debtors strenuously object to Ganglu's request that this Court allow Ganglu to litigate the Lawsuit's tangential dispute regarding which operating agreement governs Mapuche (the "Sideshow"). At this point in the bankruptcy case, litigating the Sideshow has no legitimate purpose and is highly prejudicial to the Debtors.

3.      Ganglu filed a two count complaint[2] in the Lawsuit requesting: (1) judicial dissolution of Mapuche; and (2) appointment of a professional fiduciary.  Through the filing of Mapuche's Chapter 7 case, such relief has been granted. Moreover, the Sideshow issues are wholly moot following Ganglu's stipulation that "(i) the Bankruptcy Court is the appropriate forum to

---

[2] Attached hereto as Exhibit "1" is a copy of Ganglu's *Second Amended Complaint for Judicial Dissolution of Limited Liability Company and for Injunctive Relief and Appointment of Equitable Receiver/Custodian.*

preserve and to dispose of the Debtors' property … and (ii) the Trustee is an appropriate fiduciary for these purposes" (ECF No. 38) (the "Stipulation").

4.      Query: If by the commencement of the chapter 7 cases Ganglu has already obtained the complete relief sought in the Lawsuit, what is its true motive in seeking stay relief now? And, as important, why is Ganglu concealing it (because it surely is not evident in its moving papers)?

## BACKGROUND

5.      The Debtors are affiliated limited liability companies. Mapuche, LLC owns 100% of the equity interest in U.S. Capital Holdings, LLC and, in turn U.S. Capital Holdings, LLC owns 100% of the equity interest in U.S. Capital/Fashion Mall, LLC.  U.S. Capital/Fashion Mall, LLC owns approximately 33.617 acre real property located in the City of Plantation (Broward County), Florida where formerly the Plantation Fashion Mall was located and operated.  Immediately prior to the commencement of the bankruptcy case, U.S. Capital Holding was engaged in the renovation of an office tower on a portion of the real property owned by U.S. Capital/Fashion Mall.  A consequence of the bankruptcy filing has been for the construction lender (who curiously, also is the general contractor for the office tower project) to declare a post-petition default on account of the filing and to stop work on the construction.

6.      On or about May 20, 2014, Ganglu commenced the Lawsuit by filing a complaint with the 17th Judicial Circuit in and for Broward County, Florida.  The Lawsuit as currently framed sought and seeks only two things: (i) judicial dissolution of Mapuche; and, (ii) the appointment of an equitable receiver/conservator (the "Core Relief Sought").

7.      Tangentially related to the Core Relief Sought, a dispute arose in the Lawsuit regarding which operating agreement governed Mapuche. Given the commencement of the Chapter 7 bankruptcy cases, the tangential matter has devolved from tangent to Sideshow.

8.      The Sideshow required extensive discovery, motions practice, argument, several days of evidentiary hearings and exhausted resources of all parties and the court.[3]  The Sideshow culminated in an October 3, 2014 hearing at which time Judge Tutor orated his findings of fact in connection with the dispute (including that a signature on a certain document was not authentic).[4]

9.      Subsequent to this hearing, the Debtors filed voluntary petitions under Chapter 7 of the Bankruptcy Code on October 14, 2014.

10.     The cases are assigned to the same bankruptcy judge, the Honorable John Olson.[5]

11.      The cases are assigned to the same chapter 7 bankruptcy trustee, Trustee Kenneth Welt.

12.     The Debtors' bankruptcy cases have been jointly administered. (ECF No. 48).

13.     Through the filing of the Chapter 7 cases, Ganglu achieved, in all regards, the Core Relief Sought in the Lawsuit: (i) the judicial dissolution of Mapuche; and (ii) the appointment of a professional fiduciary to do so.  In fact, the Debtors humbly submit that, with the utmost respect to the Florida judicial system, a Chapter 7 bankruptcy proceeding is a superior mechanism to advance a judicial liquidation of Mapuche.[6] In the Stipulation, Ganglu concedes same.

---

[3] "[T]he parties conducted extensive discovery, including the taking of numerous depositions, and ... a three day evidentiary hearing...." Stay Relief Motion at ¶ 9.

[4] "I believe Mr. Du did not execute that document. I believe Mr. Chen had a multiplicity of reasons to take him a document to get executed that he may or may not have signed, and I'm not making a finding that Mr. Chen did or did not sign that document." Tr. October 3, 2014, at 6, 1-7.

[5] Judge Olson also presided over the 2012 Chapter 11 reorganizations of US Capital Holding, LLC and US Capital/Fashion Mall, LLC (Case Nos. 12-14517 and 12-14519 respectively).

[6] *Compare* Title 11 of the U.S. Code *with* Florida Statute § 608.441. Chapter 7 of the Bankruptcy Code has a direct lineage to the Bankruptcy Act of 1898, a statue with almost 120 years of decisional law. Juxtaposed against Florida's law on limited liability companies, first adopted (but little used) in 1982, Florida's LLC statute did not have much traction until significant amendments in 1998 and 2002 and it remains with scant decisional law at the trial and appellate levels. *See* Stuart R. Cohn and Stuart D. Ames, Florida Business Laws Annotated 257-258 (Thomson Reuters) (2014-2015). Moreover, to the extent that litigation is necessary to recover assets here, bankruptcy has many features superior to Florida courts. For example, the bankruptcy rules provide for service of process within the United States by first class mail, postage prepaid; bankruptcy judgments are immediately recognized throughout the United States without resort to the laws of domestication of foreign judgments; and, while judicial resources are dear in both the federal (bankruptcy) and state systems, it is generally accepted that bankruptcy is a rocket docket, as compared to the state courts, certainly

14.     Notwithstanding that Ganglu obtained the Core Relief Sought, on October 17, 2014 (three days after the commencement of the bankruptcy cases), Ganglu filed its Stay Relief Motion to advance the Sideshow.

15.     According to the Stay Relief Motion, Ganglu "moves this Court for relief from the automatic stay and entry of an order pursuant to 11 U.S.C. section 363(d) for the limited purpose of permitting: (i) Ganglu to proceed with obtaining an Order concerning findings of fact, already promulgated by the Honorable Jack Tutor of the 17th Judicial Circuit in and for Broward County, Florida in the matter styled as Tangshan Ganglu Iron & Steel Company, Ltd. v. Mapuche LLC and Wei Chen at case No. CACE-14-009677 (the "State Court Action"); and (ii) the State Court Action to proceed to solely address the issue of whether Ganglu ratified the actions of Mr. Chen." Stay Relief Motion at p.1 (internal abbreviations omitted).

16.     On November 3, 2014, the Trustee and Ganglu filed the Stipulation agreeing that the Bankruptcy Court is the appropriate forum to preserve and to dispose of the Debtors' property and to address transfers of property of the estates, and that the Trustee is an appropriate fiduciary to do so.

## ANALYSIS AND ARGUMENT

### *Ganglu's Stay Relief Motion Fails to Assert Adequate 'Cause' for Stay Relief*

17.     No cause exists to permit stay relief to Ganglu to advance the Sideshow. All three bankruptcy cases are in their infancy.[7]  Asset preservation is the order of the day, not continuation of litigation which itself is wasteful and, until equity in the assets is proven (if ever), unnecessary. As Judge Tutor admonished in Exhibit "A" to Ganglu's Stay Relief Motion:

---

Broward County Circuit Court.

[7] Notwithstanding that only a short time has passed since the commencement of these cases, they have advanced admirably. Full and complete bankruptcy schedules and statements of financial affairs were timely filed. The Section 341 Meeting(s) of Creditors were held and have been concluded. The Trustee has been granted authority to, among other things, engage counsel and certain other professionals, to operate, and the Trustee has filed a motion to approve trustee-in-possession financing.  While the Debtors are not aware of all of the Trustee's efforts, as to the Trustee's efforts which the Debtors' are aware, the Trustee is actively and effectively administering and advancing these cases. Upon information and belief, the Trustee would agree that the Debtors have completely and fully cooperated with him.

