UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE:                    CASE NO. 14-32819-JKO

US CAPITAL/FASHION MALL, LLC,

            Debtor.
_____/

IN RE:                    CASE NO. 14-32822-JKO

US CAPITAL HOLDINGS, LLC,

            Debtor.
_____/

IN RE:                    CASE NO. 14-32827-JKO

MAPUCHE, LLC,

            Debtor.
_____/

      ECF #27, 26, 28, 38, 42, 62, 97, 99 (14-32819)

                ECF #10 (14-32827)

              November 25, 2014

            The above-entitled cause came on for hearing
before the Honorable JOHN K. OLSON, one of the Judges in
the UNITED STATES BANKRUPTCY COURT, in and for the
SOUTHERN DISTRICT OF FLORIDA, at 299 E. Broward Blvd.,
Fort Lauderdale, Broward County, Florida on November 25,
2014, commencing at or about 9:30 a.m., and the following
proceedings were had.

            Transcribed from a digital recording by:
              Cheryl L. Jenkins, RPR, RMR

Page 2

1

2

3                    APPEARANCES:

4
                KENNETH A. WELT, Trustee
5


6
            GENOVESE JOBLOVE & BATTISTA, by
7               GLENN D. MOSES, Esquire
             MICHAEL SCHUSTER, Esquire
8              On behalf of the Trustee

9


10              MESSANA LAW FIRM, by
             THOMAS MESSANA, Esquire
11            BRETT LIEBERMAN, Esquire
              On behalf of the debtors
12


13
                HOLLAND & KNIGHT, by
14               JOSE CASAL, Esquire
             JOAQUIN ALEMANY, Esquire
15   On behalf of Tangshan Ganglu Iron & Steel Company, Ltd.

16

17                GRAY ROBINSON, by
             ROBERT SCHATZMAN, Esquire
18          On behalf of GHJ Construction

19

20   MARKOWITZ DAVIS RINGEL TRUSTY + HARTOG, by
             JERRY MARKOWITZ, Esquire
21             GRACE ROBSON, Esquire
              On behalf of Wei Chen
22

23

24

25

Page 3

1

2                    Continued Appearances

3

4        DAMARIS D. ROSICH-SCHWARTZ, Staff Attorney
                 Office of the U.S. Trustee
5                 Department of Justice

6

7                       ALSO PRESENT

                        Dan D'Souza
8
              Lida Rodriguez-Taseff, Esquire
9
                  Scott Marder, Esquire
10
        ECRO - Electronic Court Reporting Operator
11
                     - - - - - - -
12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              THE COURT:  Okay.  US Capital Fashion Mall.
 2              MR. MOSES:  Good morning, your Honor.
 3              THE COURT:  Good morning, Mr. Moses.
 4              MR. MOSES:  Your Honor, for the record,
 5   Glenn Moses, with my colleague, Michael Schuster, from
 6   Genovese Joblove & Battista, on behalf of the Chapter 7
 7   trustee, Mr. Kenneth A. Welt, and Mr. Welt is in court as
 8   well.
 9              THE COURT:  Thank you.
10              MS. ROSICH-SCHWARTZ:  Good morning,
11   your Honor.  Damaris Rosich-Schwartz on behalf of the
12   United States Trustee.
13              THE COURT:  Thank you, Ms. Rosich-Schwartz.
14              MS. ROBSON:  Good morning, your Honor.
15   Gross Robson and Jerry Markowitz on behalf of creditor and
16   party-in-interest, Wei Chen.
17              THE COURT:  Thank you, Ms. Robson, and good
18   morning to you, Mr. Markowitz.
19              MR. MESSANA:  Good morning, your Honor.
20   Thomas Messana and Brett Lieberman on behalf of the three
21   debtors.
22              Also in the courtroom is Dan D'Souza.
23   Mr. D'Souza represented the Mapuche debtor in the state
24   court lawsuit.
25              THE COURT:  Thank you.
```

1              MR. CASAL:  Good morning, your Honor.

2    Jose Casal, that's C-a-s-a-l.  I'm with Joaquin Alemany,

3    my partner at Holland & Knight.  We are new counsel

4    counsel for party-in-interest and equity holder Tangshan

5    Ganglu Iron & Steel Company, Limited.

6              Also with me in the courtroom were state

7    court counsel in the underlying case against Mr. Chen and

8    Mapuche, from Duane Morris, Scott Marder and

9    Lida Rodriguez-Taseff.

10             THE COURT:  Thank you, Mr. Casal.

11             MR. SCHATZMAN:  Good morning, your Honor.

12   Robert Schatzman, Gray Robinson, on behalf of GHJ

13   Construction, the prepetition lender.

14             THE COURT:  Thank you, Mr. Schatzman.

15             MR. JONES:  Good morning, your Honor.

16   Jason Jones on behalf of Caddell Construction Company,

17   LLC.

18             THE COURT:  How do you spell Caddell,

19   Mr. Jones?

20             MR. JONES:  C-a-d-d-e-l-l.

21             THE COURT:  Thank you.

22             MR. MOSES:  Good morning, your Honor.

23             THE COURT:  Hello again, Mr. Moses.

24             MR. MOSES:  Thank you, your Honor.  We have

25   several matters on the calendar.

