**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov**

| | |
|---|---|
| In re: | CHAPTER 7 |
| US CAPITAL/FASHION MALL, LLC, et al., | Case No. 14-32819 (JKO) |
| Debtors. | Jointly Administered<br>Case Nos. 14-32819-JKO.<br>14-32822-JKO, 14-32827-JKO |

## DUANE MORRIS'S[1] RESPONSE TO ORDER TO SHOW CAUSE

### INTRODUCTION

Duane Morris and its lawyers named in the Order to Show Cause ("OSC") -- Lida Rodriguez-Taseff, Kevin Vance, Rudolph DiMassa, and Lawrence Kotler – understand the Court's evident frustration and apologize to the Court and to any counsel who was misled, however inadvertently, by any of the conduct identified in the OSC. The firm and its lawyers are mortified by the possibility that anything they filed or emailed sowed confusion and they apologize profusely if anyone was confused or misled.

In her affidavit, Ms. Rodriguez-Taseff takes full responsibility for the events that led the Court to issue the OSC. She avows that she had no intent to mislead anyone when she authorized the filing of the Stipulation between Duane Morris's client Tangshan Ganglu Iron & Steel Company, Ltd. ("Ganglu") and the Chapter 7 Trustee and the proposed Amended Agreed Order that was an exhibit to the Stipulation. She apologizes to the Court and to counsel for any resultant confusion, assures the Court of her good faith, and admits to being mortified that her actions contributed to the issuance of the OSC.

---

[1] "Duane Morris" encompasses the firm Duane Morris LLP and its lawyers -- Lida Rodriguez-Taseff, Kevin Vance, Rudolph DiMassa, and Lawrence Kotler -- named in the Order to Show Cause.

However, when one understands the facts surrounding the conduct that is the subject of the OSC, one can only conclude that none of Ms. Rodriguez-Taseff or Messrs. Vance, DiMassa, or Kotler intended to mislead anyone or did anything sanction-worthy.  If the filing of the Stipulation between Ganglu and the Chapter 7 Trustee and the proposed Agreed Order thereon confused or misled anyone into believing that it was fully agreed among all the parties, that was an unintended and inadvertent result.  Similarly, none of the other conduct identified in the OSC – principally filing the Stipulation and proposed Agreed Order in a manner unauthorized by Local Rule 5005-1(G) and the Guidelines and omitting one of the debtors' lawyers from two emails to the Court's judicial clerk – was intended to deceive the Court or counsel, and if anyone was misled, it was unintentional.

We explain, below, why and how Duane Morris did the things that are the subjects of the OSC.  When viewed in context, what might have been misunderstood as misleading or violative of a Court Rule or Guideline is revealed to have been innocent and compliant with the Rules and Guidelines.

## THE FACTS

**1.    The State Court Litigation and the Stay Relief Motion**

Ms. Rodriguez-Taseff is the lead lawyer for Ganglu in its Broward County Circuit Court lawsuit against debtor Mapuche, LLC and its general manager Wei Chen.  Rodriguez-Taseff Afft ¶ 6.  After Judge Tuter announced an important ruling in Ganglu's favor concerning Mapuche's governance (but not its assets), but before he entered a written order, Mapuche and related entities filed their voluntary Chapter 7 petitions.  *Id.* at ¶¶ 6, 7.  Mapuche's petition automatically stayed the Broward County suit.

Not being a bankruptcy lawyer, Ms. Rodriguez-Taseff asked Rudolph DiMassa (the head of Duane Morris's national bankruptcy practice who offices principally in Philadelphia) for help representing Ganglu in the bankruptcy cases.  Mr. DiMassa and Lawrence Kotler, another Duane

Morris bankruptcy partner in Philadelphia, agreed to, and did, help. Both were admitted *pro hac vice* in these consolidated cases, *id.* at ¶ 8, upon applications therefor that Mr. Vance filed. Vance Afft ¶ 3.

Within days of the filing of the voluntary petitions, Ganglu moved, in the *Mapuche* case, for limited relief from the automatic stay, principally to permit Judge Tuter to enter his written order. DiMassa Afft ¶ 3, Kotler Afft ¶3. Mapuche's lead counsel, Thomas Messana, filed a Notice of Unavailability that same day. DiMassa Afft ¶ 3, Kotler Afft ¶ 4. The Court set Ganglu's stay relief motion for hearing on October 30, 2014, one of the days when Mr. Messana would be unavailable. *Id.* Mapuche moved to continue the hearing until after Mr. Messana's return, and on Ganglu's behalf, Duane Morris agreed. *Id.* On October 28, 2014, this Court entered its order continuing the hearing to November 25, 2014. *Id.*

Because the stay relief motion had been continued and because Mr. DiMassa and Mr. Kotler were not yet admitted *pro hac vice*, neither attended the October 30 hearing.[2] DiMassa Afft ¶ 5; Kotler Afft ¶ 6. Nor did Mr. Vance, who left the attendance to Ms. Rodriguez-Taseff, who did attend. Vance Afft ¶ 5; Rodriguez-Taseff Afft ¶¶ 10, 11. Generally speaking, because Mr. Vance knew that Ms. Rodriguez-Taseff was lead counsel for Ganglu with Messrs. DiMassa and Kotler assisting on bankruptcy matters, his participation in the cases was limited. Vance Afft ¶¶ 3, 4.