> I'm telling you lawyers here that I could see **an exorbitant amount of money spent on legal costs over the next two or three years and everybody simply swimming in place, nothing getting done, nothing getting accomplished**, and that is not why I'm here as a business court judge, and that's not why these parties retained you all. So I would hope that you all could see if you could find some way to facilitate, whether it be a new Operating Agreement that everyone could live with or some other mechanism you can all find and help these parties put their business transaction back on track.

Ganglu's Stay Relief Motion, Exhibit "A" at p. 10 (emphasis added).

18.     That said, while the Debtors believe it is unnecessary (especially in the first days of their bankruptcy cases), the Debtors have no objection to the entry of an order by Judge Tutor that he deems appropriately reflects his oral ruling.

19.     The Debtors' consent is expressly condition upon submission of the form proposed order attached hereto as Exhibit "2" (the "Proposed Order").[8] Moreover, Debtors' consent is also expressly conditioned upon having the Trustee transmit the Proposed Order without comment or argument from the Trustee, Ganglu, the Debtors, their principals, or counselors. In other words, the Debtors would consent to limited stay relief to allow the Trustee to convey to Judge Tutor the Proposed Order with a copy of this Court's Order granting limited stay relief which would advise Judge Tutor that he is free from the bankruptcy automatic stay to enter whatever form of order he deems appropriate to memorialize his October 3, 2014 findings of fact but, at this time, to go no further with the case.

20.     The Debtors' consent is premised upon the fact that while wasteful and unnecessary, submission of a proposed interlocutory order which was prepared pre-petition and which they believe accurately reflects Judge Tutor's oral ruling (albeit with Mapuche disagreeing with the ruling), is not unduly prejudicial.

---

[8] The Proposed Order is a "clean" copy (i.e., an "accept all changes") version of the proposed order which was last sent to Mapuche's state court counsel by Ganglu's counsel on or about Oct 13, 2014.

21.     That said, to permit stay relief for Ganglu to brief and argue and entirely new question of law is unnecessary and contrary to existing decisional law. *See In re Plumberex Specialty Products, Inc.*, 311 B.R. 551, 564 (Bankr. C.D. Cal. 2004) (denying stay relief to litigate a contempt proceeding following a non-bankruptcy court's entry of judgment against the debtor).

**_Analysis and Application of the Stay Relief Factors to the Facts at Bar_**

22.     In determining whether to lift the automatic stay so a party may commence or continue litigation in another forum, generally courts "balance the hardship to the [movant], if he is not allowed to proceed with his lawsuit, against potential prejudice to the debtor, debtor's estate and other creditors." *In re R.J. Groover Const., LLC*, 411 B.R. 473, 477 (Bankr. S.D. Ga. 2008); *see In re Anthony*, No. 8:13-BK-00922-KRM, 2013 WL 3326023, at *2 (Bankr. M.D. Fla. July 1, 2013).

23.     "The judiciary must determine 'cause' by examining the totality of the circumstances in each particular case." *In re Aloisi*, 261 B.R. 504, 508 (Bankr. M.D. Fla. 2001).

24.     Courts have identified the following factors to assist in their analysis of the totality of the circumstances:

> (1) whether relief would result in a partial or complete resolution of the issues;
> (2) lack of any connection with or interference with the bankruptcy case;
> (3) whether the other proceeding involves the debtor as a fiduciary;
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
> (5) whether the debtor's insurer has assumed full responsibility for defending it;
> (6) whether the action primarily involves third parties;
> (7) whether litigation in another forum would prejudice the interests of other creditors;
> (8) whether the judgment claim arising from the other action is subject to equitable subordination;
> (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
> (10) the interests of judicial economy and the expeditious and economical resolution of litigation;
> (11) whether the parties are ready for trial in the other proceeding; and
> (12) impact of the stay on the parties and the balance of harms.

(the "Stay Relief Factors"). *In re R.J. Groover Const., L.L.C.*, 411 B.R. 460, 464 (Bankr. S.D. Ga. 2008) *citing Sonnax Indus. Inc. v. Tri Component Prod. Corp. (In re Sonnax Indus., Inc.),* 907 F.2d 1280, 1286 (2d Cir. 1990).

25.     The Automatic Stay "is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions." *Javens v. City of Hazel Park (In re Javens),* 107 F.3d 359, 363 (6th Cir. 1997) (quoting H.R. REP. NO. 95-595, at 340 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6296).

26.     Ganglu, an equity interest holder of Mapuche, cannot carry its burden to prove that cause exists to lift the automatic stay. *See* 11 U.S.C. § 362(d)(1)("upon the request of a party in interest and after notice and a hearing, the Court shall grant relief from the [automatic] stay . . . **for cause**, including lack of adequate protection . . . ") (emphasis added).

27.     In its Stay Relief Motion, Ganglu sweeps aside the significance of the Stay Relief Factors that overtly weigh against granting stay relief.  According to Ganglu, "other than the impact of the stay and the balance of harms, virtually none of the [Stay Relief Factors] are at play…." Stay Relief Motion at ¶18.

28.     Ganglu's cursory pronouncement ignores the fulsome analytical heft expected by this Court. A more complete 'totality of the circumstances' analysis would include, for example:

> a.      **Factor 1 – whether relief would result in a partial or complete resolution of the issues** – weighs against granting stay relief. If stay relief were granted to allow Ganglu to advance the Sideshow, it would not resolve the issues sought by the Lawsuit.  The Core Relief Sought by the Lawsuit has already been obtained by Ganglu.

> b.      **Factor 2 – lack of any connection with or interference with the bankruptcy case** – weighs against granting stay relief.  The bankruptcy cases are in their infancy and the Trustee ought to be dedicating resources to preserving the estate assets including analyzing the books and records of the debtor entities. The Debtors (and their former employees) have fully cooperated with the Trustee and ought not be distracted by needless litigation in the Sideshow.

c.      **Factor 5 – whether the debtor's insurer has assumed full responsibility for defending it** – weighs against stay relief.  The Debtors do not have insurance coverage to defend the Lawsuit and will not have resources to engage counsel on their behalf.[9]

d.      **Factor 7 – whether litigation in another forum would prejudice the interests of other creditors** – weighs against stay relief.  Creditors of Mapuche's bankruptcy estate ought to have notice of the dispute and an opportunity to object to continuing litigation that would require debtor resources.

e.      **Factor 8 – whether the judgment claim arising from the other action is subject to equitable subordination** – weighs against stay relief. Whatever claims that equity is awarded in the Lawsuit will necessarily be subordinate to the claims of creditors in Mapuche's bankruptcy case.

f.      **Factor 10 – the interests of judicial economy and the expeditious and economical resolution of litigation** – weighs against stay relief.  It is unnecessary for any party to employ resources to litigate the Sideshow.

g.      **Factor 11 – whether the parties are ready for trial in the other proceeding** – weighs against stay relief. If stay relief were granted it would require extensive motions practice with respect to the ratification issue.

h.      **Factor 12 - impact of the stay on the parties and the balance of harms** – weighs against stay relief.  Stay relief would allow Ganglu to advance litigation against Mapuche, a debtor entity without resources to engage counsel for its defense.

29.      Ganglu does not carry its burden with respect to any of the relief sought in the Stay Relief Motion.  11 U.S.C. section 362 (g).  Moreover, Ganglu cannot not satisfy a whole host of the requirements for stay relief as is required by the Local Rules of this District.  See, e.g., Local Rule 4001-1(B).

30.      Ganglu's entire argument in favor of its request for stay relief appears to be that there is no harm to the Debtor's estate.  Stay Relief Motion at ¶ 19.