```
 1              THE COURT:  Indeed we do.
 2              MR. MOSES:  One of which, with your Honor's
 3   permission, we're going to ask to continue it to the
 4   middle of -- late next week, if your Honor's calendar
 5   permits, and if I may address that?
 6              THE COURT:  All right.
 7              MR. MOSES:  That's our motion for
 8   postpetition financing from Sabadell Bank.
 9              As your Honor is aware, we're looking for
10   financing to carry the expenses necessary to preserve and
11   maintain the property for a certain period of time while
12   the trustee disposes of the property.
13              There are approximately $3 million of real
14   estate taxes that are unpaid going back to 2011, which are
15   accruing interest at 18 percent.  We're in discussions
16   with Sabadell to increase the borrowing to satisfy those
17   taxes, and we believe that we can save the estate a
18   significant amount of money if we can accomplish that.
19              We'd like a little bit of time to finalize
20   those discussions, and file the appropriate papers with
21   your Honor and the Court, on notice to everybody, of
22   course, either an amended motion or a notice of increased
23   borrowing, along with the applicable loan documents.
24              So, if late next week is acceptable for
25   your Honor and doable, we'd appreciate it.
```

1          THE COURT:  Anybody got a problem with that?

2          (No verbal response.)

3          THE COURT:  All right.  Ms. Romero, what do

4  you think?

5          ECRO:  I mean, we're open on Wednesday, in

6  the afternoon.

7          THE COURT:  How is Wednesday the 3rd, is

8  that too soon, or is it ---

9          MR. MOSES:  Wednesday or Thursday, either

10  or.  Wednesday, Thursday or Friday, whatever is best for

11  your Honor's calendar, but we do need the money in short

12  order to take care of, obviously, the insurance and

13  security and other necessary expenses.

14          ECRO:  Thursday, Judge.  I guess Thursday in

15  the afternoon.

16          THE COURT:  Thursday in the afternoon would

17  be fine.

18          Anybody got a problem with December 4th at

19  1:30?

20          (No verbal response.)

21          THE COURT:  All right.  December 4th at

22  1:30.

23          I do have a question for you, Mr. Moses, and

24  that is the structure of the lending, it says it's on a

25  revolving basis, but I haven't a clue what the revolving

1   nature of that is since I didn't think that this, these

2   entities had any income.  So what exactly are you

3   revolving against?

4               MR. MOSES:  We're not -- that was a typo,

5   your Honor.  It's a line ---

6               THE COURT:  No, it's not a typo.  Somebody

7   wasn't thinking.

8               MR. MOSES:  It would be a line of credit,

9   your Honor --

10              THE COURT:  All right.

11              MR. MOSES:  -- that we would borrow, and it

12  would not be on a revolving basis.  We hope to repay it

13  once and be done with it, Judge.

14              THE COURT:  I think that's a lovely idea,

15  December 4th at 1:30.

16              MR. MOSES:  Thank you, your Honor.

17              The next matter, if I can address, is the

18  motion to operate the business and pay prepetition wages.

19              Your Honor had entered an interim order

20  authorizing the trustee to operate through today, and

21  authorize the trustee to pay prepetition wages and certain

22  employees, with the exception of two possible insiders,

23  Ms. Grace Kuo and Mr. Jerry Jiang.  With respect to the

24  motion to operate, we've had conversations with the Office

25  of the United States Trustee.  They would request that we

```
 1   have the authority to operate for 60 days, and then come

 2   back to your Honor on a 60-day basis, in accordance with a

 3   budget to be filed with the Court.  We obviously have no

 4   issue with that, and if it's acceptable to your Honor,

 5   perhaps set a hearing in late January, and subject to

 6   further extensions.

 7                 THE COURT:  All right.  Anybody have an

 8   objection to my granting the authority to operate through

 9   the end of January?

10                 (No verbal response.)

11                 THE COURT:  All right.  January 31st,

12   authority to operate.  When during that prior week,

13   Ms. Romero, should be we put this?  Anybody got calendar

14   issues the last week of January?

15                 (No verbal response.)

16                 THE COURT:  Okay.

17                 ECRO:  Well, January -- can I put this on a

18   motion calendar, or should ---

19                 THE COURT:  No.

20                 ECRO:  Okay.  Let's do it on the 27th then

21   at 1:30.