At the October 30 hearing, Brett Lieberman, one of the debtors' lawyers at the Messana firm, asked the Court to keep the stay in place until the hearing on November 25; Ms. Rodriguez-Taseff voiced Ganglu's objections; and Grace Robson of Markowitz Davis Ringel Trusty,

---

[2] From the outset, Messrs. DiMassa and Kotler devoted almost all their attention to the Chapter 7 process issues -- how the cases would be financed; potential claims by the Trustee against others that could bring money into the estate; the sale by the Trustee of Mapuche's real estate assets, including the possibility that Ganglu might act as a stalking horse and whether Ganglu could credit bid; and the prospects for a 100 percent distribution to creditors. *See* DiMassa Afft ¶¶ 4, 9, Kotler Afft ¶¶ 4, 11.

counsel for Wei Chen, supported Mr. Lieberman's request.  The Court then observed that it did not have the Trustee's position "on any of this," and wanted to hear it.  See Tr. of October 30, 2014 hearing, Ex. A to Rodriguez-Taseff Afft, at 18:3-21:11.

Ms. Rodriguez-Taseff, focusing immediately on the Court's solicitation of the Trustee's views on stay relief, concluded prematurely that the Court would decide, after hearing from the Trustee, whether to continue the stay until November 25.  She was so focused on that conclusion that she either did not hear or register what the Court said next: "The hearing on the motion for stay relief in Mapuche is continued to November 25th, and the automatic stay is continued through the conclusion of that hearing and a ruling on the motion."  Rodriguez-Taseff Afft ¶¶ 11, 12.  Needless to say, Ms. Rodriguez-Taseff regrets her lapse of concentration and misunderstanding, and apologizes to the Court for them.  Rodriguez-Taseff Afft ¶ 12.

After the hearing, Ms. Rodriguez-Taseff spoke with Glenn Moses, one of the Trustee's lawyers.  Mr. Moses told Ms. Rodriguez-Taseff that the Trustee did not oppose Ganglu's limited stay relief motion and would stipulate to that relief.  Mr. Moses also told Ms. Rodriguez-Taseff that it was questionable whether Mapuche even had standing to oppose the stay relief motion.  Consequently, Ms. Rodriguez-Taseff reached the unwarranted conclusion that the Court would likely grant limited stay relief once the Trustee made its position known.  Rodriguez-Taseff Afft ¶ 13

After speaking with Mr. Moses, Ms. Rodriguez-Taseff called Messrs. DiMassa and Kotler.  Recollections of the conversation vary some.  Messrs. DiMassa and Kotler recall that Ms. Rodriguez-Taseff told them that the Court had granted Ganglu limited stay relief.  DiMassa Afft ¶ 5; Kotler Afft ¶ 6.  Ms. Rodriguez-Taseff recalls that she told Messrs. DiMassa and Kotler that the Court would grant stay relief after it learned that the Trustee supported Ganglu's motion therefor.  Rodriguez-Taseff Afft ¶ 13.

### 2. What Occurred After the October 30 Hearing

The morning after the hearing, October 31, 2014, Mr. Moses e-mailed Ms. Rodriguez-Taseff a draft proposed Stipulation on Motion for Relief from the Automatic Stay ("Stipulation for Stay Relief"). Mr. Moses's cover email and attached draft Stipulation are Exhibit B to Ms. Rodriguez-Taseff's affidavit. In his email, Mr. Moses suggested filing "a notice of this stipulation which addresses the trustee's formal position on stay relief."

The lawyers for Ganglu and the Trustee agreed on minor edits to the stipulation and on November 3, Duane Morris legal assistant Rebecca Guillou filed the Stipulation for Stay Relief on PACER, first without the proposed Agreed Order [DE 38], and then with the proposed Agreed Order attached as Exhibit A to the stipulation [DE 38-1]. All counsel, including Mr. Lieberman, were served via ECF.[3] Guillou Afft ¶ 2; Rodriguez-Taseff Afft Ex. C. Ms. Rodriguez-Taseff did not perceive the proposed Agreed Order to be different from the many other agreed orders she had previously submitted to other courts and expected that the Court would consider it in the light of the Stipulation to which it was an exhibit and sign it or not depending on whether it considered it appropriate. Rodriguez-Taseff Afft ¶ 14.