31.      First, Ganglu's argument is inaccurate.  To permit stay relief for Ganglu to brief and argue and entirely new question of law is highly prejudicial.  Upon the commencement of the chapter 7 bankruptcy cases, the Debtors are essentially without counsel in the Lawsuit with Ganglu.  Undersigned counsel has been hired to commence a chapter 7 bankruptcy and for certain legal tasks

---

[9] See *In re Aloisi*, 261 B.R. 504, 508 (Bankr. M.D. Fla. 2001) (denying motion for stay relief where debtor did not have available funds to defend non-bankruptcy action).

9

directly associated therewith, e.g., assisting the Debtors in completing bankruptcy schedules and statements of financial affairs and representing the Debtors at their Section 341 Meeting(s) of creditors. Representing Mapuche in a state court lawsuit is outside of the scope of undersigned counsel's engagement. Mapuche's prior lawyer in the Lawsuit is without sufficient retainer to represent Mapuche's interest and, frankly, to the extent any pre-petition retainer remains with Mapuche's state court counsel, the chapter 7 bankruptcy trustee is likely to request it sent to the bankruptcy estate as expenditures of funds for litigation in another forum is improvident and inconsistent with the goals of a chapter 7 case.

32.     Second, the absence of harm to the Debtor does not independently constitute "cause" for stay relief. In the receivership/ injunction standard context, courts will not grant injunction-type relief (such as the appointment of a receiver) merely because the measure can do no harm. *See Apalachicola N. R. Co. v. Sommers*, 85 So. 361, 362 (1920) *quoting Lehman v. Trust Co. of Am.*, 49 So. 502, 503 (1909) ("That there is no case in which the court appoints a receiver merely because the measure can do no harm.").

33.     Finally, in its 'balance of harms' analysis, Ganglu fails to articulate a single "harm" that Ganglu would suffer if stay relief is not granted. One wonders, what is Ganglu's motivation?

### *The Curious Case of Benjamin Button[10] (or Did Ganglu Put Any Money into Mapuche)?*

34.     As set out on their bankruptcy petitions, US Capital Holdings and US Capital/Fashion Mall emerged from chapter 11 bankruptcy some two short years ago. See Case Nos. 12-14517-JKO (the "CH. 11 Case"); 12-14519-RBR, respectively. As part of their confirmed plans of reorganization Mapuche was to have infused approximately $50,000,000 in new funding. See Ch. 11 Case ECF No. 258 at §6.1. While it appears that Mapuche received approximately $43,650,000 from 12 different sources, Ganglu was not one of them. Moreover, in connection with

---

[10] "The Curious Case of Benjamin Button" is a short story written by F. Scott Fitzgerald and published in 1922. A screen adaptation loosely based on the short story was released in 2008.

the funding of the chapter 11 bankruptcy reorganization, it was reported to the Examiner that Ganglu deposited $4,000,000 in Mapuche's accounts. *See* Case No. 12-14517-JKO, ECF No. 211, p. 7.   However, after review of the bank statements, it appears that Market Energy Limited deposited the funds, not Ganglu. *See* attached Composite Exhibit "3".

35.     Composite Exhibit "3" is a curious list of wire transfers and supporting Mapuche Bank of America statements for funding appearing to come in in connection with the prior chapter 11 confirmed joint plan.  In part, it shows:

  a.     12 entities transfer $43,650,000 into Mapuche.

  b.     Then, Mapuche transfers Mr. Du $1,200,000.[11]

  c.     Then, Mr. Du transfers Mapuche $5,000,000.[12]

  d.     Then, Mapuche transfers Mr. Du $4,000,000.[13]

36.     It appears that rather than infusing money into Mapuche and its subsidiaries, Mr. Du was a net winner in transfers between himself and Mapuche. Also, from the Debtors' books and records, now in the Trustee's possession, it appears that Mr. Du and members of his immediate family received approximately $1,730,494 in purported payroll from the Debtors.  Likewise, the schedules identify any number of transfers to Mr. Chen and persons close to him which invoke an independent professional fiduciary's investigation.

37.     Bottom line and simply put, it is appropriate for the Debtors to be before the Bankruptcy Court and the assets in the stead of a professional fiduciary with the duty to investigate and, if necessary, bring litigation. At least until a distribution to equity is proven, all constituencies should focus the expenditure of resources in this forum rather than continue pre-petition fighting.

---

[11] Attached hereto as Composite Exhibit "4" reflecting wire transfers from Mapuche to Mr. Du.
[12] *See* Composite Exhibit "3".
[13] *See* Composite Exhibit "4".

## CONCLUSION

38.    Ganglu fails to carry its burden to prove "cause" to lift the automatic stay.

39.    Mapuche would be prejudiced (and unrepresented) if this Court were to grant the Stay Relief Motion.  Ganglu would suffer no harm if stay relief is not granted.

40.    The Stay Relief Factors weigh against granting Ganglu stay relief.

WHEREFORE, the Debtors seek the entry an Order: (i) permitting limited stay relief to: (a) allow the Trustee to submit the Proposed Order to the State Court without comment; and (b) to allow the State Court to enter a written order memorializing its October 3, 2014 ruling; (ii) denying stay relief in all other respects, without prejudice, including denying Ganglu's request that stay relief be granted to permit the Lawsuit to proceed to address the issue of whether Ganglu ratified the actions of Mr. Chen; and (iii) granting any other and further relief that this Court deems just and proper.

Respectfully submitted this November 21, 2014.

Messana, P.A
*Attorneys for the Debtors*
401 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Telephone: (954) 712-7400
Facsimile: (954) 712-7401
Email: tmessana@messana-law.com
/s/ Thomas M. Messana
Thomas M. Messana
Florida Bar No. 991422
Brett D. Lieberman
Florida Bar No. 69583
Thomas G. Zeichman
Florida Bar No. 99239

Exhibit "1"

IN THE CIRCUIT COURT OF THE 17th
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CIVIL DIVISION

CASE NO: CACE-14-009677 (19)

TANGSGAN GANGLU IRON & STEEL
COMPANY, LTD. a Chinese corporation

      Plaintiff,

vs.

MAPUCHE, LLC, a Florida limited liability
Company and WEI CHEN, individually,

      Defendants.

  :
  :
  :
  :
  :
  :
  :
  :
  :
  :
  :
  :

---

### SECOND AMENDED COMPLAINT FOR JUDICIAL DISSOLUTION OF LIMITED LIABILITY COMPANY AND FOR INJUNCTIVE RELIEF AND APPOINTMENT OF EQUITABLE RECEIVER/CUSTODIAN

    Plaintiff, TANGSHAN GANGLU IRON & STEEL COMPANY, LTD., a foreign corporation ("Ganglu"), by its attorneys, Duane Morris LLP, hereby files this Second Amended Complaint for Judicial Dissolution of Limited Liability Company and for Injunctive Relief and Appointment of Equitable Receiver/Custodian, in order to judicially dissolve Defendant, MAPUCHE, LLC, a Florida limited liability company ("Mapuche") and to protect the assets of Mapuche from fraud, self-dealing and waste, and states as follows:

### JURISDICTION AND VENUE

    1.    This is an action in Count I for judicial dissolution of Mapuche, pursuant to Section 608.449(2), Florida Statutes, for the appointment of a custodian for Mapuche, pursuant to Section 608.4491(3), Florida Statutes and for injunctive relief and appointment of an equitable receiver/custodian to protect the assets of Mapuche from fraud, self-dealing and waste, in Count II. The amount in controversy is in excess of $15,000.