22                 THE COURT:  January 27th at 1:30, order

23   Mr. Moses.

24                 MR. MOSES:  Thank you, your Honor.

25                 THE COURT:  And I assume you are not asking
```

1    for authority at this time to pay the two individuals whom

2    you identified, Ms. Kuo and Mr. Jiang?

3                    MR. MOSES:  Not today.  However, if we could

4    roll that, if it's acceptable ---

5                    THE COURT:  The motion is still alive, I'll

6    roll the motion.

7                    MR. MOSES:  Okay.

8                    THE COURT:  And fair warning to everybody

9    that Ms. Kuo and Mr. Jiang may come up for discussion in

10   two months.

11                   MR. MOSES:  Thank you, your Honor.

12                   THE COURT:  All right.

13                   MR. MOSES:  The next matter I'd like to

14   address, your Honor, is the pending retention applications

15   in which interim orders were entered, first Analytic

16   Consulting, and Ms. Sandirose Magder.  Ms. Magder's

17   supplemental affidavit was filed with the Court on ---

18                   THE COURT:  Yes, do you want to tell me why

19   none of that information that's in the supplemental

20   affidavit was thought necessary to be included in the

21   original application?

22                   MR. MOSES:  Well, Judge, we actually believe

23   that the information contained in the supplemental

24   affidavit was probably more than what your Honor had

25   requested.

Page 11

1              We do apologize to the Court for

2    your Honor's concerns.  We did indicate very clearly in

3    the affidavit that notwithstanding the LinkNet profile

4    page, which was incorrect, that Ms. Magder was never an

5    employee, W-2 or otherwise of Trustee Services, or any

6    entity owned or controlled by Mr. Welt, and we've

7    disclosed relationships going back to 2013, when she was

8    an employee of with Barbee & Associates, and I think we

9    hopefully overkilled it a little bit, but we obviously

10   apologize for the inadvertence and ---

11              THE COURT:  In the disclosure world over

12   disclosure is better than under.

13              MR. MOSES:  Yes, your Honor.

14              THE COURT:  All right.  Does anybody have an

15   objection to the applications to employ Ms. Magder?

16              MS. ROSICH-SCHWARTZ:  Good morning,

17   your Honor.  The U.S. Trustee has no objection.  We just

18   wanted to point out, your Honor, that we spoke with

19   Ms. Magder at length, with counsel, and with the trustee.

20   We are satisfied with the affidavit, and with the amended

21   affidavit, and we believe that there is no conflict.

22              I believe Ms. Magder understands now that,

23   you know, even though the affidavit might include more

24   information than your Honor was expecting, to at least

25   include more disclosure in the future.

1                THE COURT:  Okay.  Anybody else want to be

2    heard?

3                (No verbal response.)

4                THE COURT:  Give me an order granting the

5    application, Mr. ---

6                MR. MOSES:  Thank you, your Honor.

7                THE COURT:  -- Mr. Moses.

8                MR. MOSES:  And going forward we expect to

9    conclude Ms. Magder's services.  We actually have an

10   application on file to retain Mesirow to do more of the

11   heavy lifting forensic.  We may use Ms. Magder on a cost

12   saving basis to handle some tasks that, from an economic

13   perspective, it might make sense to do so instead of

14   Mesirow, but we'll obviously address that at the

15   appropriate time.

16                The other retention application is

17   Cypherensics and Daniel Socek.  No objections, as set

18   forth in the initial affidavits, in both Ms. Magder and

19   Mr. Socek.  They've disclosed that they are married, and

20   they each own 50 percent of Cypherensics.  We haven't

21   heard any objection.

22                THE COURT:  Anybody want to be heard?

23                (No verbal response.)

24                THE COURT:  Give me an order granting the

25   application.

1              MR. MOSES:  I will, your Honor.  Thank you.

2              THE COURT:  Thank you.

3              MR. MOSES:  And I believe the next matter --

4    and I believe the last matter on your calendar is the

5    motion for stay relief, filed by Ganglu.

6              THE COURT:  Yes.

7              MR. CASAL:  Good morning, your Honor.

8    Again, Jose Casal on behalf of the movant.  For short

9    we'll just call it Ganglu.

10             Your Honor, Ganglu is at least the

11   80 percent member of Mapuche, LLC, which is one of the

12   consolidated debtors in this case, and it seeks stay

13   relief to proceed with obtaining a written order

14   concerning the findings of fact which were verbally issued

15   by the Honorable Jack Tuter of the Broward County Circuit

16   Court in Case Number 14-9677 on October 3, 2014, after a