Also on November 3, Mr. Lieberman e-mailed a proposed order Continuing the Hearing on Stay Relief to Ms. Rodriguez-Taseff and Mr. Moses and asked for comments. Mr. Lieberman did not copy Mr. DiMassa or Mr. Kotler on his email. Consistent with Ms. Rodriguez-Taseff's misunderstanding of what had occurred at the hearing, she replied:

> Based on the Judge's pronouncement at last week's hearing relating to the lifting of the stay and the Judge's request to the Trustee to provide the Trustee's position on the lifting of the stay, we do not agree with your proposed Amended Order Continuing Hearing. We have now submitted a Joint Stipulation setting forth the Trustee's position -- together with proposed order.

---

[3] DE references are to *In re US Capital/Fashion Mall*, Case 14-32819-JKO.

Mr. Lieberman's answering email expressed his disagreement with Ms. Rodriguez-Taseff:

> My understanding is that the Court ordered that the stay would continue until the November 25th hearing on the motion for stay relief. I disagree with your email . . . I am going to upload the proposed amended order I circulated earlier and note that you do not agree to its entry.

Mr. Lieberman later emailed Ms. Rodriguez-Taseff a proposed order "revised . . . to reflect that the continuance order was discussed during the October 30, 2014 hearing." His email continued, "I anticipate uploading the attached with a note that you do not agree to its entry shortly." The foregoing email thread is Exhibit D to Ms. Rodriguez-Taseff's affidavit. Neither Mr. DiMassa nor Mr. Kotler were copied on any of the emails on the thread.

Also that same day, Mr. Moses emailed Ms. Rodriguez-Taseff revisions to the proposed order that had been attached to the stipulation for stay relief that had already been filed, and Duane Morris prepared a proposed Amended Agreed Order. That afternoon, Ms. Guillou filed a Certificate of Service on PACER [DE 39], which attached the previously filed Stipulation and proposed Agreed Order together with the proposed Amended Agreed Order. Guillou Afft ¶4, Rodriguez-Taseff's Afft Ex. E. All counsel, including Mr. Lieberman, were served via ECF. *Id*. That proposed Amended Agreed Order included the following footnote to the word "Agreed" in its title: "***The form of this Amended Agreed Order has been agreed to by the Trustee, but not by the Debtor or by Mr. Wei Chen***." DE 39 (emphasis added.).

The morning of November 4, 2014, Mr. Lieberman submitted his proposed Amended Order via e-mail to Aaron Brownell; Mr. Lieberman's email is Exhibit F to Ms. Rodriguez-Taseff's affidavit. Mr. Lieberman did not copy Mr. DiMassa or Mr. Kotler on his email. *See id*. Ms. Rodriguez-Taseff forwarded Mr. Lieberman's email to Ms. Guillou and instructed her to "do the same thing [Mr. Lieberman] did." Ms. Guillou did as instructed, emailing Mr. Brownell:

> Please find attached a Stipulation on Motion for Relief from the Automatic Stay along with the proposed Agreed Order for same (DE 38). Subsequently, we filed a proposed *Amended* Agreed Order, also attached.

The email concluded, "If the proposed Amended Agreed Order meets with the Court's approval, kindly have the Court enter same." A copy of Ms. Guillou's email to Mr. Brownell is Exhibit G to Ms. Rodriguez-Taseff's affidavit; copies of Ms. Rodriguez-Taseff's email to Ms. Guillou and Ms. Guillou's email to Mr. Brownell are composite Exhibit 1 to Ms. Guillou's affidavit. Neither Mr. DiMassa nor Mr. Kotler was copied on either email. *See id.*

Ms. Guillou failed to copy both Brett Lieberman, one of the lawyers at the Messana firm who represents the debtors, and Steven Solomon, one of the lawyers at Gray Robinson who represents certain creditors.[4] Ms. Guillou did not intentionally omit them from her email distribution; she was subbing for the Duane Morris paralegal who handles Bankruptcy filings (but was out on November 3 and 4) and was not familiar with the lawyers in the case. Although Ms. Guillou unfortunately omitted Messrs. Lieberman and Solomon, she copied others in their firms – Messrs. Messana and Zeichman in the case of Mr. Lieberman's firm, and three others at Gray Robinson in the case of Mr. Solomon's.[5] Guillou Afft ¶7.

The afternoon of November 4, Mr. Brownell emailed Ms. Rodriguez-Taseff asking whether she would be *"submitting a **competing** order"* to Mr. Lieberman's. (Emphasis added.) A copy of Mr. Brownell's email is Exhibit H to Ms. Rodriguez-Taseff's affidavit. Ms. Rodriguez-Taseff directed Ms. Guillou to "[r]esubmit the stop [*sic*, stip] and order." Ms. Guillou did so via an email to Mr. Brownell in which she wrote: "The attached Amended Agreed order is *our competing order*." (Emphasis added.) Guillou Afft ¶ 8, Rodriguez-Taseff Afft ¶ 18. Copies of Ms. Rodriguez-Taseff's "resubmit the st[i]p and order" email to Ms. Guillou and of Ms. Guillou's second November 4 email to Mr. Brownell are composite Exhibit 2 to Ms. Guillou's

---

[4] Ms. Guillou has tried to but cannot recall where she got the names on her email distribution list and has tried to but cannot reconstruct that list from the papers she had at the time. Guillou Afft ¶ 7.