CASE NO: CACE-14-009677 (19)

2.      Jurisdiction and venue over this action are proper in this Court, pursuant to Florida Statute Section 608.4491.

## PARTIES

3.      Plaintiff, Ganglu is a foreign corporation with its principal address at Zhenhai Dong Jie, Zunhua City, Hebei Province, People's Republic of China.  Plaintiff Ganglu is the owner of at least 80% of Mapuche.

4.      Defendant, Mapuche, is a Florida limited liability company formed on November 12, 2004.  Mapuche has its principal addresses at 375 North University Drive, Plantation, Florida 33324.  Attached hereto as **Exhibit "A"** is a document titled "Third Amended and Restated Limited Liability Company Agreement of Mapuche, LLC" (the "Third Amended Operating Agreement") that Defendant WEI CHEN and Mapuche assert is the current, valid and binding Operating Agreement for Mapuche.  Plaintiff Ganglu disputes this assertion and believes that the true Operating Agreement for Mapuche is the document attached hereto as **Exhibit "B,"** which is titled "Second Amended and Restated Limited Liability Company Agreement of Mapuche, LLC" (the "Second Amended Operating Agreement"), for the following reasons:

(a)      Prior to April 2014, Ganglu only had in its possession a document titled "Operating Agreement of Mapuche, LLC" (the "Original Operating Agreement"), which was dated September 15, 2005 and had been provided via e-mail on or about September 15, 2005, by Robert Burnett, Esq., of Becker & Poliakoff, P.A., counsel for Mapuche.

(b)      Because Ganglu believed that the Original Operating Agreement had been subsequently amended, but Ganglu did not possess a copy of such amendment, in April 2014, Ganglu, through its representative, Qui Wang ("Mr. Wang"), requested that Mapuche provide a copy of the latest amendment to the Original Operating Agreement.

DMI\4711392.3

(c)     Purportedly in response to Ganglu's request, on April 28, 2014, Grace He, Vice President of Mapuche, LLC ("Ms. He"), gave a flash drive containing **Exhibit "A"** to Mr. Wang.  At the time she gave the flash drive to Mr. Wang, Ms. He told Mr. Wang that "this [document, meaning **Exhibit "A"**], was kept by Pamela."   The reference to Pamela was understood by Ganglu to be Pamela Anselmo, Esq., of Becker & Poliakoff, P.A., counsel for Mapuche.

(d)     Based on the representations from Ms. He regarding the fact that **Exhibit "A"** had been provided by Ms. Anselmo, who is a lawyer and the attorney representing the interests of Mapuche, Ganglu did not have immediate reason to question the validity of **Exhibit "A"** and, in fact, Ganglu accepted in good faith that **Exhibit "A"** was the valid and operative amendment to the Original Operating Agreement.   Moreover, Zhen Zeng Du ("Mr. Du"), the Chairman of Ganglu, who does not read English, initially accepted, in good faith, that the document provided by Ms. He ("**Exhibit "A"**"), was indeed valid.

(e)     Ganglu began to have doubts about the validity of **Exhibit "A"** after Mr. Du realized that his signature did not appear anywhere on **Exhibit "A,"** since Mr. Du specifically recalled signing an amendment to the Original Operating Agreement.  Mr. Du also doubted the correctness of the Joint Unanimous Written Consent of Members and Managers which had been provided by Ms. He (the "Unanimous Written Consent," attached as **Exhibit "C"**) and which allegedly formed the basis for **Exhibit "A"** because the dates simply did not seem right.

(f)     As a result of these doubts, on May 21, 2014, Ganglu's attorneys requested a copy of the Second Amended Operating Agreement, which purportedly preceded **Exhibit "A"** and which was referenced in the Unanimous Written Consent.

CASE NO: CACE-14-009677 (19)

   (g)  On May 21, 2014, Mapuche, LLC's litigation counsel, Daniel DeSouza, Esq., of Becker & Poliakoff, P.A., provided a copy of the Second Amended Operating Agreement ("**Exhibit "B"**"). It appears to be signed by Mr. Du.

   (h)  On May 22, 2014, Ganglu, through its counsel, also requested Mapuche's corporate records, including resolutions, operating agreements, amendments, etc.

   (i)  On that same date, Pamela Anselmo, Esq. provided Ganglu's counsel with "Mapuche's Corporate Documents." However, the "Corporate Documents" provided by Ms. Anselmo raise more questions than they answer. In fact, they call into further question the validity of **Exhibit "A"**. For example, there are numerous inconsistencies between the information contained in the footers of the signature pages on some of these documents, when compared to the footer information found on body of the documents. This lends further credence to Ganglu's belief that **Exhibit "A"** is not the operative Operating Agreement between the parties.

  5.  Defendant WEI CHEN ("Chen") is an individual residing at 21200 NE 38th Avenue, Apartment 2703, Aventura, Florida 33180. Defendant Chen claims to be the sole Manager of Mapuche and a member of 20% of Mapuche.

**GENERAL ALLEGATIONS**

  6.  Mapuche is the sole member and owner of US Capital Holdings, LLC, a Florida limited liability company ("US Capital Holdings"), doing business as US Capital Holdings Group. US Capital Holdings, for its part, is the sole member and owner of US Capital/Fashion Mall, LLC, a Florida limited liability company ("US Capital/Fashion Mall").

  7.  Mapuche, US Capital Holdings and US Capital/Fashion Mall were created to purchase a group of properties which made up the old Plantation Fashion Mall (the "Mall

DM1\4711392.3

Properties"), and to rehab and re-develop the once high-end destination and convert it into a mixed use facility with housing, offices and shopping (the "Mall Project").

8.     As set forth more fully below, the Mall Project has been thwarted and stymied by the actions of Defendant Chen, Mapuche's Manager, who has defrauded Mapuche, has essentially abandoned his managerial duties and has sought to serve and benefit only himself.

9.     Defendant Chen, the Manager of Mapuche who is in control of the company, has acted, and is acting, in a manner that is illegal and fraudulent. Moreover, because of the actions of Defendant Chen, Mapuche's assets are being misappropriated or wasted, causing injury to Mapuche and also causing injury to Plaintiff Ganglu. Chen's self-dealing, illegal, fraudulent and wasteful conduct includes, but is not limited to, the following:

     (a)     Defendant Chen misappropriated millions of dollars from Mapuche, potentially as much as $48,650,000 of the $50,000,000 loaned to Mapuche between March and September 2012 for the development of the Mall Project, of which Plaintiff Ganglu is the guarantor. Despite repeated requests, Defendant Chen cannot account for the money.

     (b)     Defendant Chen fraudulently titled the property located at 375 North University Drive, Plantation, Florida 33324 (the site of the former Merritt Flower Shop), in his individual name, despite the fact that (i) the property was to be purchased by Mapuche as part of the Mall Project, and (ii) all monies for said purchase came from Mapuche. Attached hereto as **Exhibit "D"** is a copy of the deed for this property.

     (c)     Defendant Chen fraudulently used one of his companies, WCH Hospitality, LLC ("WCH Hospitality"), to execute a contract to purchase Sheraton Hotel, located at 311 North University Drive, Plantation, Florida 33324. That property is the current site of a Sheraton Hotel and the last remaining parcel needed to assemble the Mall Properties. Moreover, Defendant Chen and WCH Hospitality used $1,300,000.00 of Mapuche's money to pay the deposit for the

purchase of the parcel; used another $1,800,000.00 to qualify for a loan to purchase the parcel and used another $7,000,000.00 to qualify for the franchise to operate the hotel. The closing on the purchase of that property is set for June 2, 2014.

      (d)     Defendant Chen permitted the Mall Properties to deteriorate and has stood by and allowed code violations to accumulate against the Mall Properties, with fines exceeding $50,000.00 being imposed by the City of Plantation.

      (e)     Defendant Chen damaged the reputation of Mapuche and has caused a loss of confidence in Mapuche's ability to complete the Mall Project.