17   three-day trial that was handled by the Duane Morris firm

18   on behalf of Ganglu.

19             In addition to that relief which we're

20   seeking, which is the entry of a written order, which

21   memorializes that verbal order given by Jack Tuter, we

22   would also like to get stay relief so that Jack Tuter, the

23   Honorable Jack Tuter can proceed solely on Mr. Chen's

24   affirmative defense that Ganglu ratified his actions.

25             So, the only issue before the Honorable Jack

Page 14

1   Tuter is, one, the entry of a written order that

2   verbalizes -- that memorializes his ruling and, second,

3   addresses the affirmative defense that Mr. Chen raised,

4   which had already have been tried, in other words, all the

5   evidence, all the testimony that would be required for the

6   judge to, the state court judge to enter a ruling has been

7   entered in that case, and the only thing that is required,

8   as I understand it, is a response memorandum that needs to

9   be filed by Ganglu's lawyer, state court lawyers, and then

10  presumably oral argument before Judge Tuter.

11          The trustee in this case, Mr. Welt, has

12  stipulated with Ganglu to the relief sought by Ganglu.

13          THE COURT:  I want to address how that came

14  about, Mr. Casal, because the submission to me of an

15  agreed order, that was agreed only with Mr. Welt, is,

16  frankly, offensive, and if you were from Duane Morris

17  standing there today, you could expect to have difficulty

18  sitting down after today's hearing.

19          MR. CASAL:  I fully expect that, Judge, and

20  in reviewing the file, and ---

21          THE COURT:  I am, in fact, very likely to

22  enter an order to show cause why I should not prohibit the

23  two partners at Duane Morris who did what they did, why

24  they shouldn't be prohibited from practicing in this

25  Court.

1          MR. CASAL:  Your Honor, I ---

2          THE COURT:  We're not going to address that

3    today, but I want it understood on the record that I will

4    not put up with that kind of stuff, and that engaging in

5    what appears to be an effort to mislead the Court, and the

6    characterization of an order as agreed that is not, really

7    ticks me off.

8          (Thereupon, the Court's recording system

9    froze and the following transcript was transcribed from

10   the backup recording.)

11         THE COURT (continued):  So having said that,

12   go ahead and make the argument you need to make,

13   Mr. Casal.

14         MR. CASAL:  Thank you, your Honor.

15         Two objections have been filed with regard

16   to the relief sought by Ganglu, one that's been filed by

17   Mr. Chen.  The other has been filed by debtor's counsel,

18   and we'll get to that in a second.  Both of the objections

19   are going to be similar, in that, one, at least with

20   respect to granting limited stay relief for the purpose of

21   having Judge Tuter enter the written order, it appears

22   that both objectors are not objecting as to that limited

23   relief, and I believe in Mr., in Mr. Messana's submissions

24   he attached a copy of the proposed order that Judge Tuter

25   would consider for entry.  We have no objection to the

1    form of that order.  That was the order that was

2    circulated by the parties prior to the petition date.

3             So, it appears that we have some agreement

4    on that, on that ---

5             THE COURT:  Having read the responses at

6    ECF 97 by Mr. Messana, and ECF 99 by Ms. Robson, I think

7    that your characterization is accurate, at least as I

8    understand it.

9             MR. CASAL:  Thank you, your Honor.

10            So, it appears that what we're really here

11   on, your Honor, is on the sole issue of whether

12   Judge Tuter should be allowed to proceed with entering a

13   ruling on the ratification issue following some sort of

14   briefing by Ganglu, and then some sort of hearing.

15            And, again, I wish to reiterate to the

16   Court, Judge, that the ratification defense is it's really

17   a dispute between my client, Ganglu, and Mr. Chen.  It

18   really doesn't involve the debtor, Mapuche.  Mr. Welt, the

19   trustee, has expressed to us that he is not taking a

20   position with regard to the, the claims being asserted by

21   the parties in the state court, and will be ostensibly a

22   bystander for purposes of that, of that hearing.

23            So, there isn't really going to be an

24   expenditure of estate resources on the part of the debtor,

25   through the trustee in defending that claim.

1          Mapuche is a defendant in the state court

2     lawsuit but, again, the relief, or at least the ruling

3     that we're seeking is really going to be directed,

4     your Honor, at Mr. Chen, who is the non-debtor defendant.

5               One of the things, your Honor, that I think

6     the Court should consider, is -- and obviously Mr. Messana