[5] One of the persons at Gray Robinson whom Ms. Guillou copied emailed her and asked her to add Mr. Solomon to her email circulation list, which she did immediately. Guillou Afft¶ 7.

affidavit.[6]  As she had with her earlier email to Mr. Brownell, Ms. Guillou unintentionally omitted Mr. Lieberman but included Messrs. Messana and Zeichman.  Guillou Afft ¶ 8.

Fourteen minutes after Ms. Guillou's second email to Mr. Brownell, Mr. Lieberman emailed Ms. Guillou (with a copy to Ms. Rodriguez-Taseff) complaining that she had been "communicating with the Court without copying me."  Seven minutes later, Ms. Rodriguez-Taseff responded to Mr. Lieberman, telling him that Ms. Guillou had copied others in his firm (Mr. Messana and Thomas Zeichman) on her emails to the Court and assuring him he would be added to all future emails.  Rodriguez-Taseff Afft ¶ 19 and Ex. J.  In the next four minutes, Ms. Rodriguez-Taseff forwarded to Mr. Lieberman the two emails that Ms. Guillou had sent to Mr. Brownell (both of which show copies to Mr. Lieberman's colleagues Messrs. Messana and Zeichman).  Rodriguez-Taseff Afft ¶ 19 and Composite Exhibit K.[7]  Thus, Mr. Lieberman received Duane Morris's emails to Mr. Brownell twenty-five minutes after Mr. Brownell received the second of them and eleven minutes after Mr. Lieberman complained about not receiving them.

The evening of November 4, 2014, a day after Duane Morris had re-filed the Stipulation with proposed Amended Agreed Order and two hours after Ms. Rodriguez-Taseff's three emails to Mr. Lieberman addressing his complaint about not being copied on Ms. Guillou's emails to Mr. Brownell, debtors filed their Preliminary Objection and Reservation of Rights [DE 42], in which they criticized the following list of things that Ganglu's counsel had done "notwithstanding this Court's ruling that the automatic stay continue in full force and effect" until the hearing on November 25.[8]

---

[6] Neither Mr. DiMassa nor Mr. Kotler was copied on either email or on Mr. Brownell's email.

[7] Neither Mr. DiMassa nor Mr. Kotler was copied on any of these emails.

[8] Because that statement from debtors' Preliminary Objection about what happened at the October 30 hearing was different from what Ms. Rodriguez-Taseff had told Messrs. DiMassa and Kotler had happened, they each contacted her and inquired.  She told them that she was awaiting the court's order and that debtors' counsel apparently did not understand what had

- "On November 3, 2014, Ganglu filed the Stipulation [with] . . . a proposed 'agreed' order ['[a]greed' only as between the Chapter 7 Trustee and Ganglu] granting Ganglu limited stay relief";

- "Ganglu submitted the proposed stay relief order *directly to the court via email* on November 4, 2014."  (Emphasis added).

- "Ganglu's [email to the Court] omitted undersigned counsel.  Rather, [it] was sent to Debtors' lead counsel, whose Notice of Unavailability was filed on October 17, 2014 (and who is out of the country) and a junior associate with Messana, P.A. whose involvement with this matter has been limited."

DE 42 (DiMassa Afft Ex. A, Kotler Afft Ex. B) at ¶¶ 5-7.

When Duane Morris's lawyers were served with the order to show cause on November 26, 2014, they ordered expedited delivery of the transcripts of the October 30 and November 25 hearings.  It was not until they read the October 30 transcript that they learned that the Court had continued the automatic stay in effect pending the outcome of the November 25 hearing.

### ARGUMENT – THE COURT SHOULD NOT IMPOSE SANCTIONS.

In the early days and weeks of these consolidated cases as things were rapidly moving forward, a confluence of suspicious-looking but innocent actions occurred, leading the Court, understandably, to issue the OSC.  Placed in their factual context, however, the innocence of Duane Morris's actions becomes clear.

---

occurred at the hearing, Kotler Afft ¶ 9 and Ex. C, DiMassa Afft ¶ 8.

1.       **The Subject Conduct Is Not Sanctionable.**

The criticism that debtors' Preliminary Objection levels at Duane Morris might be best understood as the sort of hyperbole typical in long, bitter disputes like the one between Mr. Du and Mr. Chen.