      (f)     Defendant Chen has either not maintained adequate books and records for Mapuche or is in the process of disappearing or destroying the existing books and records such that it will be impossible to trace the in-flow and out-flow of monies to the company.

      (g)     Defendant Chen has used Mapuche as his personal piggy bank, routinely appropriating the assets of the company for his own personal benefit, including "temporarily" borrowing large sums of money from Mapuche to cover other ventures; using Mapuche's assets to pay for expenses not related to the operations of the company; and using company resources for non-business related purposes.

**COUNT I—JUDICIAL DISSOLUTION**
**OF MAPUCHE, LLC**
**UNDER SECTIONS 608.449 AND 608.441(3), FLORIDA STATUTES**

10.    Plaintiff Ganglu re-asserts the allegations of paragraphs 1 through 9 above as if fully set forth herein.

11.    This is an action for judicial dissolution of Mapuche under Sections 608.449(2) and 608.441(3), Florida Statutes.

DM1\4711392.3

12.    The assets of Mapuche are being misappropriated or wasted by the actions of Defendant Chen.  Therefore, pursuant to Florida Statute Section 608.449(2), this Court should dissolve Mapuche.

13.    Additionally, because of the fraudulent conduct of Defendant Chen, Plaintiff no longer trusts Defendant Chen.  Without this trust, it is no longer practicable to carry on the business of Mapuche.  Therefore, pursuant to Florida Statute Section 608.441(3), this Court should dissolve Mapuche.

**WHEREFORE**, Plaintiff TANGSHAN GANGLU IRON & STEEL COMPANY, LTD. requests that this Court enter judgment (i) judicially dissolving Defendant MAPUCHE, LLC; (ii) appointing a custodian to manage the business affairs of Defendant MAPUCHE, LLC, pursuant to Sections 608.4491(3) and 608.4492, Florida Statutes; (iii) awarding to Plaintiff TANGSHAN GANGLU IRON & STEEL COMPANY, LTD. its costs in bringing this action; and (iv) awarding all other relief that the Court deems just and proper.

**COUNT II**
**TEMPORARY AND PERMANENT INJUNCTION**
**AND APPOINTMENT OF EQUITABLE RECEIVER/CUSTODIAN**

14.    Plaintiff Ganglu re-asserts the allegations of paragraphs 1 through 9 above as if fully set forth herein.

15.    This is an action for temporary and permanent injunctive relief, pursuant to Section 608.4491(3), Florida Statutes and common law and appointment of equitable receiver/custodian pursuant to common law.

16.    Plaintiff Ganglu has a clear legal right to a permanent injunction; the actions of Defendant Chen are causing and will continue to cause irreparable harm to Plaintiff and Mapuche without the issuance of an injunction herein; Plaintiff Ganglu does not have an adequate remedy at law; Plaintiff Ganglu's injury far outweighs the injury of the Defendant Chen; and an

DM1\4711392.3

injunction would serve the public interest.

17.    Plaintiff Ganglu is entitled to temporary injunctive relief, in addition to permanent injunctive relief, because such relief is required to preserve Mapuche's assets wherever located, and to carry on the business of Mapuche until a full hearing can be held.

18.    In addition, because of Chen's fraud, self-dealing and waste of Mapuche's assets, Plaintiff Ganglu is also entitled to the appointment of an equitable receiver/custodian.

**WHEREFORE**, Plaintiff TANGSHAN GANGLU IRON & STEEL COMPANY, LTD. requests that this Court enter a temporary injunction and, thereafter, a permanent injunction: (i) enjoining Defendant WEI CHEN and Mapuche from disposing of any of the assets of Mapuche, or disposing of, disappearing or destroying the existing books and records of Mapuche, or causing any further damage to the goodwill or reputation of Mapuche; (ii) requiring Defendant WEI CHEN to transfer ownership of the property located at 375 North University Drive, Plantation, Florida 33324, to Mapuche; (iii) requiring Defendant Chen to cause WCH Hospitality to assign all rights to purchase the Sheraton Hotel, located at 311 North University Drive, Plantation, Florida 33324, to Mapuche; (iv) appointing an equitable receiver/custodian to manage the affairs of Mapuche; (v) awarding to Plaintiff TANGSHAN GANGLU IRON & STEEL COMPANY, LTD. its costs in bringing this action; and (vi) granting such further relief as the Court deems just and proper.

Dated: 29nd day of May, 2014                    Respectfully submitted,


                                                **DUANE MORRIS LLP**


                                                By: /s/ Lida Rodriguez-Taseff
                                                    Lida Rodriguez-Taseff, Esq.
                                                    Florida Bar No.: 039111
                                                    LRTaseff@duanemorris.com

DM1\4711392.3

CASE NO: CACE-14-009677 (19)

Scott H. Marder, Esq.
Florida Bar No.: 894450
SHMarder@duanemorris.com
Nicole L. Levy, Esq.
Florida Bar No.: 106995
NLLevy@duanemorris.com
200 South Biscayne Boulevard, Suite 3400
Miami, Florida 33131
Telephone: 305.960.2240
Facsimile: 305.397.2443
Secondary Emails for Lida Rodriguez-
Taseff:
DPerez@duanemorris.com
YArnavat-Parga@duanemorris.com
*Attorneys for Tangshan Ganglu Iron & Steel
Company, LTD.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via Florida Courts E-Filing Portal on May 29, 2014 upon Benjamin E. Olive, Esquire, bolive@hojlaw.com; cgabler@hojlaw.com; msanchez@hojlaw.com; smascoll@hojlaw.com; kstrochlic@hojlaw.com; hbardunias@hojlaw.com; mdaugherty@hojlaw.com and Daniel DeSouza, Esquire ddesouza@bplegal.com and cgellman@bplegal.com.

/s/ Lida Rodriguez-Taseff
Lida Rodriguez-Taseff

9

Exhibit "2"

IN THE CIRCUIT COURT FOR THE
17TH JUDICIAL CIRCUIT IN AND
FOR BROWARD COUNTY, FLORIDA

Case No. CACE-14-009677 (19)

TANGSHAN GANGLU IRON & STEEL
COMPANY, LTD., a foreign corporation,

        Plaintiff,

vs.

MAPUCHE, LLC, a Florida limited
liability company and
WEI CHEN, an individual,

        Defendants.
_____/

## ORDER ON EVIDENTIARY HEARING

       THIS CAUSE came before the Court on an evidentiary hearing held on October 1, 2014 through October 3, 2014, pursuant to the Court's Order on Status Conference dated July 31, 2014, and the Court, having heard three days of testimony, having heard argument of counsel and being otherwise fully advised, makes the following findings of fact:

**A.**    **Background Findings**

       1.     On May 30, 2014, this Court granted Plaintiff TANGSHAN GANGLU IRON & STEEL COMPANY LIMITED's ("Ganglu") Motion for leave to file its Second Amended Complaint for Judicial Dissolution of Limited Liability Company (the "Second Amended Complaint").

       2.     In its Second Amended Complaint, Ganglu asserted that the true, current and binding operating agreement of Defendant MAPUCHE, LLC ("Mapuche") is the Second Amended and Restated Limited Liability Company Agreement of Mapuche, LLC dated August 21, 2006 (the "Second Operating Agreement"). Ganglu further asserted that the Third Amended and Restated Limited Liability Company Agreement of Mapuche, LLC, which was executed by Defendant WEI CHEN ("Mr. Chen") as manager of Mapuche, effective as of April 30, 2010 (the "Third Operating Agreement")(which, among other things, provides that the members waive

their right to seek judicial dissolution), is not the true, current and binding operating agreement of Defendant Mapuche. Lastly, Ganglu questioned the authenticity of Mr. Du's signature on the Joint Unanimous Written Consent of Members and Managers (Authorizing Action at Mapuche level) dated as of April 2010 (the "Joint Unanimous Written Consent").