7     raised some issues concerning the Curtis factors, and that

8     is that this matter, at some point or another, is going to

9     need to be decided, whether it's before this Court, or

10    before the Honorable Jack Tuter's court.  The matter is

11    ready to be decided by Judge Tuter.  The parties have

12    expended the resources in order to have the matter tried,

13    and they're ready to proceed to a, at least an interm or

14    final ruling with respect to the issue of ratification.

15              It makes no sense, and it is an unwise

16    expenditure of judicial resources to have this matter

17    brought here before this Court and to start from scratch.

18              Again, not to belabor the point, the only

19    matter that really -- the only other work that needs to be

20    done in state court if relief is granted, is for Ganglu to

21    file a response to Mr. Chen's ratification filing, and

22    then for there to be oral argument with respect to that,

23    and then obviously Judge Tuter will have to decide the

24    matter and enter the appropriate ruling.

25              THE COURT:  Mr. Casal, I have been involved

1   in corporate governance disputes before, and both as a

2   lawyer and as a judge, and what I'm having some

3   head-scratching concern about here is, what does it

4   matter?  There is, in the Mapuche case, an independent

5   fiduciary.  Mapuche's assets, as I understand them, are

6   equity interests in -- equity interests in an LLC that

7   owns real estate.  Mapuche has no other assets of which I

8   am aware.  US Capital has no other assets of which I am

9   aware, and Fashion Mall, LLC has 33 acres, plus, and a

10  whole -- maybe there is a whole bunch of litigation claims

11  that are owned at various levels, but all of them are in

12  the control of the trustee.

13              So, isn't the issue of whether there is

14  equity to slide up the chain from Fashion Mall to US

15  Capital, to Mapuche, and then to be figured out whether --

16  how assets in Mapuche are distributed to equity interests,

17  isn't that so far down the road that we're arguing about

18  something that doesn't matter?

19              MR. CASAL:  It matters, your Honor, because

20  we're at a very important point in this case as to whether

21  my client, who has invested vast sums of monies in

22  this ---

23              THE COURT:  A point in contention, as I

24  understand it.

25              MR. CASAL:  Somewhat, but I believe that

1   there isn't a point of contention with respect to some of

2   the investment, at least the pre-2012 investments.  It is

3   significant on the part of Ganglu's part.

4                    THE COURT:  So what?

5                    MR. CASAL:  Well, Ganglu can ---

6                    THE COURT:  And I mean that with no

7   disrespect in mind.  It's just, okay, well, before any of

8   that becomes important, there has to be more money here

9   after creditors are paid for equity to play.

10                   MR. CASAL:  And that's what we're trying to

11  accomplish, Judge, because obviously I'm wasting

12  everybody's time if we're dealing with a completely -- if

13  we're dealing with an estate, and I'm talking about the

14  fashion mall, the ultimate subsidiary estate, if we're

15  dealing with, there is no equity then, you know, you lost

16  your investment, good luck, but that's not the case here,

17  and, if anything, this case has all of the imprimatur of a

18  case where equity is in the money.

19                   In fact, I believe the trustee even agrees

20  that equity is in the money here, and so what we would

21  like, your Honor, is an opportunity to participate in that

22  process.

23                   In order for us to properly participate in

24  that process, and this deals with the governance issue, we

25  need to know that we're in control.  We need to know that

1   Mr. Chen is no longer the person who can dictate what

2   happens to Mapuche, and for example, I am facing an

3   objection filed by counsel for the debtor, Mapuche.  I

4   have no idea who authorized that filing.  It certainly

5   wasn't my client.  My client is at least the 80 percent

6   member of Mapuche.  There was no consultation of my client

7   with regard to the filing, and so that is the problem that

8   I'm dealing with, Judge.  I'm dealing with a lack of

9   control issue that will be clarified and established

10  through a ruling by Judge Tuter, and then once that's

11  done, then my client can assess whether he wants to become

12  involved as an equity holder in this case, and maybe even

13  get involved with filing a 706 motion and proceeding along

14  those lines, but for now I can't get to that step,

15  your Honor, at least it will be a much more difficult step

16  if I have to deal with assertions that Mr. Chen is in

17  control on Mapuche, at least through the alleged third