- Debtors complain that Duane Morris called the proposed order "agreed" when it was agreed only between Ganglu and the Trustee. However, the Amended Agreed Order was never a stand-alone document, always appeared as an exhibit to the Stipulation between Ganglu and the Trustee only (which the debtors knew was between Ganglu and the Trustee only), and when uploaded to Mr. Brownell, indicated on its face that it was agreed between Ganglu and the Trustee only.

- Debtors complain that Duane Morris submitted the proposed Amended Agreed Order "directly to the Court via email," implying that Duane Morris had used the E-Orders program, when in fact Duane Morris had emailed it to Mr. Brownell just as the debtors themselves had submitted their proposed amended order just a few minutes earlier.

- Debtors complain that Duane Morris left one of their lawyers (Mr. Lieberman) off two emails to the Court, but omit to disclose that Duane Morris sent those emails to debtors' other two lawyers (both in the same firm as Mr. Lieberman), Mr. Lieberman was advised of the emails, and Duane Morris emailed them to Mr. Lieberman himself within minutes of his request therefor.

Debtors' criticisms are echoed in part in the OSC:

(i)      "[S]ubmitt[ing] an Agreed Order . . . and "fil[ing] an "Agreed Stipulation," as contrasted with debtors counsel's "contact[ing] chambers, via properly noticed email."

(ii)     "[T]itl[ing] the order as 'agreed' when it was absolutely not agreed.

    (iii)    ""[S]ubmitt[ing] an order expressly contrary to the Court's oral ruling on the record."

    (iv)    "[R]emoving Debtor's counsel from the email communication submitting Ganglu's 'Agreed Order' to the Court."

The foregoing conduct identified in the OSC looks very different in context. We supply that context for the conduct in each of the above paragraphs below.

    **(i)**    "[S]ubmitt[ing] an 'Agreed Order' [and] fil[ing] an 'Agreed Stipulation,'" as contrasted with debtors counsel's "contact[ing] chambers, via properly noticed email."

There was nothing improper or untoward about how Duane Morris filed or uploaded the Stipulation and its proposed Agreed Order and Amended Agreed Order. Duane Morris uploaded those papers in accordance with Local Rule 5005-1(G) and the Guidelines for Preparing, Submitting and Serving Orders, which the Rule expressly incorporates. As they are relevant here, the Guidelines permit counsel to submit orders in one of two ways, either the Electronic Submission of Orders Via CM/ECF, known as "E-Orders," which is reserved for form or routine or uncontested orders (CG-5, Part One, ¶ 1), or Submission to Judge's Dedicated E-mail Box (CG-5, Part One, ¶ 3).

It is critical that the Court understand that Duane Morris did not submit the Stipulation and proposed Amended Agreed Order via the Court's E-Orders program. Guillou Afft ¶ 5. To the contrary, Ms. Guillou filed them on PACER and then uploaded them to Mr. Brownell and emailed them to counsel for each of the parties. *Id.* at ¶¶ 6, 7 and composite Exs. 1 and 2.

Finally, we address the charge, implicit in the OSC's "properly noticed email" language, that as contrasted with debtors' counsel's method of communicating with the Court, Duane Morris's was improper. First, in accordance with the suggestion of the Trustee's counsel Mr. Moses (see Ex. B to the Rodriguez-Taseff Afft) Duane Morris filed the Stipulation and its Exhibit A, the proposed Agreed Order, on PACER. Then, shortly after Mr. Lieberman uploaded debtors' proposed Amended Order to Mr. Brownell, Duane Morris uploaded Ganglu's and the

Trustee's proposed Amended Agreed Order, with the Stipulation to which it was an exhibit, to Mr. Brownell *in the same way debtors' counsel had*. There was nothing improper about the way Duane Morris filed the Stipulation and proposed Agreed Order and Amended Agreed Order with or uploaded those papers to, the Court.

**(ii)** "[T]itl[ing] the order as 'agreed' when it was absolutely not agreed."

Duane Morris did not file, or email to Mr. Brownell, the proposed Agreed Order as a stand-alone document. To the contrary, Duane Morris filed the Agreed Order and Amended Agreed [DE 38, 38-1] and later uploaded them to Mr. Brownell (Rodriguez-Taseff Afft. Ex. C and Guillou Afft composite Exs. 1 and 2) *as Exhibit A to its stipulation with the Trustee*. Debtors' counsel understood that the proposed Amended Agreed Order was agreed between Ganglu and the Trustee only. Debtors' Preliminary Objection [DE 42] so notes, observing that the agreed order was "Agreed" only as between the chapter 7 Trustee and Ganglu. See Ex. B to Kotler Afft at 2 n.2.

Moreover, in response to Mr. Brownell's email asking whether Duane Morris "would be submitting a competing order," Ms. Guillou emailed to Mr. Brownell, with copies to counsel for each party, "our competing order." Rodriguez-Taseff Afft ¶ 16 and Ex. H. A "competing" order cannot be "agreed" among all the parties.