3.     In its Answer and Affirmative Defenses to the Second Amended Complaint, Mapuche alleged that by executing the Joint Unanimous Written Consent, Ganglu waived its right to bring a judicial dissolution action. Mapuche further alleged that Ganglu had ratified the Third Operating Agreement when it relied upon it in various pleadings in state and federal court and represented it to be the governing agreement of Mapuche.

4.     In his Answer and Affirmative Defenses to the Second Amended Complaint, Mr. Chen disputed that the Second Operating Agreement was the true operating agreement of Mapuche and also alleged that by agreeing to the Third Amended Agreement and failing to object to Mr. Chen's expenditures and decisions, Ganglu waived its right to bring its claims. Mr. Chen likewise alleged that Ganglu ratified the Third Operating Agreement when it relied upon it in various pleadings in state and federal court.

5.     At the request of Defendants, this Court determined to hold an initial threshold evidentiary hearing limited to the issue of which of the two operating agreements applies -- the Second Operating Agreement or the Third Operating Agreement. This Court is permitted to conduct such a proceeding pursuant to Florida Rule of Civil Procedure 1.270, which permits the Court "in furtherance of convenience or to avoid prejudice may order a separate trial... of any separate issue or of any number of claims, crossclaims, counterclaims, third party claims, or issues."

6.     On July 31, 2014, based on the agreement of the parties, this Court issued its Order on Status Conference, stating that "[t]he trial to determine which operating agreement controls Mapuche will be held on September 22, 2014 and September 24, 2014."

7.     This Court subsequently granted Mapuche's Motion to Reschedule September 22 and September 24 Hearing Date and new dates were set for October 1, 2014 and October 2, 2014.

8.     The matter came before the Court as scheduled, on October 1, 2014 through October 3, 2014.

2

**Findings of Fact**

9.     This Court notes that it was asked to perform a limited fact-finding function - to decide whether Zhen Zeng Du, the Chairman of Ganglu ("Mr. Du"), signed the Joint Unanimous Written Consent, which would essentially make the Third Operating Agreement the binding operating agreement of Mapuche. This order does not address Defendants' contention that, even if Mr. Du did not sign the Joint Unanimous Consent, Ganglu nonetheless subsequently ratified the Third Operating Agreement, thereby making it the binding operating agreement of Mapuche. I will consider this argument and address it in a subsequent order.

10.     The Court's findings of fact are based on the credibility and believability of the witnesses.

11.     As a general matter, it appears that Mr. Chen and Mr. Du have been conducting business in a foreign language, with millions of dollars at stake, and in many instances performing this task on a handshake. There clearly were and are significant language issues between these two principals. Neither speaks English. Both were dealing with documents that were written only in English and never translated into their native language. At times, it was clear to the Court that Mr. Du had difficulty recognizing his own signature on documents that he clearly signed.

12.     Mr. Du testified that he did not sign the Joint Unanimous Written Consent.

13.     Mr. Chen testified that he took the Joint Unanimous Written Consent to Mr. Du in Philadelphia in June of 2010, together with a copy of the Third Operating Agreement, and that he received back from Mr. Du a signed copy of the Joint Unanimous Written consent (though Mr. Chen did not claim to be present when Mr. Du allegedly executed the document).

14.     The Court also heard the testimony of two very skilled and qualified experts who both rendered credible and believable opinions, but neither carried the burden over the other.

15.     The Court determines that after three full days of this hearing, this case came down to the following questions: who does the Court believe with respect to whether Mr. Du signed the Joint Unanimous Written Consent; and, secondly, would someone have had an incentive or a reason to fabricate Mr. Du's signature on the Joint Unanimous Written Consent?

16.     In the end, whether it is the civil burden, the criminal burden or the punitive damages burden; whether it is by the preponderance of the evidence, clear and convincing

evidence or the standard urge by Mr. Chen with respect to a temporary injunction, the Court believes Mr. Du's testimony that Mr. Du did not execute the Joint Unanimous Written Consent. The Court finds Mr. Du to be credible and believable, albeit at times confused, which the Court attributes to the complexity of signing American legal documents with only the benefit of family translators or without the benefit of converting the documents into his native language.

16.     Furthermore, the Court believes that Mr. Chen had a multiplicity of reasons to take to Mr. Du the Joint Unanimous Written Consent to get it executed. In so finding, the Court is not making a finding that Mr. Chen placed Mr. Du's signature on the Joint Unanimous Written Consent. The Court is only finding that Mr. Du did not place Mr. Du's signature on the Joint Unanimous Written Consent.

17.     The Court will determine the defense of ratification raised by Defendants in a subsequent order. The Court has already received a memorandum of law from Mr. Chen which Ganglu shall respond to within ten days from the date of this order.

**IT IS THEREFORE ORDERED AND ADJUDGED** that:

The Joint Unanimous Written Consent which would have made the Third Operating Agreement the binding agreement of Mapuche between the parties was not signed by Mr. Du.

DONE AND ORDERED in Chambers at Fort Lauderdale, Broward County, Florida, this ____ day of October, 2014.


_____
HONORABLE JACK TUTER
CIRCUIT COURT JUDGE


Copies furnished to:
Lida Rodriguez-Taseff, Esquire
Scott H. Marder, Esquire
Benjamin E. Olive, Esquire
Daniel DeSouza, Esquire

DM1\5066252.3

Composite Exhibit "3"

**2012 $50M Loan Wire-In Summary**
港陆 2012 五千万美元资金汇款纪录

| No. | Date Received 资金汇入 日期 | Wired From 汇款单位 | Amount Received 汇入账户净额 | Originator's Bank Charge 汇款地银行 汇款手续费 | Amount Wired from China 原始汇款汇出金额 | BOA Wire Confirmation Doc 美国银行汇 款文件 |
|---|---|---|---|---|---|---|
| 1 | 03/27/12 | Market Energy Limited | 4,000,000.00 | - | 4,000,000.00 | Received |
| 2 | 05/09/12 | Trans Wagon Int'l (HK) Co. Limited | 99,979.00 | 21.00 | 100,000.00 | Received |
| 3 | 05/10/12 | Cheer Force Investments Limited Add | 999,979.00 | 21.00 | 1,000,000.00 | Received |
| 4 | 05/10/12 | Max More Company Add. Shop 59 G/F HA | 399,979.00 | 21.00 | 400,000.00 | Received |
| 5 | 05/10/12 | Big Profit Asia Limited | 100,000.00 | - | 100,000.00 | Received |
| 6 | 05/11/12 | Grand Faith Trading Limited Add.Fla | 1,199,979.00 | 21.00 | 1,200,000.00 | Received |
| 7 | 05/11/12 | Max More Company Add. Shop 59 G/F HA | 399,979.00 | 21.00 | 400,000.00 | Received |
| 8 | 05/11/12 | Big Profit Asia Limited | 100,000.00 | - | 100,000.00 | Received |
| 9 | 05/14/12 | Grand Faith Trading Limited Add.Fla | 849,979.00 | 21.00 | 850,000.00 | Received |
| 10 | 05/14/12 | Max More Company Add. Shop 59 G/F HA | 499,979.00 | 21.00 | 500,000.00 | Received |
| 11 | 07/19/12 | Hao Yuan Investment Pte Ltd Singapore | 4,999,766.83 | 233.17 | 5,000,000.00 | Received |
| 12 | 08/02/12 | Market Energy Limited | 30,000,000.00 | - | 30,000,000.00 | Received |
| 13 | 10/22/12 | Du Zhenzeng | 5,000,000.00 | - | 5,000,000.00 | Received |
| | | **Total Fund YTD 总计** | 48,649,619.83 | 380.17 | 48,650,000.00 | |
| | | Shortage Loan Amount 欠款 | | | 1,350,000.00 | |
| | | Total Anticipated Loan 预计总款汇总额 | | | 50,000,000.00 | |