18  amended operating agreement, and that's why this is

19  relevant, and that's why this is important.

20              THE COURT:  All right.  Anything else you

21  want to tell me, Mr. Casal?

22              MR. CASAL:  Nothing else, Judge.

23              THE COURT:  Thank you.

24              MR. MESSANA:  Good morning, your Honor.

25              THE COURT:  Good morning, Mr. Messana.

1          MR. MESSANA:  I thought the trustee was in

2   control.  This is a Chapter 7.

3          The ratification issue does not deal with

4   the equity dispute.  It is a sideshow.  There was a

5   two-count complaint filed by Ganglu.  Count I,

6   dissolution, judicial dissolution of Mapuche, the LLC.

7          Count II, appointment of a receiver or

8   custodian, that was achieved with the commencement of the

9   Chapter 7 case.

10          So why -- I was going to say why on earth,

11   but what purpose is served in granting stay relief to

12   continue, and all of the relief sought through the

13   complaint has been obtained.

14          We apparently just learned some information.

15   That information wasn't contained in the papers.  I heard

16   706 mentioned.  That would be interesting that they would

17   be arguing something that's not in their moving papers,

18   because that's what our paper asks.

19          Ordinarily a debtor in a Chapter 7 plays a

20   very small role, and candidly the role is largely

21   completed, it's commencing the case, assisting the trustee

22   in getting up to speed, completing the schedules and

23   statement of financial affairs, and attending the 341

24   Meeting of Creditors.  That's all happened.  So ordinarily

25   I would be sitting on the side, waiting for the trustee's

1    phone call.  Always the bridesmaid, never the bride.

2              But in this case, where there is a motion

3    three days into the case to get stay relief, to go with a

4    sideshow, when there really is no articulation of the

5    motion of what the purpose is, the debtor couldn't remain

6    silent.

7              Mr. Chen is today the manager of the

8    company, Mapuche, US Capital Holdings, US Capital Fashion

9    Mall.  I had my office pull the filings with the Secretary

10   of State before I attended the hearing today.  Mr. Chen is

11   the manager of the company, that said, kind of a manger

12   without portfolio, given the fact that the trustee is in

13   control.

14             So, when I was preparing for the hearing, I

15   reviewed an old article.  It's former Judge Ordin, Bob

16   Ordin's article, Good Faith Principle in Bankruptcy Code,

17   A Case Study, it's found at 38 Business Lawyer Number 4,

18   Pages 1795 though 1850, and Judge Ordin, who is -- went

19   from Jurist, then Scholar of the law, talked about good

20   faith in the conduct of a case, and he looks for indicia

21   of good faith, candor, frankness, sincerity, willingness

22   to do equity.  I would suggest to you this debtor, these

23   debtors have done all of those things.

24             In contrast, he says, indicia of not good

25   faith, would be the manipulative use of the letter of the

1   statute for an alternative motive of purpose.  I suggest

2   to you that Ganglu is doing just that.  They didn't tell

3   us why they were seeking stay relief until just now, and

4   apparently they seek stay relief to not get what they

5   sought in law in state court, which was the appointment of

6   a fiduciary, and the judicial dissolution, rather they

7   seek to convert the case, take control to convert the

8   case.

9                   THE COURT:  We have just had a technical

10  glitch, and I need to reboot the system.

11                  ECRO:  Sorry.

12                  THE COURT:  That's okay.

13                  ECRO:  I don't know what happened.

14                  THE COURT:  I don't want to lose this stuff.

15                  This is, of course, another instance of

16  federal efficiency in doing away with court reporters.

17                  ECRO:  All right.  We're back.

18                  (Thereupon, the system was rebooted and the

19  following was transcribed from the main recording system:)

20                  THE COURT:  Okay.  Mr. Messana, I apologize

21  to you.  There is nothing we can do, except proceed with

22  the fine electronic tools that the administrative office

23  of U.S. Courts has decreed we use.

24                  MR. MESSANA:  That's quite all right,

25  your Honor.  Thank you.

1          To grant stay relief to equity, when the
2     question of whether or not equity is in the money or not
3     doesn't make sense.
4          Candidly, the whole item doesn't make sense
5     unless you put if it in the context of, there was a middle
6     of a barroom brawl, the case was filed to stop that, but
7     Ganglu didn't realize that it was supposed to stop, and so
8     their initial reaction three days into the case was to
9     file for stay relief.  They didn't realize that they had