**(iii)** "[S]ubmitt[ing] an order expressly contrary to the Court's oral ruling on the record."

Ms. Rodriguez-Taseff did not intend to contravene the Court's ruling; she just misunderstood it. She viewed the filing of the Stipulation and its attached proposed Agreed and Amended Agreed Orders as responsive to the Court's expressed interest in wanting to hear from the Trustee.

Furthermore, the proposed Agreed and Amended Agreed Orders were not contrary to the Court's oral ruling that the stay would remain in place until the November 25 hearing and the

decision on Ganglu's motion. Whether and when (if at all) to sign the proposed Amended Agreed Order was, of course, entirely within the Court's discretion. Having ruled that the stay remained in place pending the November 25 hearing, the Court could have tabled the proposed Amended Agreed Order for consideration after the hearing.

Ms. Rodriguez-Taseff did not view the proposed Agreed or Amended Agreed Order that were attached to the Stipulation as different from many other proposed orders she has submitted to courts both with and without stipulations, and anticipated that the Court would sign it or not depending on whether it believed that the Stipulation provided the information the Court was seeking on the trustee's position. Rodriguez-Taseff Afft, ¶ 14. Clearly, neither the Trustee, who signed the Stipulation, nor the Trustee's counsel, who principally drafted the Stipulation, edited the proposed Agreed Order, and authorized the filing of both the Stipulation and the Amended Agreed order, believed there was anything improper about the proposed Amended Agreed Order, and they both attended the October 30 hearing.

> **(iv)** "[R]emoving Debtor's counsel from the email communication submitting Ganglu's 'Agreed Order' to the Court."

The omission of Mr. Lieberman from the distribution list on two emails to Mr. Brownell was short-lived, inadvertent and inconsequential. Ms. Guillou left both Mr. Lieberman and Steven Solomon off her first email to Mr. Brownell unintentionally owing to her unfamiliarity with the lawyers in the case. Guillou Afft ¶ 7. Fortunately, she included two others in Mr. Lieberman's firm and three others in Mr. Solomon's. *Id*. She also unintentionally left Mr. Lieberman off her second email to Mr. Brownell, but included the same two lawyers at his firm to whom she had copied the first email, and also included Steven Solomon because one of the persons at his firm to whom she had copied the first email asked her to add Mr. Solomon to her distribution list. *Id*. ¶8. If Duane Morris had intended that Mr. Lieberman not get the emails, Ms. Guillou would not have sent them to two other lawyers in his firm.

Furthermore, one of Mr. Lieberman's colleagues was sharing the emails with him anyway. Mr. Lieberman emailed Ms. Guillou a mere fourteen minutes after she sent her second email to complain that she had not sent him a copy. *See* Composite Ex. 4 to Ms. Guillou's email. A few minutes later, Ms. Rodriguez-Taseff forwarded to Mr. Lieberman the two emails Ms. Guillou had sent to Mr. Brownell (even though he obviously had both). *See id.*

### 2. The Standards for Imposing Sanctions Are Not Met.

The OSC directs the Duane Morris lawyers and Ganglu to appear pursuant to Local Rule 2090-2, which authorizes the Court to suspend, reprimand, or otherwise discipline a lawyer who has appeared before it "for good cause shown." The Rule does not define "good cause" or explain or give examples of what would constitute good cause. Accordingly, sanctions are not imposed under Local Rule 2090-2 only; rather, a bankruptcy court will consider whether a sanction is proper under another authority. *In re Gleason*, 492 F. App'x 86, 88 (11th Cir. 2012); *In re Lawrence*, No. 97-14687-BKC-AJC, 2000 WL 33950028 (Bankr. S.D. Fla. 2000).

There are three bases on which a bankruptcy court may impose sanctions – (a) Fed. R. Bankr. P. § 9011,[9] (b) 11 U.S.C. § 105(a),[10] and (c) the court's inherent authority to manage its cases. We juxtapose, below, the subject conduct against the standard for imposing sanctions under each basis. Duane Morris respectfully submits that in each instance, there is no basis to impose sanctions.

(a)  Rule 9011(b). "Sanctions under Bankruptcy Rule 9011 are warranted when (1) the papers are frivolous, legally unreasonable or without factual foundation, or (2) the pleading is filed in bad faith or for an improper purpose." *In re Mroz*, 65 F.3d 1567, 1572 (11th Cir. 1995).

---

[9] A lawyer may not make a written representation to the court for an "improper purpose," or that is not "warranted by existing law."

[10] "The court may issue any order . . . necessary or appropriate to carry out the provisions of this title," and "tak[e] any action or mak[e] any determination necessary to enforce or implement court orders or rules, or to prevent an abuse of process."