# Bank of America

H

PAGE 1 OF 1
BANK OF AMERICA, N.A.
WIRE TRANSFER ADVICE
1 FLEET WAY        PA6-580-04-05
SCRANTON, PA        18507

```
|ı|ı||ı|||ııı||ı|ı||ı|ı|||ıı||ı|ı||ıı|ı|ı||ı||ı||ı|ı
WX 0000    000 060 022125 #@01 AT 0.374
MAPUCHE, LLC
8181 W BROWARD BLVD STE 380
PLANTATION FL 33324-2033
```

DATE: 03/27/12
DIRECT INQUIRIES TO:
800.729.9673 OPTION 2
ACCOUNT: ███████5425

---

THE FOLLOWING WIRE WAS CREDITED TODAY:                    USD AMOUNT $4,000,000.00

| | | |
|---|---|---|
| TRANSACTION REF: | ███████ | SERVICE REF: ███████ |
| SENDER'S REF: | | RELATED REF: |
| ORIGINATOR: | MARKET ENERGY LIMITED | ID: |
| ORIGINATOR'S BANK: | STANDARD CHARTERED BANK | ID: |
| SENDING BANK: | STANDARD CHARTERED BANK LIMITED | ID: |
| BENEFICIARY: | MAPUCHE,LLC | ID: |

---



**Bank of America** <span>⧉</span>

H

PAGE 1 OF 1
BANK OF AMERICA, N.A.
WIRE TRANSFER ADVICE
1 FLEET WAY          PA6-580-04-05
SCRANTON, PA          18507

WX 0000    000 249 020728 #801 AT 0.374
MAPUCHE, LLC
8181 W BROWARD BLVD STE 380
PLANTATION FL 33324-2033

DATE: 05/09/12
DIRECT INQUIRIES TO:
800.729.9473 OPTION 2
ACCOUNT: ██████████5425

---

THE FOLLOWING WIRE WAS CREDITED TODAY:                    USD AMOUNT $99,979.00

TRANSACTION REF:        ███████████████          SERVICE REF: ██████████████████
SENDER'S REF:                                    RELATED REF: █
ORIGINATOR:             TRANS WAGON INT'L (HK) CO. LIMITED    ID: █
ORIGINATOR'S BANK:      BANK OF CHINA (HONG KONG ) LTD.       ID: ███████████████
SENDING BANK:           BANK OF CHINA                         ID: ███████████████
BENEFICIARY:            MAPUCHE LLC                           ID: ███████████████

PAYMENT DETAIL:         /ACC/ CHARGES DEDUCTED

---



## Bank of America

WX 0000    000 560 021686 ##01 AT 0.374
MAPUCHE, LLC
8181 W BROWARD BLVD STE 380
PLANTATION FL 33324-2033

DATE: 05/10/12
DIRECT INQUIRIES TO:
800.729.9473 OPTION 2
ACCOUNT: ███████5425

---

THE FOLLOWING WIRE WAS CREDITED TODAY:                    USD AMOUNT $100,000.00

| | |
|---|---|
| TRANSACTION REF: ████████ | SERVICE REF: ████████ |
| SENDER'S REF: | RELATED REF: |
| ORIGINATOR: BIG PROFIT ASIA LIMITED | ID: |
| ORIGINATOR'S BANK: HONG KONG AND SHANGHAI BANKING CORP | ID: |
| SENDING BANK: HSBC BANK USA | ID: |
| BENEFICIARY: MAPUCHE LLC | ID: |

PAYMENT DETAIL:    PAYMENT FOR GOODS.

---

THE FOLLOWING WIRE WAS CREDITED TODAY:                    USD AMOUNT $399,979.00

| | |
|---|---|
| TRANSACTION REF: ████████ | SERVICE REF: ████ |
| SENDER'S REF: | |
| ORIGINATOR: MAX FORE COMPANY ADD.SHOP 59 G/F HA | ID: |
| INSTRUCTING BANK: BANK OF CHINA (HONG KONG) LTD. | ID: |
| SENDING BANK: BANK OF CHINA (HONG KONG) LTD. | ID: |
| BENEFICIARY: MAPUCHE LLC | ID: |

PAYMENT DETAIL:    FEES: $21.00 DEDUCTED FROM PAYMENT. PAYMENT FOR GOODS

---

THE FOLLOWING WIRE WAS CREDITED TODAY:                    USD AMOUNT $999,979.00

| | |
|---|---|
| TRANSACTION REF: ████████ | SERVICE REF: ████ |
| SENDER'S REF: | |
| ORIGINATOR: CHEER FORCE INVESTMENTS LIMITED ADD | ID: |
| INSTRUCTING BANK: BANK OF CHINA (HONG KONG) LTD. | ID: |
| SENDING BANK: BANK OF CHINA (HONG KONG) LTD. | ID: |
| BENEFICIARY: MAPUCHE LLC | ID: |

PAYMENT DETAIL:    FEES: $21.00 DEDUCTED FROM PAYMENT. PAYMENT FOR GOODS



**Bank of America** 〰〰〰

H

PAGE 1 OF 1
BANK OF AMERICA, N.A.
WIRE TRANSFER ADVICE
1 FLEET WAY          PA6-580-04-05
SCRANTON, PA         18507

WX 0000    000 954 022885 H#01 AT 0.374
MAPUCHE, LLC
8181 W BROWARD BLVD STE 380
PLANTATION FL 33324-2033

DATE: 05/11/12
DIRECT INQUIRIES TO:
800.729.9473 OPTION 2
ACCOUNT: ███████5425

---

THE FOLLOWING WIRE WAS CREDITED TODAY:                    USD AMOUNT $100,000.00

| | | |
|---|---|---|
| TRANSACTION REF: | | SERVICE REF: |
| SENDER'S REF: | | RELATED REF: |
| ORIGINATOR: | BIG PROFIT ASIA LIMITED | ID: |
| ORIGINATOR'S BANK: | HONG KONG AND SHANGHAI BANKING CORP | ID: |
| SENDING BANK: | HSBC BANK USA | ID: |
| BENEFICIARY: | MAPUCHE LLC | ID: |

PAYMENT DETAIL:     PAYMENT FOR GOODS.

---

THE FOLLOWING WIRE WAS CREDITED TODAY:                    USD AMOUNT $399,979.00

| | | |
|---|---|---|
| TRANSACTION REF: | | SERVICE REF: |
| SENDER'S REF: | | |
| ORIGINATOR: | MAX MORE COMPANY ADD.SHOP 59 G/F HA | ID: |
| INSTRUCTING BANK: | BANK OF CHINA (HONG KONG) LTD. | ID: |
| SENDING BANK: | BANK OF CHINA (HONG KONG) LTD. | ID: |
| BENEFICIARY: | MAPUCHE LLC | ID: |

PAYMENT DETAIL:     FEES: $21.00 DEDUCTED FROM PAYMENT. PAYMENT FOR GOODS

---

THE FOLLOWING WIRE WAS CREDITED TODAY:                    USD AMOUNT $1,199,979.00

| | | |
|---|---|---|
| TRANSACTION REF: | | SERVICE REF: |
| SENDER'S REF: | | |
| ORIGINATOR: | GRAND FAITH TRADING LIMITED ADD.FLA | ID: |
| INSTRUCTING BANK: | BANK OF CHINA (HONG KONG) LTD. | ID: |
| SENDING BANK: | BANK OF CHINA (HONG KONG) LTD. | ID: |
| BENEFICIARY: | MAPUCHE LLC | ID: |