10    an excellent trustee, and an excellent Court, and an
11    excellent forum to go forward.
12         Your Honor, I would submit that bankruptcy,
13    certainly Chapter 7 bankruptcy is a superior forum, with
14    all respect to the state courts of Florida, then judicial
15    dissolution.  There is scant case law for the dissolution
16    of an LLC.  There is nationwide service of process, to the
17    extent that this is going to be a litigious case, and I
18    have every reason to believe that it may, there may be
19    some adversary proceedings brought, certainly the schedule
20    identifies a number of potential actions for the trustee
21    to investigate on both sides, then I would suggest that
22    bankruptcy is a superior forum.
23         Also the judgments are automatically
24    recognized by transfer rather than the Uniform
25    Domestication of Foreign Judgments Act, and finally there

1   is, going back to 1898, about 120 years worth of case law

2   governing liquidations.  I think the LLC statute is of

3   2002 vintage.

4                    So, you ask yourself, why would Mr. Du

5   (phonetic) cause Ganglu to seek to go forward with this?

6   And I think the answer is probably to vary his wrongs,

7   which are at least in allegation form attached to the

8   pleading.

9                    For example, your Honor, it was odd to see

10  that Ganglu had not put in any money since certainly

11  Ms. Smith, Maggie Smith's examiner report in the prior

12  Chapter 11 for US Capital Holdings, or at least none that

13  I could find that hit the bank account.

14                    There were a number transfers, but I didn't

15  see Ganglu's name on any of those, and those wires are

16  there.  I think it's probably a good idea for Mesirow to

17  have been -- or to be engaged by the trustee to run that

18  down.

19                    I also see Mr. Du as a net winner in the

20  case.  In addition to the salaries, he just got more money

21  than he put in, again, according to the books and records.

22  It just doesn't make any sense.

23                    Now, with respect to the point of agreement,

24  the agreement that the debtor made is predicated on the

25  trustee being granted the authority to take two orders,

1    the proposed form of order, which apparently everyone

2    agrees is being the proposed form of order, present that

3    to Judge Tuter, with a copy of your Honor's order granting

4    stay relief, without comment from anyone, and if a day

5    comes in the future where there is equity to fight about,

6    then I guess you'll have to determine whose got what

7    percentage of equity, but it strikes me that Ganglu

8    achieved all of the relief it sought to achieve through

9    the state court lawsuit with the commencement of this

10   Chapter 7, it ought to be pleased with the lineup that has

11   been achieved and work through the system.

12              Your Honor, with respect to the

13   characterization of the state of the pleadings in the

14   state court, I would ask Mr. D'Souza, who represented

15   Mapuche in that proceeding, to address the Court, because

16   what I've heard is a very different thing than what

17   Mr. Casal represented to the Court with respect to the

18   state of the pleadings and the ratification issue.

19              May I yield the podium to Mr. D'Souza?

20              THE COURT:  I don't think you need to at the

21   moment.

22              MR. MESSANA:  Thank you.

23              THE COURT:  I want to hear from the

24   bankruptcy lawyers.  If I get into that issue, I may end

25   up going down a path that is for today, at least, a waste

1   of time.

2                  MR. MESSANA:  Unless you have any other

3   questions, I'll take my seat.

4                  THE COURT:  I don't.  Thank you --

5                  MR. MESSANA:  Thank you.

6                  THE COURT:  -- Mr. Messana.

7                  Ms. Robson.

8                  MS. ROBSON:  Good morning, your Honor.  I

9   won't belabor the points raised by Mr. Messana, because

10  we essentially adopted those same reasonings in our

11  response.

12                  The other things I just have not heard

13  talked about in detail, but I'd like to discuss, are the

14  standards under 362, and consideration of whether stay

15  relief should be granted to a creditor or

16  party-in-interest, one of which is the balance of harms.

17                  Although in our papers, and in Mr. Messana's

18  papers, we did discuss that, Ganglu did not cite any harm

19  that I could gather from their -- if they did not get stay

20  relief, what harm would befall them because, again, here

21  we're in Chapter 7, where they got the relief that they

22  were seeking in the state court.

23                  Here, Mr. Chen would obviously have to

24  expend fees and costs in defending the proceedings in

25  state court, where here we're happy with Mr. Welt, as a