Duane Morris's filings did not contain frivolous legal arguments or unsupported factual allegations. *See, e.g.*, *In re Pierre*, 190 B.R. 462 (Bankr. S.D. Fla. 1995) (sanctions were proper for a motion to avoid liens on property where debtor's counsel misrepresented to the court that the property was exempt). By contrast, the filings at issue were a Stipulation between Ganglu and the Trustee and a proposed Amended Agreed Order thereon.

Nor were these papers filed for an improper purpose. Whether a filing was made for an improper purpose is an objective analysis "of reasonableness under the circumstances." *In re Gen. Plastics Corp.*, 170 B.R. 725, 732 (Bankr. S.D. Fla. 1994); *see also In re Evergreen Sec., Ltd.*, 384 B.R. 882, 931 (M.D. Fla. 2008) (quoting *Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 695 (11th Cir. 1995) ("Application of the objective standard in a sanctions determination involves a two-step analysis: 'whether the party's claims are objectively frivolous in view of the facts or law and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry.'").

Cases where the court found an improper purpose involve objectively dilatory or nefarious goals, such as serial bankruptcy filings by a husband and a wife to hinder and delay creditors and forestall foreclosure, *In re Grigsby*, 233 B.R. 558 (Bankr. S.D. Fla. 1999), or an attorney filing an involuntary bankruptcy petition against a client that had not paid its bills in order to use the bankruptcy court "as a collection device," *In re Century Tile and Marble, Inc.*, 152 B.R. 688 (Bankr. S.D. Fla. 1993). There is nothing like that here, no purpose to mislead anyone or misuse the Court, and no injury to anyone on account of the subject conduct.

(b)     <u>11 U.S.C. § 105(a).</u> The statute "creates a statutory contempt power, distinct from the court's inherent contempt powers in bankruptcy proceedings." *In re Hardy*, 97 F.3d 1384, 1389 (11th Cir. 1996). "The court may only impose sanctions for contempt that are coercive and not punitive." *Id.* Here, there is nothing to coerce, and the OSC orders Duane Morris to show

cause why sanctions that are punitive only ("suspended from practice before the court, reprimanded or otherwise disciplined") should not be entered. Accordingly, Duane Morris respectfully suggests that the Court may not impose sanctions under section 105(a).

(c) The Court's inherent authority. Bankruptcy courts, like all other federal courts, have the "inherent authority to impose sanctions against attorneys and their clients" based on the court's need to manage affairs and ensure orderly disposition of cases. *In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1263 (11th Cir. 2009). However, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

To impose sanctions under the court's inherent power requires a finding of bad faith. *Evergreen*, 570 F.3d at 1273.

> A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order. If particularly egregious, the pursuit of a claim without reasonable inquiry into the underlying facts can be the basis for a finding of bad faith.

*Id.* at 1273-74 (internal quotation marks and citations omitted).

The cases that have imposed sanctions under the courts' inherent power involved plainly egregious conduct different in every way from the conduct at issue here. *See e.g. Evergreen,* 570 F.3d at 1266, 1267, 1280 (affirming sanctions imposed under the bankruptcy court's inherent authority for filing and "relentlessly" pursuing a recusal motion with no factual or legal support, with the improper purposes of seeking to reopen prior rulings and delaying proceedings); *In re Walker*, 532 F.3d 1304, 1307, 1310 (11th Cir. 2008) (affirming sanctions against a lawyer who, after minimal investigation and with no evidentiary support, filed a motion asserting that opposing counsel "had made false representations to the court, committed fraud against the court, and planned to benefit personally at the expense of the creditors."); *NASCO*, 501 U.S. at

58 (affirming sanctions for "relentless, repeated fraudulent and brazenly unethical" conduct); *Peer v. Lewis*, 605 F.3d 1306, 1316 (11th Cir. 2010) (affirming sanctions against a lawyer who knowingly filed a baseless Fair Credit Reporting Act case asserting that the defendant had wrongfully accessed plaintiff's TransUnion credit report even though the lawyer had a copy of the report that showed the defendant had not accessed it).

The actions described in the OSC did not amount to bad faith, either individually or collectively. The conduct was not fraudulent or unethical, did not burden any of the parties or the Court, and had a reasonable (if, in part, mistaken) basis. Hence, the Court should not award sanctions under its inherent authority.

**CONCLUSION**

Duane Morris, Ms. Rodriguez-Taseff, and Messrs. Vance, DiMassa, and Kotler understand why the Court entered the OSC and are abashed by those reasons. Nonetheless, the facts and law are such that the Court should not impose sanctions. Messrs. DiMassa and Kotler reasonably relied on what Ms. Rodriguez-Taseff told them about the October 30 hearing, and neither they nor Mr. Vance were copied on any of the relevant emails among Ms. Rodriguez-Taseff (by herself or via Ms. Guillou), Mr. Lieberman, and Mr. Brownell. Mr. Vance was a limited participant in the cases, knew that Messrs. DiMassa and Kotler and Ms. Rodriguez-Taseff were the principal lawyers handling the matter for Ganglu, and did not attend the October 30 hearing. Ms. Rodriguez-Taseff's misapprehension of what occurred at that hearing, for which she takes full responsibility, is regrettable, but she did not file or email anything that was inconsistent with her understanding or intentionally misleading. No one on the Duane Morris team acted unethically or with a purpose to deceive and as far as we can tell, no one was misled by anything Duane Morris filed or wrote. Duane Morris respectfully requests that the Court enter an order that so finds and concludes, and discharge the OSC.