PAYMENT DETAIL:     FEES: $21.00 DEDUCTED FROM PAYMENT. RETURNS THE FUNDS



# Bank of America

H

PAGE 1 OF 1
BANK OF AMERICA, N.A.
WIRE TRANSFER ADVICE
1 FLEET WAY          PA6-580-04-05
SCRANTON, PA         18507

WX 0000    000 44: 025367 #80. AT 0.374
MAPUCHE, LLC
8181 W BROWARD BLVD STE 380
PLANTATION FL 33324-2033

DATE: 05/14/12
DIRECT INQUIRIES TO:
800.729.9673 OPTION 2
ACCOUNT: ████5425

---

THE FOLLOWING WIRE WAS CREDITED TODAY:                    USD AMOUNT $499,979.00

TRANSACTION REF: ████████████          SERVICE REF: ████████
SENDER'S REF:
ORIGINATOR:        MAX MORE COMPANY ADD.SHOP 59 G/F HA   ID:
INSTRUCTING BANK:  BANK OF CHINA (HONG KONG) LTD.        ID: 
SENDING BANK:      BANK OF CHINA (HONG KONG) LTD.        ID:
BENEFICIARY:       MAPUCHE LLC                           ID:

PAYMENT DETAIL:    FEES: $21.00 DEDUCTED FROM PAYMENT. PAYMENT FOR GOODS

---

THE FOLLOWING WIRE WAS CREDITED TODAY:                    USD AMOUNT $849,979.00

TRANSACTION REF: ████████████          SERVICE REF: ████████
SENDER'S REF:
ORIGINATOR:        GRAND FAITH TRADING LIMITED ADD.FLA   ID:
INSTRUCTING BANK:  BANK OF CHINA (HONG KONG) LTD.        ID:
SENDING BANK:      BANK OF CHINA (HONG KONG) LTD.        ID:
BENEFICIARY:       MAPUCHE LLC                           ID:

PAYMENT DETAIL:    FEES: $21.00 DEDUCTED FROM PAYMENT. RETURNS THE FUNDS



H

**Bank of America** 〰️

BANK OF AMERICA, N.A.
WIRE TRANSFER ADVICE
1 FLEET WAY        PA6-580-04-05
SCRANTON, PA        18507

WX 0000    000 701 020374 #001 AT 0.374
MAPUCHE, LLC
8181 W BROWARD BLVD STE 380
PLANTATION FL 33324-2033

DATE: 07/19/12
DIRECT INQUIRIES TO:
800.729.9473 OPTION 2
ACCOUNT: ████████5425

---

THE FOLLOWING WIRE WAS CREDITED TODAY:                    USD AMOUNT $4,999,766.83

TRANSACTION REF: ████████████        SERVICE REF: ████████████
SENDER'S REF:                        RELATED REF:
ORIGINATOR:        HAO YUAN INVESTMENT PTE LTD    ID:
ORIGINATOR'S BANK: OCBC SINGAPORE                ID: ███████████
SENDING BANK:      JPMORGAN CHASE BANK, N.A.      ID: ███████████
BENEFICIARY:       MAPUCHE LLC                    ID:

PAYMENT DETAIL:    8181W BROWARD BLVD PLANTATION FL ZIPCODE 33324

---



**Bank of America**

H

PAGE 1 OF 1
BANK OF AMERICA, N.A.
WIRE TRANSFER ADVICE
1 FLEET WAY        PA6-580-04-05
SCRANTON, PA        18507

WX 0000    000 143 023750 #001 AT 0.374
MAPUCHE, LLC
8181 W BROWARD BLVD STE 380
PLANTATION FL 33324-2033

DATE: 08/02/12
DIRECT INQUIRIES TO:
800.729.9473 OPTION 2
ACCOUNT: ██████████5425

---

THE FOLLOWING WIRE WAS CREDITED TODAY:                    USD AMOUNT $30,000,000.00

| | |
|---|---|
| TRANSACTION REF: | SERVICE REF: |
| SENDER'S REF: | RELATED REF: |
| ORIGINATOR:            MARKET ENERGY LIMITED | ID: |
| ORIGINATOR'S BANK:     STANDARD CHARTERED BANK | ID: |
| SENDING BANK:          STANDARD CHARTERED BANK LIMITED | ID: |
| BENEFICIARY:           MAPUCHE,LLC | ID: |



## Bank of America

H

```
                                          PAGE 1 OF 1
                         BANK OF AMERICA, N.A.
                         WIRE TRANSFER ADVICE
                         1 FLEET WAY        PA6-580-04-05
                         SCRANTON, PA         18507
```

```
WX 0000    000 3B2 025973 #801 AT 0.374
      MAPUCHE, LLC
      8181 W BROWARD BLVD STE 380
      PLANTATION FL 33324-2033
```

```
                              DATE: 10/22/12
                              DIRECT INQUIRIES TO:
                              800.729.9473 OPTION 2
                              ACCOUNT: ███████5425
```

THE FOLLOWING WIRE WAS CREDITED TODAY:                    USD AMOUNT $5,000,000.00

| | |
|---|---|
| TRANSACTION REF: ██████████ | SERVICE REF: ██████████ |
| SENDER'S REF: | RELATED REF: |
| IMAD: | |
| ORIGINATOR: DU ZHENZENG   OR MDM ZHENG DONGXIA | ID: |
| ORIGINATOR'S BANK: STANDARD CHARTERED BANK | ID: ██████ |
| SENDING BANK: STANDARD CHARTERED BANK LIMITED | ID: |
| BENEFICIARY: MAPUCHE LLC | ID: |

PAYMENT DETAIL:    /REC/8181 W BROWARD BLVD PLANTATIONFL 33324 AMERICA SW BOFAUS3N

Composite Exhibit "4"



**Bank of America**

PAGE 1 OF 1
BANK OF AMERICA, N.A.
WIRE TRANSFER ADVICE
1 FLEET WAY        PA6-580-04-05
SCRANTON, PA        18507

WX 0000    000 154 022775 #801 AT 0.374
MAPUCHE, LLC
8181 W BROWARD BLVD STE 380
PLANTATION FL 33324-2033

DATE: 10/16/12
DIRECT INQUIRIES TO:
800.729.9473 OPTION 2
ACCOUNT: ████████5412

---

THE FOLLOWING WIRE WAS DEBITED TODAY:                    USD AMOUNT $1,200,000.00

TRANSACTION REF:    ██████████        SERVICE REF:    ████████
RELATED REF:
INSTRUCTING BANK:   BANK OF AMERICA NA - BFT            ID: ███████████████
BENEFICIARY:        DU ZHENZENG                          ID: ███████████████
BENEFICIARY'S BANK: STANDARD CHARTERED BANK              ID: ███████████████
RECEIVING BANK:     STANDARD CHARTERED BANK LIMITED      ID: ███████████████

---



**Bank of America**

```
                                          PAGE 1 OF 1
                          BANK OF AMERICA, N.A.
                          WIRE TRANSFER ADVICE
                          1 FLEET WAY              PA6-580-04-05
                          SCRANTON, PA             18507
```

```
WX 0000      340 031488 #S01 AT 0.384
MAPUCHE, LLC
8181 W BROWARD BLVD STE 380
PLANTATION FL 33324-2055
```

```
                              DATE: 04/08/13
                              DIRECT INQUIRIES TO:
                              800.729.9473 OPTION 2
                              ACCOUNT: ███████5412
```

---

THE FOLLOWING WIRE WAS DEBITED TODAY:                    USD AMOUNT $4,000,000.00

TRANSACTION REF:    ████████████        SERVICE REF: ██████████
RELATED REF:
INSTRUCTING BANK:   BANK OF AMERICA NA - BFT        ID:
BENEFICIARY:        DU ZHENZENG                     ID:
BENEFICIARY'S BANK: STANDARD CHARTERED BANK         ID:
RECEIVING BANK:     STANDARD CHARTERED BANK LIMITED ID:

---