```
 1   fiduciary, and the proceedings going forward in the

 2   Bankruptcy forum.

 3              The second issue is the -- is Ganglu

 4   indicated that in their stay relief motion, that they're

 5   seeking -- it's a limited nature of the relief sought,

 6   that that's why they should be able to proceed, and that

 7   this is because the state court has already decided the

 8   matter.

 9              Well, there is two matters that they seek

10   stay relief for, one of which they stated, which was just

11   simply the entry of the order regarding whether Mr. Du

12   signed this unanimous consent, and the second is the

13   ratification.

14              The proposed order that everyone says

15   they've agreed to specifically says while the order does

16   not address the contention that -- of the ratification

17   issue.  So, your Honor, you know, to say that stay relief

18   should be granted because it's limited to the one issue,

19   that's not exactly correct.  They are seeking additional

20   relief for the reasons that they just stated today, which

21   obviously is to seek conversion of the case, which

22   obviously I don't believe was raised to the trustee or

23   anybody else in the court until this morning.

24              So, your Honor, if you have any other

25   questions for me, I don't want to belabor the points
```

1    already raised by all of the parties.

2                    THE COURT:  Thank you, Ms. Robson.

3                    MR. CASAL:  Your Honor, I don't know if

4    Mr. Moses has anything to say, but ---

5                    MR. MOSES:  I appreciate the invitation.

6                    Your Honor, we have a stipulation that was

7    filed with the Court, and we stand on that stipulation.

8                    THE COURT:  Thank you.

9                    MR. CASAL:  Your Honor, I don't think a

10   non-debtor should be able to use indirectly the shield of

11   the automatic stay to prevent the determination of a

12   governance issue that was heard by a state court of

13   competent jurisdiction, and that is absolutely ready to

14   rule at this time.

15                   It will not be a final determination, but

16   nonetheless it will address an important issue for my

17   client, and that is the harm that, as suggested by

18   Ms. Robson, has not been indicated by us, but that is the

19   real harm, we need to have some clarification with regard

20   to our ability to have some sort of voice or control over

21   this entity.

22                   Mr. Messana very clearly spelled out how in

23   his -- it is his viewpoint that Mr. Chen is still in

24   charge by virtue of the public filings, although the law

25   on that is that you don't necessarily look to the public

1   filings for a determination of who is in control, it

2   depends on what the documents say, but that is exactly the

3   issue that Judge Tuter has before him, and so I don't

4   understand why it's so difficult for the debtor's counsel,

5   and for Mr. Chen's counsel to leap to the next level and

6   to say, have Judge Tuter decide this issue, at no expense

7   to the debtor, no expense to the trustee, and to have this

8   issue resolved.

9         Your Honor made a pointed question to me, I

10  answered the question to the extent that I could under

11  these circumstances, knowing these facts.

12        I'm not here to say that this entity here,

13  Ganglu, is, in fact, going to file a (inaudible) motion,

14  it is something to be considered, but I have difficulty

15  getting to that point, to even consider it if I have to

16  deal with Mr. Chen claiming that he's the 100 percent --

17  excuse me, that he is 100 percent in control of this

18  entity, even though he's only a 20 percent equity holder.

19        Thank you, Judge.

20        THE COURT:  All right.  I fully expect this

21  case to be litigated thoroughly.  I look around the room

22  and see a goodly number of usual suspects who are, in

23  fact, quite good litigators.  Good litigators also come in

24  the category of being able to settle things, and in the

25  fullness of time, I think that you may get closer to there

1   than are you today.

2            It's very unusual to me for a motion for

3   stay relief to be filed by equity as a first day response

4   to the filing of Chapter 7 petitions, and if these debtors

5   were in Chapter 11 cases, I could understand the urgency

6   of a determination of whose on first and who is in, as

7   Mr. Casal puts it, control.

8            I don't understand the point with nearly the

9   same degree of importance in a Chapter 7 context.

10           What I will do at this point is to authorize

11  the submission to Judge -- stay relief to the extent of

12  authorizing the entry by the Circuit Court for Broward

13  County of an order, presumably in the form that is

14  attached as Exhibit 2 to ECF 97, Mr. Messana's response to

15  the stay relief motion, and to authorize stay relief to

16  the extent of authorizing the Court in Broward County to

17  enter that order, or such other order as it deems

18  appropriate in respect of the issues dealt with in that

19  matter, and the state court will, of course, be authorized

20  to enter such order as it deems appropriate on the basis

21  of the evidentiary hearing conducted on October 1st, 2nd

22  and 3rd.  I will otherwise deny stay relief.

23           I do not believe it is a prudent use of the

24  resources that are available for litigation to proceed

25  immediately over issues that are conjectural only, and

1  that have the potential of vastly increasing expenditures

2  of property of the estate, or expenditures by parties who

3  may well be targets of the estate in seeking to recover

4  avoidable transfers, and I do not want to see assets

5  wasted in that exercise.

6          So, Mr. Messana, would you please give me an

7  order granting the motion for stay relief to the extent I

8  have described it, and otherwise denying the motion,

9  obviously without prejudice to the assertion of -- or

10  seeking of stay relief in the future if circumstances --

11  if and when circumstances change.

12          MR. MESSANA:  Yes.

13          THE COURT:  Circulate the order among

14  counsel.  If there is disagreement over the form of order,

15  let us know in Chambers, and no more agreed orders that

16  are not agreed will be submitted.

17          MR. MESSANA:  Happily, your Honor.  Thank

18  you.

19          THE COURT:  Thank you very much.

20          Anything else we need to do this morning?

21          MR. MOSES:  Have a good day, your Honor.

22  Thank you.

23          THE COURT:  Thank you all.

24

25

1

2                    (Thereupon, the hearing was concluded.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 34

1

2

3                              CERTIFICATION

4

5    STATE OF FLORIDA        :

6    COUNTY OF MIAMI-DADE    :

7

8                    I, Cheryl L. Jenkins, RPR, RMR, Shorthand

9    Reporter and Notary Public in and for the State of Florida

10   at Large, do hereby certify that the foregoing proceedings

11   were transcribed by me from an audio recording held on the

12   date and from the place as stated in the caption hereto on

13   Page 1 to the best of my ability.

14                    WITNESS my hand this 11th day of December,

15   2014.

16

17

18             _____

19             CHERYL L. JENKINS, RPR, RMR

20             Court Reporter and Notary Public
          in and for the State of Florida at Large
21                  Commission #FF064003
                    December 27, 2017

22

23

24

25