In the ordinary course, Duane Morris would have withdrawn as Ganglu's counsel when Holland & Knight appeared, but it seemed to the firm that withdrawing during the pendency of the OSC would have been improper.  Accordingly, Duane Morris respectfully requests that the Court should and approve Duane Morris's withdrawal as counsel for Ganglu.

    Respectfully submitted,

    STEARNS WEAVER MILLER WEISSLER
      ALHADEFF & SITTERSON, P.A.

    Suite 2200, Museum Tower
    150 West Flagler Street
    Miami, FL 33130
    Tel: (305) 789-3435
    Facsimile No.:  (305) 789-2651


    By:    */s/ Drew M. Dillworth*
           David C. Pollack
           Florida Bar No. 362972
           dpollack@stearnsweaver.com

           Drew Dillworth
           Florida Bar No. 167835
           ddillworth@stearnsweaver.com

## CERTIFICATE OF SERVICE

I CERTIFY that on January 22, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case, as indicated on the attached Service List.

    By:    */s/ Drew M. Dillworth*
           DREW M. DILLWORTH

# Mailing Information for Case 14-32819-JKO

**Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- Joaquin J Alemany    joaquin.alemany@hklaw.com, jose.casal@hklaw.com
- Valerie Barton Barnhart    vbarnhart@kelleykronenberg.com, jgardella@kelleykronenberg.com;sosber@kelleykronenberg.com
- Richard E Berman    reb@bermankean.com
- Timothy R Bow    tbow@mrthlaw.com, jgarey@mrthlaw.com,ycandia@mrthlaw.com,mrthbkc@gmail.com,ecfnotices@mrthlaw.com
- Daniel DeSouza    ddesouza@desouzalaw.com
- John C Hanson    jhanson@barthet.com
- Jason Z. Jones    jjones@joneslawpa.com
- Mark A Levy    mark.levy@brinkleymorgan.com, sandra.gonzalez@brinkleymorgan.com;brinkleymorganecf@gmail.com
- Nicole L Levy    nllevy@duanemorris.com, LRTaseff@duanemorris.com,dperez@duanemorris.com,YArnavat-Parga@duanemorris.com,shmarder@duanemorris.com,DiMassa@duanemorris.com,LJKotler@duanemorris.com
- Charles H Lichtman    clichtman@bergersingerman.com, lwebster@bergersingerman.com;efile@bergersingerman.com
- Brett D Lieberman    blieberman@messana-law.com, thurley@messana-law.com;emair@messana-law.com;nbarrus@messana-law.com;tmessana@messana-law.com;tmessana@bellsouth.net
- Jerry M Markowitz    jmarkowitz@mrthlaw.com, rrubio@mrthlaw.com,mrthbkc@gmail.com,gruiz@mrthlaw.com,ycandia@mrthlaw.com
- Thomas M. Messana    tmessana@messana-law.com, emair@messana-law.com;blieberman@messana-law.com;thurley@messana-law.com;tmessana@bellsouth.net;nbarrus@messana-law.com;ekates@bakerlaw.com;jmooremaley@messana-law.com;tzeichman@messana-law.com
- Glenn D Moses    gmoses@gjb-law.com, gjbecf@gjb-law.com;chopkins@gjb-law.com;vlambdin@gjb-law.com
- Office of the US Trustee    USTPRegion21.MM.ECF@usdoj.gov
- Alan J. Perlman    aperlman@ralaw.com, mhannau@ralaw.com
- Grace E. Robson    grobson@mrthlaw.com, jgarey@mrthlaw.com,mrthbkc@gmail.com,sramirez@mrthlaw.com
- Michael E Rothenberg    michael.rothenberg@hklaw.com, joaquin.alemany@hklaw.com
- Michael L Schuster    mschuster@gjb-law.com, gjbecf@gjb-law.com;mchang@gjb-law.com
- Steven J. Solomon    steven.solomon@gray-robinson.com, lnegron@gray-robinson.com;lauren.rome@gray-robinson.com;Amador.Ruiz-Baliu@gray-robinson.com
- Kevin E. Vance    kevance@duanemorris.com, cmackey@duanemorris.com;pnmendoza@duanemorris.com
- Kenneth A Welt    fl10@ecfcbis.com;pacerfilings@gmail.com;kaw@trustesolutions.net;court@trusteeservices.biz