**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**Fort Lauderdale Division**

In re:

US CAPITAL/FASHION MALL, LLC, et al.,        Case No.: 14-32819-JKO

                                 Chapter 7

      Debtors.

_____/        (Jointly Administered)

**MOTION FOR THE ENTRY OF AN ORDER (1) AUTHORIZING TRUSTEE TO
SCHEDULE AUCTION SALE OF FASHION MALL PROPERTY, (2) APPROVING
BIDDING PROCEDURES AND BREAKUP FEE IN CONNECTION WITH SALE, (3)
APPROVING THE FORM AND MANNER OF NOTICE OF SALE, (4) SCHEDULING A
FINAL HEARING, AND (5) APPROVING THE SALE OF THE FASHION MALL
PROPERTY FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES**

***HEARING REQUESTED FOR FEBRUARY 12, 2015 AT 1:30 P.M.***

**KENNETH A. WELT**, the Chapter 7 Trustee (the "Trustee") for US Capital/Fashion

Mall, LLC, US Capital Holdings, LLC, and Mapuche, LLC (collectively, the "Debtors"), files

this Motion for the entry of an Order (1) authorizing the Trustee to schedule an auction sale of

the Debtors' real property, (2) approving bidding procedures and breakup fee in connection with

the auction, (3) approving the form and manner of notice of sale, (4) scheduling a final hearing to

approve sale, and (5) approving the sale of the Trustee's interest in the Debtors' real property,

free and clear of liens, claims and encumbrances (the "Motion").  In support thereof, the Trustee

respectfully states as follows:

**PRELIMINARY STATEMENT**

The Trustee has entered into an Asset Purchase Agreement (the "APA") with RAM

Realty Acquisitions, LLC (the "Stalking Horse Bidder") for the sale of the Debtors' real

property.  The purchase price is $24,000,000.00.  The sale will be subject to higher and better

offers and will exposed to the market through the Trustee's exclusive real estate broker, CBRE, Inc. The Trustee submits that the sale of the Debtors' real property to the Stalking Horse Bidder, or the highest and best bidder following an auction pursuant to Court approved bidding procedures, is in the best interests of the estates.

## BACKGROUND

1.      On October 14, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Kenneth A. Welt was thereafter appointed as the Debtors' Chapter 7 Trustee.

2.      The Debtor, US Capital/Fashion Mall, LLC, is the owner of approximately 32.07 acres of real estate known as the former Plantation Fashion Mall located at 321 North University Drive in Plantation, Florida (the "Fashion Mall Property"). The Fashion Mall Property is an existing enclosed, vacated, mall comprising approximately 828,721 square feet of gross leasable area including department store anchor space, retail shop space, a food court, and an attached 7-story office building shell. US Capital/Fashion Mall, LLC is owned by US Capital Holdings, LLC, which in turn is owned by Mapuche, LLC.

3.      The Fashion Mall Property is vacant. The Debtors, U.S. Capital/Fashion Mall, LLC and US Capital Holdings, LLC, previously filed for relief under Chapter 11 before this Court on February 24, 2012 (Case No. 12-14517-JKO). On September 11, 2012, this Court confirmed those Debtors' Joint Plan of Reorganization.

4.      At the time of this bankruptcy filing, the Debtors were in the midst of a renovation of its on-site office complex. The Debtors also sought to redevelop the Fashion Mall Property into a project to be known as "321 North," which was intended to be a major retail office and residential project. The Debtors' business was operated from office space located

adjacent to the Fashion Mall Property, at 375 N. University Drive in Plantation, Florida (the "375 North Property").  The 375 North Property is titled in the name of Wei Chen, a party in interest in these cases.

5.     The Trustee believes that the best way to maximize the value of the Fashion Mall Property for the benefit of the estates is through an auction sale.  To this end, this Court approved the Trustee's retention of CBRE, Inc. ("CBRE") as the Trustee's exclusive real estate broke to market and sell the Fashion Mall Property (the "CBRE Engagement Order") [ECF No. 170].

## ASSET PURCHASE AGREEMENT

6.     On January 27, 2014, the Trustee entered into the APA with the Stalking Horse Bidder, a copy of which is attached as Exhibit "A".  A 10% deposit has been wired to the trust account of Genovese Joblove & Battista, PA.  A key terms of the APA are summarized as follows:

- Purchase Price:  $24,000,000.00 (the "Purchase Price").

- Deposit:  $2,400,000.00.

- Assets to be sold include:  The Fashion Mall Property, any personal property located at the Fashion Mall Property which is identified in the APA, any transferable development rights and related intangible personal property, any contracts and leases as identified in the APA, with any cure obligations to be borne by the Purchaser.

- Sale shall be as is/where is with no representations or warranties.

- Sale shall be free and clear of liens, claims and interests with any such liens, claims and interest to attach to the proceeds of the sale.

- Sale shall be subject to higher and better offers, and the APA shall serve as a backup bid in the event a higher and better offer is accepted following the auction.

- Break-Up Fee:  $200,000.00, payable solely upon closing of sale to a higher and better bidder (the "Break-Up Fee").

## RELIEF REQUESTED

### A.    Approval of Bidding Procedures and Terms of Sale

7.    In order to ensure that the maximum value is received for the Fashion Mall Property, the proposed sale will be to the highest and best bidder at auction. The Trustee seeks to adopt procedures which will foster competitive bidding among potential buyers, without eliminating or discouraging any qualifying bids. In connection therewith, the Trustee requests that the Court approve the following bidding and sale procedures, which the Trustee believes are likely to maximize the realizable value of the Fashion Mall Property (the "Sale Procedures"):

- Participation Requirements:  Unless otherwise ordered by the Court, in order to participate in the bidding process, an interested bidder must (a) wire into the trust account of Genovese Joblove & Battista, P.A., an escrow deposit of $2,400,000.00 no later than 5:00 p.m. on _____, 2015, which is five (5) business days prior to the scheduled auction (the "Bid Deadline"); (b) submit to Genovese Joblove & Battista, P.A. (i) a fully executed asset purchase agreement substantially in the form of the APA attached hereto as **Exhibit "A"** on or before the Bid Deadline (the effectiveness of such APA being contingent only upon the Qualified Bidder becoming the Successful Bidder pursuant to these procedures, subject only to Bankruptcy Court approval, with no due diligence or financing contingencies), with a purchase price of not less than $24,300,000.00, and (ii) a black-lined version of the APA to show any changes made by such bidder; and (c) submit to Genovese Joblove & Battista, P.A. such financial disclosures and documentation which demonstrate, in the Trustee's sole business judgment, the potential bidder's financial and other capabilities to consummate the sale. A person who timely complies with these requirements shall have submitted a "Qualified Bid" and shall be deemed a "Qualified Bidder". The list of Qualified Bidders will not be shared with anyone prior to the Auction.

  The Stalking Horse Bidder shall be deemed a Qualified Bidder.

- Auction:  In the event the Trustee receives a timely Qualified Bid, the Trustee will conduct an auction (the "Auction"). The Auction shall take place at the offices of Genovese, Joblove & Battista, P.A., 100 S.E. Second Street, 44th Floor, Miami, FL 33131, on _____, 2015, beginning at 10:00 a.m. ET, or such other time or place as the Trustee shall notify all Qualified Bidders.

- Auction Procedures:  At the Auction, the Trustee will identify the

4

Qualified Bid which shall serve as the opening bid. All Qualified Bidders shall be entitled to make any subsequent bids in increments of $100,000 (a "Subsequent Bid"). Bidding at the Auction shall continue until such time as the highest and best offer is determined by the Trustee in the exercise of his sole business judgment. The Trustee reserves the right to modify the bidding increments or announce at the Auction additional procedural rules for conducting the Auction in his sole business judgment.

- For the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by the Stalking Horse Bidder), the Trustee will, at each round of bidding, give effect to the Break-Up Fee that may be payable to the Stalking Horse Bidder under the APA.

- Each Qualified Bidder's offer shall be irrevocable until the selection of the Successful Bidder and, if applicable, the Back-Up Bidder (as set forth in the APA), provided that if such bidder is selected as the Successful Bidder or the Back-Up Bidder, its offer shall remain irrevocable until the of closing of the sale to the Successful Bidder or the Back-Up Bidder.

- <u>Broker's Commissions</u>: All broker commissions shall be in accordance with the terms and conditions of the CBRE Engagement Order. The Debtors' bankruptcy estate shall not be liable for any other commissions.

- <u>Successful Bid</u>: After the conclusion of the Auction, the Trustee shall submit the highest or best bid that has been accepted (the "Successful Bid") for approval by the Bankruptcy Court on April ____, 2015, at 299 E. Broward Blvd., Room 301, Fort Lauderdale, FL 33301 (the "Sale Hearing"). The Qualified Bidder who has the Successful Bid presented for approval to the Court shall be referred to as the "Successful Bidder." The closing of the transaction (the "Closing") shall take place on the later of (a) twenty (20) calendar after the entry of the Sale Order or (b) six (6) calendar days after the Sale Order is final and not subject to appeal (the "Closing Date"), or sooner as otherwise agreed to between the Successful Bidder and the Trustee provided that the Sale Order waives the 14 day stay pursuant to Fed. R. Bankr. P. 6004(h).

- The Successful Bidder must be prepared and must in fact consummate the purchase of the Fashion Mall Property in accordance with the APA. Upon the failure of the Successful Bidder to consummate the closing of the purchase of the Fashion Mall Property because of a breach or failure on the part of the Successful Bidder, then the Trustee may elect in his business judgment to close with the next highest or otherwise best Qualified Bidder to be the Successful Bidder (the "Back Up Bidder"). At the Sale Hearing, the Trustee intends to seek approval from the Court for the next highest or best bid (the "Back Up Bid"), which approval shall authorize the Trustee to consummate the Back Up Bid immediately after a

default under the Successful Bid without further order of the Court. Promptly following the conclusion of the Sale Hearing, the Trustee shall return the deposits to each unsuccessful Qualified Bidder (except the Back Up Bidder whose deposit shall either be returned upon the closing of the sale to the Successful Bidder or applied to the purchase price in a closing with such Back Up Bidder).

- <u>As is/where is:</u>  The Property will be sold in its "as is", "where is" condition and with all faults, with no guarantees or warranties, express or implied.

- <u>Sale Hearing:</u>  The Trustee requests that a final Sale Hearing be scheduled for no later than April 3, 2015.

**B.**     **Form and Manner of Notice of Sale Procedures and Sale**

8.     Pursuant to Bankruptcy Rule 2002(a), the Trustee is required to provide creditors with 21 days' notice of the Sale Hearing.  Pursuant to Bankruptcy Rule 2002(c), such notice must include the date, time and place of the Auction and the Sale Hearing, and the deadline for filing any objections to the relief requested.

9.     The Trustee has served or will serve this Motion on the Debtors, all creditors and the Office of the United States Trustee.  In addition, the Trustee will serve upon all creditors and interested parties the Order approving the Sale Procedures, in a form substantially as attached hereto as **Exhibit "B"**, which Order shall set forth among other things, the proposed Sale Procedures, the deadline for filing objections and competing bids, the location of the Auction, and the date and time of the Sale Hearing.

**C.**     **Approval of Break-Up Fee**

10.     To compensate the Stalking Horse Bidder for serving as the "stalking horse," thereby subjecting its bid to higher or better offers, the Trustee seeks authority to pay the Break-Up Fee in the amount of $200,000.00 if the Stalking Horse Bidder is not the Successful Bidder.

11.     The ability of the Trustee to offer the Stalking Horse Bidder the Break-Up Fee benefits the estates because it affords the Trustee the means necessary to induce the Stalking

Horse Bidder to submit its bid prior to the Auction, and thereby establish a "floor" and appropriate parameters for the submission of Qualified Bids in connection with the Auction. Thus, even if the Stalking Horse Bidder is paid the Break-Up Fee because it is not the Successful Bidder, the estates will have benefited from the higher floor established by the Stalking Horse APA and the certainty that such bid brings to the sale process. Approval of breakup fees, expense reimbursements and other forms of bidding protection in connection with the sale of significant assets pursuant to section 363 of the Bankruptcy Code therefore has become an established practice in bankruptcy cases. *See, e.g., In re Gemini Cargo Logistics, Inc.,* No. 06-10870 (Bankr. S.D. Fla. Apr. 17, 2006); *In re Piccadilly Cafeterias, Inc.,* No. 03-27976 (Bankr. S.D. Fla. Sept. 14, 2004).

12.     Moreover, the amount of the Break-Up Fee is less than 1% (0.8333%) of the Purchase Price, and is consistent with and/or below the range of breakup fees approved by Courts in this District and otherwise. *See In re Protective Products of America, Inc., et al.*, No. 10-10711-JKO (Bankr. S.D. Fla. Jan. 19, 2010) (approving 4% break-up fee and expense reimbursement); *In re Arch Aluminum & Glass Co., Inc.*, 2009 WL 8189448 (Bankr. S.D. Fla. 2009) (approving 1.5% break-up fee plus expense reimbursement up to $800,0000); *In re Tousa, Inc., et al.,* Case No. 08-10928-JKO (Bankr. S.D. Fla. Dec. 21, 2009) (approving 3% break-up fee).

13.     The Trustee believes, in his business judgment, that the Break-Up Fee is reasonable and appropriate in view of, among other things, the size and nature of the transaction contemplated by the APA. Moreover, the Break-Up Fee was a material inducement for, and a condition of, the Stalking Horse Bidder's entry into the APA. Accordingly, the Trustee requests that the terms of the APA relating to the Break-Up Fee be approved.

**D.**    **Sale of Property Free and Clear of Liens, Claims and Encumbrances**

14.    The Trustee seeks to sell the Fashion Mall Property to the highest and best bidder following the Auction, free and clear of liens, claims and encumbrances pursuant to Section 363(b) of the Bankruptcy Code.

15.    Section 363(f) of the Bankruptcy Code authorizes the Trustee to sell property of the estate free and clear of any liens, claims or encumbrances if one of the following is met: (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents, (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property, (4) such interest is in bona fide dispute or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.  The language of Section 363(f) is in the disjunctive, so that a sale free and clear of interests can be approved if any of the aforementioned conditions is met. *In re Heine*, 141 B.R. 185, 189 (Bankr. D.S.D. 1992); *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988).

16.    The liens, claims and encumbrances on the Fashion Mall Property include (i) unpaid real property taxes and tangible property taxes which total approximately $3 million according to Claim No. 1-1 filed by the Broward County Records, Taxes & Treasury Division; (ii) a construction mortgage to GHJ Construction, Inc. with an outstanding balance per the Debtors' schedules of approximately $12,100,000, which claim is disputed by the Debtors; and (iii) recorded mechanics' liens related to the office building renovation, which total approximately $700,000.

17.    Accordingly, based on review of available information, the Trustee estimates that the aggregate value of all liens, claims and encumbrances on the Property (without taking to

account the disputed nature of these claims) is less than $16 million.  The Purchase Price of $24

million well exceeds the aggregate value of all liens on the Fashion Mall Property.

18.     Therefore, the sale should be approved, at a minimum, pursuant to Section

363(f)(3) of the Bankruptcy Code.

19.     The Trustee will have provided notice of the sale and the Sale Procedures to all

creditors and interested parties and CBRE will have extensively marketed the Fashion Mall

Property.  The Trustee submits that, as a result of the Auction, the sale will be for a fair and

reasonable market price and, of course, conducted in good faith.  In connection therewith, the

submits that Stalking Horse Bidder (or the Successful Bidder) will have acted in good faith and

therefore the Trustee requests that the Sale Order provide appropriate findings and protections

pursuant to Section 363(m) of the Bankruptcy Code.

20.     Collectively, these factors clearly evidence that the Trustee's proposed sale of the

Fashion Mall Property to the highest and best bidder at auction, without any further delay, is in

the best interest of all creditors of the estates.

**E.      Assumption and Assignment of Executory Contracts and Unexpired Leases**

21.     The APA provides for the assumption and assignment of any Assumed Contracts

which are specifically identified in the APA.  Those Assumed Contracts, if any, are to be

designated on or before February 6, 2014.  Notice of such assumption and assignment will be

provided to the counterparties to such agreements along with the respective cure amounts, if any,

with an opportunity to object to such assumption and assignment.  In the event that Assumed

Contracts are not so designated, they will not be part of the sale to the Stalking Horse Bidder.  If

another Qualified Bidder so designates any Assumed Contract as part of its APA and thereafter

becomes the Successful Bidder, the Trustee may file a separate motion seeking the Court's

approval of the assumption and assignment of such Assumed Contracts to the Successful Bidder. Pursuant to the APA, the Successful Bidder is obligated to cure any defaults under any of the Assumed Contracts.

**F.     Waiver of Stay Period Pursuant to Fed. R. Bankr. P. 6004(h)**

22.     The APA provides for the closing of the sale once the Sale Order becomes final and non-appealable, unless the parties agree in writing to close sooner.  In connection therewith, the Trustee requests that the Court waive the 14 day stay period pursuant to Fed. R. Bankr. P. 6004(h).

**G.     Scheduling Final Hearing on Sale Motion**

23.     The Trustee requests that the Court set a final hearing on the Sale Motion, which the Trustee requests be not later than April 3, 2015.

**WHEREFORE**, the Trustee respectfully requests that this Court enter an Order (1) authorizing the Trustee to schedule an auction sale of the Fashion Mall Property, (2) approving bidding procedures and breakup fee in connection with auction sale, (3) approving the form and manner of notice of sale, (4) scheduling a final hearing to approve sale, (5) approving the sale of the Trustee's interest in the Debtors' real property, free and clear of liens, claims and encumbrances, and (6) granting such other and further relief as is proper.

Respectfully submitted this 28th day of January, 2015.

GENOVESE JOBLOVE & BATTISTA, P.A.
Attorneys for Chapter 7 Trustee
100 Southeast Second Street, Suite 4400
Miami, Florida 33131
Telephone: (305) 349-2300
Facsimile : (305) 349-2310

By: /s/ Glenn. D Moses, Esq.
      Glenn D. Moses
      Florida Bar No. 174556

gmoses@gjb-law.com
Michael L. Schuster
Florida Bar No. 57119
mschuster@gjb-law.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served this 28th day of January, 2015 via CM/ECF upon all parties registered to receive notices of electronic filing in this case.  Upon the issuance of a notice of hearing hereon, the Trustee will serve a copy of this Motion and such notice of hearing via U.S. mail upon all creditors and parties in interest listed on the creditor mailing matrices in these cases, and file a further certificate of service.

By: /s/ Glenn D. Moses
    Glenn D. Moses, Esq.
    Florida Bar No. 174556

11

# EXHIBIT "A"

ASSET PURCHASE AGREEMENT

BETWEEN

KENNETH A. WELT, AS CHAPTER 7 TRUSTEE OF US
CAPITAL/FASHION MALL, LLC, US CAPITAL HOLDINGS,
LLC and MAPUCHE, LLC

as Seller

AND

RAM REALTY ACQUISITIONS, LLC

as Buyer

Property:  321 North University Drive, Plantation, Florida

Dated as of:  January __, 2015

[11361-001/2305800/1]

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "*Agreement*"), dated as of the ___ day of January, 2015, between KENNETH A. WELT, not individually but solely as the Chapter 7 Trustee ("*Seller*") of US CAPITAL/FASHION MALL, LLC, US CAPITAL HOLDINGS, LLC and MAPUCHE, LLC (collectively, the "*Debtors*"), and RAM REALTY ACQUISITIONS, LLC, a Florida limited liability company (the "*Buyer*"), recites and provides:

### RECITALS

One or more of the Debtors own real property located at 321 North University Drive in Plantation, Florida which real property is described on Exhibit A hereto, together with all improvements thereon and appurtenances thereunto belonging (the "*Real Property*").

A voluntary petition for relief under Chapter 7, Title 11 of the United States Code (the "*Bankruptcy Code*") was filed by each of the Debtors in the United States Bankruptcy Court for the Southern District of Florida (the "*Bankruptcy Court*") on October 14, 2014. Thereafter, Seller was appointed as the Chapter 7 trustee for each of the Debtors. The Debtors' cases are pending in the Bankruptcy Court as Case No. 14-32819-JKO, *et. al.* (the "*Bankruptcy Case*"). The bankruptcy estate of each of the Debtors is collectively referred to herein as the "*Estate*."

Seller believes that it is in the best interests of the Estate to sell the Assets (defined below) to Buyer, and Buyer wishes to purchase the Assets from Seller and assume certain liabilities of Debtors, all subject to the approval of the Bankruptcy Court and as more particularly provided below.

### AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows.

1.    Court Approval.  The parties' respective obligations to purchase and sell the Assets pursuant to this Agreement are subject to Bankruptcy Court approval after notice and a hearing, subject to higher and better offers, and the provisions, requirements and limitations of the Sale Order (defined below).

2.    Sale and Purchase of Property.  Subject to the terms and conditions of this Agreement and the Sale Order, and subject in all events to the approval of the Bankruptcy Court, on the Closing Date (defined below), Seller shall sell, assign, transfer, convey and deliver, or cause to be sold, assigned, transferred, conveyed and delivered to Buyer, and Buyer shall purchase and acquire from Seller, Seller's right, title and interest in and to the following (collectively, the "*Assets*"):

2.1    the Real Property;

2.2    the Assumed Contracts (defined below);

2.3    (i) all tangible personal property and equipment, if any, owned by Debtors and located on the Real Property, which is described on Exhibit "B" hereto; and (ii) to the extent in Seller's actual possession, all books, records, correspondence and documents of Debtors related to the operation of the Real Property and all plans, specifications, floor plans, drawings and renderings of all or any part of the Real Property (the "*Tangible Personal Property*"); and

2.4    all transferable development rights, consents, authorizations, variances or waivers, licenses, permits and approvals from any governmental or quasi-governmental agency, department, board, commission, bureau or other entity or instrumentality solely in respect of the Real Property, all transferable warranties and guaranties, if any, held by Debtors in connection with the Assets (collectively, the "*Intangible Personal Property*").

3.    <u>Executory Contracts and Unexpired Personal Property Leases</u>.    At the Closing, Seller shall assign to Buyer and Buyer shall assume from Seller the executory contracts and unexpired personal property leases which are listed on ***Schedule A*** attached hereto (the "*Assumed Contracts*").    Buyer agrees to: (a) cure all defaults, if any, existing under the Assumed Contracts or provide adequate assurance that it will promptly cure all defaults; (b) compensate or provide adequate assurance that it will promptly compensate the parties to the Assumed Contracts other than Seller or the Debtors for any actual pecuniary loss to such parties resulting from all defaults; and (c) provide adequate assurance of future performance under the Assumed Contracts, in each case as determined by the Bankruptcy Court pursuant to Section 365 of the Bankruptcy Code.    If Buyer is required to make any payments to fulfill its obligations under this Section, such payments shall be in addition to the Purchase Price.

4.    <u>Conveyance of Property</u>.    Subject to and in accordance with the provisions of this Agreement and the Sale Order, and subject to approval of the Bankruptcy Court, Seller shall execute and deliver to Buyer on the Closing Date the following instruments pursuant to which Seller shall sell, assign, transfer, convey and deliver the Assets to Buyer free and clear of all Liens in accordance with sections 363(b) and (f) of the Bankruptcy Code, with such Liens to attach to the proceeds of sale, on an AS-IS, WHERE-IS BASIS, WITHOUT REPRESENTATIONS OR WARRANTIES:

4.1    Trustee's Quitclaim Deed (the "*Deed*") conveying the Real Property to Buyer which shall be free and clear of any and all encumbrances and restrictions in accordance with section 363(f) of the Bankruptcy Code, except those approved by Buyer.

4.2    Bill of Sale (the "*Bill of Sale*") transferring the Tangible Personal Property to Buyer; and

4.3    Separate Assignment and Assumption Agreements for all of the Assumed Contracts.

5.      Excluded Assets.  The term "*Excluded Assets*" means the following assets of Seller, all of which are excluded from the purchase and sale transaction provided for in this Agreement:

      5.1      the Purchase Price and all cash, cash equivalents, bank accounts or similar types of investments, such as certificates of deposit, treasury bills and other marketable securities;

      5.2      all tax returns and all tax credits, tax benefits and claims for refunds in respect of any federal, state, local, and/or foreign income, gross receipts, capital stock, franchise, profits, withholding, social security, unemployment, disability, real estate, personal property, stamp, excise, occupation, sales, use, transfer, value added, alternative minimum, severance, estimated or other taxes, including any interest or addition thereto, for periods ending on or before the Closing Date;

      5.3      subject to Section 17, any and all right, title and interest in any insurance policy(ies) in connection with the ownership or operation of the Real Property by the Seller and/or the Debtors and any and all amounts claimed and/or collected pursuant to such insurance policy(ies);

      5.4      all rights and properties not owned by the Debtors;

      5.5      the membership interests and any other ownership interests in the Debtors, and the company minute books, transfer records, and all other company documents of Debtors;

      5.6      all contract rights, rights of action, claims for damages, rights of setoff, rights of recoupment, claims, demands, actions, causes of action, judgments, and pending litigation, except those that specifically relate to the Assumed Contracts;

      5.7      all rights, claims, defenses and other matters that relate to any construction contracts affecting the Property, except that Buyer shall have all such rights, claims and defenses if such contracts are Assumed Contracts; notwithstanding anything herein to the contrary, any construction defect or related claims which arose prior to Closing shall be an Excluded Asset;

      5.8      all rights, claims, causes of action, defenses and other matters that relate or belong to the Debtors and/or the Seller, including without limitation and any claims, or causes of action which are property of the estate under section 541 of the Bankruptcy Code including those arising under or in connection with Chapter 5 of the Bankruptcy Code;

      5.9      any prepaid expenses, advance payments, security deposits, rents and other items related to the Assets that are applicable to the period prior to Closing, or that relate to executory contracts or unexpired leases, other than with respect to any Assumed Contracts;

      5.10      any bonds held with or in favor of the City of Plantation relating to the Real Property;

      5.11      the Debtors' accounts receivable; and

5.12    any asset not specifically included in the definition of "Assets".

6.    Deposit

6.1    Upon execution of this Agreement by the last of Buyer and Seller, Buyer shall have deposited the sum of $2,400,000.00 of the Purchase Price with Seller's Counsel, Genovese Joblove & Battista, P.A. (the *"Deposit Agent"*), in the form of a wire transfer or certified check payable to Deposit Agent, in escrow, as Buyer's initial deposit under this Agreement (the *"Deposit"*), which Deposit shall be held without interest and shall be applied against the Purchase Price at Closing, or returned to Buyer if this Agreement is not approved by the Bankruptcy Court, or paid to Seller in the event of Buyer's unexcused failure to perform its obligations at Closing.

6.2    If all of the contingencies set forth in Section 11 are satisfied or waived in writing by Buyer, and Seller then fails, after the entry of the Sale Order, to close on the sale of the Property to Buyer as required by this Agreement, Buyer shall be entitled to a refund of the Deposit, as its sole and exclusive remedy and as liquidated damages for Seller's failure to close.

7.    Purchase Price.

7.1    Purchase Price.  The purchase price for the Assets shall be $24,000,000.00 (the *"Purchase Price"*).  At the Closing, Buyer shall:  (i) pay to Seller the Purchase Price, plus or minus the net amount of any prorations provided for in Section 13, by wire transfer of immediately available funds to such account(s) as Seller shall designate; and (ii) execute an assumption agreement pursuant to which Buyer assumes the Assumed Liabilities (as defined in Section 8).

8.    Assumption of Liabilities.

8.1    The term *"Assumed Liabilities"* refers to all of Debtors' obligations listed on *Schedule B*, as well as any liabilities that this Agreement expressly provides that Buyer shall assume.  Buyer shall file a notice with the Bankruptcy Court, at least two (2) business days prior to the final hearing to approve the sale of the Assets, setting forth a final schedule of Assumed Liabilities.  Other than the Assumed Liabilities, Buyer is neither assuming nor agreeing to pay or discharge any of the liabilities or obligations of Seller, and nothing in this Agreement or otherwise shall be construed to the contrary.  Other than as specifically set forth herein, all liabilities and obligations of Seller, whether known or unknown, direct or contingent, in litigation or threatened, or not yet asserted, are and shall remain the responsibility of Seller.

8.2    The Debtors have filed appeals of 2011, 2012, 2013 and 2014 real property taxes.  Seller shall be entitled to all refunds for such years.  Buyer shall have no liability with respect to such real estate taxes or appeals.

9.    Bankruptcy Court Approval, Competing Transactions, Backup Bid and Break-Up Fee

    9.1    Bankruptcy Court Approval.  Seller shall use commercially reasonable efforts to obtain Bankruptcy Court approval of the sale of the Assets to Buyer pursuant to this Agreement (the "*Sale Order*"), which shall contain the following provisions:

        (a)    a finding that Seller prepared and served a motion seeking the Sale Order, and such motion and notice were proper and sufficient as to all parties entitled to same;

        (b)    the sale and transfer of the Assets to the Buyer is approved pursuant to Sections 363(b), (f) and (m) of the Bankruptcy Code;

        (c)    the assignment an assumption of the Assumed Contracts as provided herein is approved pursuant to Sections 365(a) and (f) of the Bankruptcy Code;

        (d)    all defaults under the Assumed Contracts have been cured or waived by the counterparties to the Assumed Contracts or Buyer has provided adequate assurances of future performance in respect of the Assumed Contracts;

        (e)    the sale of the Assets to Buyer pursuant to this Agreement will be free and clear of all Liens pursuant to Section 363(f) of the Bankruptcy Code, with such Liens, attaching to the sale proceeds;

        (f)    Buyer is not a mere continuation of Seller or Debtors, there is no continuity of enterprise between Seller or the Debtors and Buyer, Buyer is not a successor to Seller or the Debtors and the transactions contemplated by this Agreement do not amount to, or otherwise constitute a consolidation, merger or *de facto* merger of Buyer and Seller or the Debtors;

        (g)    Buyer has acted in good faith within the context of and is entitled to the protections of Section 363(m) of the Bankruptcy Code;

        (h)    the transactions contemplated hereunder are not avoidable pursuant to Section 363(n) of the Bankruptcy Code;

        (i)    Buyer is not assuming or acquiring any of the Excluded Assets;

        (j)    all Persons are enjoined from in any way pursuing Buyer or the Assets by suit or otherwise to recover on any Liens which they may have against Debtors or the Assets as of the Closing Date; and

        (k)    the Sale Order shall be effective immediately notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d).

    9.2.    Competing Transaction.  This Agreement is subject to approval by the Bankruptcy Court and the consideration by Seller of higher or better competing bids other than

from Buyer pursuant to procedures approved by the Bankruptcy Court (each a "*Competing Bid*"). From the date hereof (and any prior time) and until the completion of the auction contemplated hereby or as otherwise directed by the Bankruptcy Court, Seller is permitted to cause his respective representatives to initiate contact with, solicit or encourage submission of any inquiries proposals or offers by, any Person (in addition to Buyer and its Affiliates, agents and representatives) in connection with any sale or other disposition of the Assets. In addition, Seller shall have the responsibility and obligation to respond to any inquiries or offers to purchase all or any part of the Assets and perform any and all other acts related thereto which are required under the Bankruptcy Code or other applicable law, including supplying information relating to the Assets to prospective buyers.

9.3.    Backup Bid.    In the event any Person other than Buyer is either the successful bidder at the conclusion of the Auction or the Bankruptcy Court has entered a Final Sale Order approving the sale of all or substantially all of the Assets to any Person other than Buyer, Buyer shall be deemed a backup bidder (the "*Backup Bidder*") and this Agreement shall be enforceable until a Closing with a Person other than Buyer shall occur. Accordingly, in accordance with this Section 9.3 and Section 6.1, the Deposit Escrow Agent shall retain the Deposit and not refund to Buyer until a Closing takes place with a Person other than Buyer.

9.4.    Break-Up Fee.    In the event Buyer is not in default hereunder, has not terminated this Agreement pursuant to the terms hereof and is ready, willing, and able to close on the purchase of the Assets, and should Seller accept a higher or better offer to sell the Assets to another Buyer ("*Alternative Buyer*"), which sale is approved by the Bankruptcy Court in the Bankruptcy Case, and such transaction closes, then Seller agrees that Buyer shall be entitled to receive TWO HUNDRED THOUSAND AND 00/100 DOLLARS ($200,000.00) as a break-up fee to reimburse Buyer for the value of its time, costs, and expenses incurred in connection with this transaction, including Buyer's agreement to serve and participate as the "stalking horse" bidder under the Sale Procedures Order (the "Break-Up Fee"). The Break-Up Fee shall be entitled to status as an administrative expense under Bankruptcy Code section 503(b)(1), shall be secured by a Lien on the deposit of the Alternative Buyer or the closing proceeds in the event the transaction with the Alternative Buyer closes, and shall be paid solely and exclusively from such forfeited deposit or closing proceeds. Any sums becoming payable to Buyer pursuant to this Section 9.4 shall be paid to Buyer promptly after the closing with any such Alternative Buyer approved in the Bankruptcy Case or, if applicable, promptly after the deposit on such transaction is forfeited.

10.    Conditions to Obligations of Buyer. The obligations of Buyer to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment at or before Closing of each and every one of the following conditions, which may be waived in whole or in part by Buyer:

10.1    the Sale Order shall have been entered by the Bankruptcy Court, and the Sale Order shall contain findings set forth in Section 9 above; and

10.2    the representations and warranties of Seller shall be true in all material respects on and as of the Closing Date, with the same effect as though made on and as of such

date, and Seller shall not be in default in any material respect under the provisions of this Agreement.

10.3    If any of the foregoing conditions is not satisfied by Seller or waived by Buyer before or at the Closing, Buyer may terminate this Agreement and Seller shall forthwith return the Deposit to the Buyer, and neither Party shall have any further obligations to the other, other than under Section 18 and any other provision of this Agreement that expressly provides for such survival.

11.    Conditions to Obligations of Seller.  The obligations of Seller to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment at or before the Closing of the following conditions, which may be waived in whole or in part, by Seller:

11.1    the Sale Order shall have been entered by the Bankruptcy Court;

11.2    the representations and warranties of Buyer shall be true in all material respects on and as of the Closing Date, with the same effect as though made on and as of such date, and Buyer shall not be in default in any material respect under the provisions of this Agreement; and

11.3    Buyer shall have paid to Seller the Purchase Price and paid or escrowed the other amounts required by this Agreement to be paid or escrowed at Closing.

12.    Closing.

12.1    Unless otherwise agreed to by the Seller and Buyer in writing, the closing of the transactions contemplated by this Agreement (the "*Closing*") shall take place on the later of (a) twenty (20) calendar after the entry of the Sale Order or (b) six (6) calendar days after the Sale Order is final and not subject to appeal (the "*Closing Date*").  The Seller and Buyer may agree in writing to proceed to Closing at an earlier date provided that the Sale Order contains a waiver of the 14 day stay period in accordance with Fed. R. Bank. P. 6004(h).  Notwithstanding anything herein to the contrary, if the Sale Order has been stayed by an order of a court of competent jurisdiction, then the Closing Date shall be postponed until not more than five (5) business days after the stay has been finally dissolved.  If such postponement is longer than 120 days, Buyer and Seller shall each have the right to terminate this Agreement by giving written termination notice to the other, in which case neither Party shall have any further obligations under this Agreement except those that expressly survive the termination of this Agreement.

12.2    Closing shall be conducted through an escrow arrangement by the title insurance agent through which Buyer is purchasing title insurance for the Property (the "*Closing Agent*"), provided such Closing Agent is reasonably satisfactory to Seller.  Closing shall take place at the offices of Genovese Joblove & Battista, P.A., 100 S.E. 2nd Street, 44th Floor, Miami, Florida 33131 (or such other place as the parties may designate in writing).  Each Party shall deliver written closing instructions to the Closing Agent consistent with the provisions of this Agreement.

12.3    At the Closing, Seller shall deliver to Buyer:

(a)  the transfer instruments provided for in Section 4; and

(b)  such other documents as Buyer may reasonably request to consummate the transaction provided for in this Agreement.

12.4  At the Closing, Buyer shall deliver to Seller:

(a)  the Purchase Price as provided in <u>Section 7;</u>

(b)  the transfer instruments provided for in <u>Section 4</u>; and

(c)  such other documents as Seller may reasonably request to consummate the transaction provided for in this Agreement.

12.5  Buyer shall pay, on the Closing Date, the cost of recording the deed and the cost of the issuance of the title insurance policy premium for any owner's title insurance policy (and any loan policy) obtained by Buyer or its lender (if applicable), the cost of all title updates, title examination, and lien searches, and the cost of any inspections and/or surveys, any settlement fees charged by the Person conducting the Closing, state documentary stamps which are required to be affixed to the instrument of conveyance, the cost of recording any corrective documents, the cost of recording of the deed and all other costs and charges of Closing. Each Party shall pay its own attorneys' and other professionals' fees.

13.  <u>Prorations.</u>

13.1  Real property taxes and assessments for the tax year in which the Closing occurs, and all utility bills shall be apportioned between Buyer and Seller as of the Closing Date. If final documentation of any such item is not available at the Closing, the required proration shall be made on the basis of the best available documentation and a further proration shall be made between the parties when the final documentation or billing becomes available, provided that if the final documentation or billing is not available within 30 days after the Closing, then no further proration shall be made. The provisions of this Section 13 shall survive the Closing.

13.2  The parties agree that, after the Closing Date, each shall hold and shall promptly transfer and deliver to the other, from time to time as and when received by them, any cash, checks with appropriate endorsements or other property that they may receive on or after the Closing Date which properly belong to the other Party, including any insurance proceeds, and shall account to the other for all such receipts.

14.  <u>Representations and Warranties of Seller.</u>  Seller represents and warrants to Buyer that Seller is the duly appointed Chapter 7 Trustee for the Debtors, and that, subject to the entry of the Sale Order without any stay being obtained by any party in interest within the requisite period, Seller has the power to convey the Assets to Buyer pursuant to this Agreement and subject to and in accordance with the provisions of the Sale Order.

15.  <u>Representations and Warranties of Buyer.</u>  Buyer hereby represents and warrants to Seller, which representations and warranties shall survive Closing, as follows:

15.1 At the time of closing, Buyer will be a limited liability company duly organized and validly existing under the laws of the State of Florida.

15.2 The execution, delivery and performance by Buyer of this Agreement and the other documents and instruments contemplated hereby are within the power of Buyer and have been duly authorized by all necessary action by Buyer. This Agreement is, and the other documents and instruments contemplated hereby will be, when executed and delivered by Buyer, the valid and binding obligations of Buyer, enforceable against Buyer in accordance with their respective terms.

15.3 Neither the execution and delivery of this Agreement nor the consummation of the transactions contemplated hereby will result in a violation by Buyer of any federal, state, local or other law or governmental requirement of any kind, nor any rules, regulations, permits, licenses and orders promulgated thereunder.

15.4 BUYER, ON BEHALF OF ITSELF AND ANY AFFILIATES OR RELATED PARTIES, UNDERSTANDS AND AGREES THAT THE ASSETS ARE SOLD, ASSIGNED, TRANSFERRED AND CONVEYED TO BUYER IN "AS IS" CONDITION ON A "WHERE IS" BASIS, WITH NO CONTINGENCIES OF ANY KIND INCLUDING FINANCING OR DUE DILIGENCE AND WITHOUT ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR ANY OTHER WARRANTY, EXPRESS OR IMPLIED, EXCEPT AS OTHERWISE EXPRESSLY STATED IN THIS AGREEMENT.

16. <u>Default and Remedies</u>.

16.1 If the Closing fails to occur because of a default, misrepresentation or breach of warranty by Buyer, Seller shall be entitled to retain the Deposit as Seller's sole remedy at law or in equity for Buyer's failure to close on the purchase of the Property. In any such event, Buyer shall continue to be liable under any provisions of this Agreement that expressly survive the termination of this Agreement.

16.2 If the Closing fails to occur solely because of a default by Seller under the provisions of this Agreement, the Sale Order or any other order of the Bankruptcy Court applicable to the sale of the Property hereunder, then Buyer may, as its exclusive remedy, receive a return of its Deposit and terminate this Agreement by notice to Seller.

17. <u>Risk of Loss</u>. Risk of loss to the Real Property or any part thereof from damage or destruction by fire or other casualty or by reason of condemnation shall remain upon Seller until the Closing. If, between the date hereof and the Closing, any portion of the Real Property shall be damaged or destroyed by fire or other casualty or be subject to any claim of condemnation, Seller shall notify Buyer in writing of said damage, destruction, casualty or loss and the extent thereof or of such condemnation claim as the case may be. If the cost to repair any such damage exceeds $750,000 or in the event of any such claim for condemnation, Buyer shall have the option, exercisable by notice to Seller given within ten days after Seller's notice to Buyer of said damage, destruction, casualty, loss or condemnation, to either: (a) terminate this

Agreement, whereupon Deposit Agent shall forthwith refund the Deposit to Buyer and upon such refund this Agreement shall terminate and neither party shall have any further liability to the other hereunder (except for any rights and obligations arising under this Agreement which by their terms survive such termination); or (b) elect to proceed with this Agreement and pay the full Purchase Price, in which case Seller shall assign to Buyer any insurance or condemnation proceeds to which Seller or its successors may be entitled as a result of such damage, destruction, condemnation, loss or casualty without Seller replacing or repairing any such damage. If Buyer fails to give such written notice, Buyer shall be conclusively deemed to have chosen option (b). If the cost to repair any such damage is equal to or less than $750,000, Buyer shall proceed to Closing, in which event Seller agrees to pay to Buyer at the Closing all insurance or condemnation proceeds which Seller has received as a result of the same, if any, and assign to Buyer all insurance proceeds payable as a result of the same without Seller replacing or repairing such damage, and Seller will have no further obligations to Buyer in respect of such loss or damage.

18.   No Claims of Brokers. Except with respect to any commissions due and owing to CBRE in accordance with its listing agreement approved by the Bankruptcy Court [ECF No. 170], Seller shall not be responsible for any broker's commissions. Buyer shall indemnify and hold the Seller harmless from the claims of any other broker or finder claiming through the Buyer. The provisions of this Section shall survive the Closing and any termination of this Agreement.

19.   Parties' Access to Records after Closing. Except as provided in Section 20, the Parties agree to preserve until the earlier of the second anniversary of the Closing Date or the date the Debtors' bankruptcy estate is closed, all records in their possession relating to any of the Assets. Buyer shall permit the Seller or his representatives to gather and prepare such information as the Seller may reasonably require for preparing its tax returns for periods prior to the Closing Date. If either Seller or Buyer needs access to records in the possession of the other Party relating to any of the Assets for purposes of preparing income tax returns or for complying with any audit request, subpoena or other investigative demand by any governmental authority or for any civil litigation or for any other legitimate purpose not injurious to the other Party, such Party shall allow representatives of the other Party access to such records, including reasonable use of office space and facilities, during regular business hours at such Party's place of business for the sole purpose of obtaining information for use as provided for in this Section and shall permit such other Party to make extracts and copies thereof as may be necessary or convenient.

20.   Disposal of Records. Either Party may at any time and from time to time after the Closing Date and prior to the earlier of the second anniversary of the Closing Date or the date the Debtors' bankruptcy estate is closed, dispose of the records in its possession relating to the Property after giving 60 days' prior written notice of such disposal to the other Party; provided, however, that if such records are pertinent to any dispute, claim, litigation, governmental investigation or the determination of any federal, state or local tax liability of the other Party, then such other Party shall have the right, by giving written notice to the Party desiring to dispose of records within such 60 day period, to require the Party desiring to dispose of records to retain such records until such time as the other Party may specify or provide such records to the other Party.

21.    Further Assurances. Each Party shall cooperate with the other and execute and deliver to the other Party such other instruments and documents and take such other actions as may be reasonably requested from time to time by the other Party as necessary to carry out, evidence, and confirm the intended purposes of this Agreement.

22.    Deposit Agent Provisions.

22.1    If conflicting demands relating to this Agreement are made upon the Deposit Agent, the parties hereto expressly agree that the Deposit Agent shall have the absolute right to do either or both of the following: (i) withhold and stop all actions in performance of this escrow and await settlement of the controversy by final appropriate legal proceedings or as otherwise mutually directed in writing by Buyer and Seller; or (ii) file suit in declaratory relief or interpleader and obtain an order from the Bankruptcy Court requiring the parties to interplead and litigate in such court their several claims and rights amongst themselves. Upon the filing of any such declaratory relief or interpleader suit and depositing with the Bankruptcy Court all funds deposited by the parties under this Agreement, the Deposit Agent shall thereupon be fully released and discharged from any and all obligations to further perform the duties or obligations imposed upon it by this Agreement.

22.2    In no event shall Deposit Agent be liable for any act or omission under or in respect of this Agreement except where Deposit Agent's acts or omission is the result of its gross negligence or willful misconduct. Accordingly, Deposit Agent shall not incur any liability with respect to (i) any action taken or omitted in good faith, including upon advice of its legal counsel given with respect to any questions relating to the duties and responsibilities of the Deposit Agent under this Agreement, or (ii) any action taken or omitted in reliance on any instrument, not only as to its due execution and the validity and effectiveness of its provisions, but also as to the truth and accuracy of any information contained therein, which Deposit Agent shall in good faith believe to be genuine, to have been signed or presented by a person or persons having authority to sign or present such instrument, and to conform with the provisions of this Agreement.

22.3    Buyer and Seller reserve the right, at any time and from time to time, by mutual agreement, to substitute a new escrow agent in place of Deposit Agent. In addition, Deposit Agent reserves the right to resign from its role as escrow agent by giving the Seller and the Buyer written notice of such resignation. If Seller and Buyer have jointly designated a successor escrow agent in writing, then Deposit Agent shall deliver any funds held by Deposit Agent under this Agreement to such successor escrow agent. However, if no such successor escrow agent is designated by Seller and Buyer in writing within ten days after any notice of resignation from Deposit Agent, then Deposit Agent may deliver any such funds to the Bankruptcy Court, and interplead Buyer and Seller in connection therewith.

22.4    Seller acknowledges that Deposit Agent also serves as Seller's legal counsel in connection with this Agreement, and both Seller and Buyer consent to Deposit Agent serving in such dual capacity. In the event of any actual dispute or adversity between Seller and Buyer, Deposit Agent shall be entitled to resign as Deposit Agent and to represent Seller in such

dispute or adversity, and in such case shall deliver any funds held by Deposit Agent pursuant to this Agreement the Funds either to a successor escrow agent designated by Seller and Buyer as provided above, or to a court of competent jurisdiction as provided for above.

     23.    <u>Certain Definitions; Rules of Construction</u>.

     23.1    The following terms have the following meanings in this Agreement:

     (a)    "*Auction*" shall have the meaning set forth in the Sale Procedures Order.

     (b)    "*Legal Costs*" means court costs and attorneys' fees and costs, including the costs of paralegals, whether or not any mediation, arbitration or legal proceeding is filed, or if any mediation, arbitration or legal proceeding is filed, then all such costs incurred at any point in such mediation, arbitration or legal proceeding, including trial and all levels of appeal.

     (c)    "*Lien*" means "any interest in" the Assets as used in Section 363(f) of the Bankruptcy Code and includes any lien (including any tax lien or judgment lien), pledge, security interest, mortgage or lis pendens, contracts, options or other rights to acquire any condominium units or any other interest in the Assets, but does not include any easements or restrictions of record.

     (d)    *Party*" or "*Parties*" mean Seller and/or Buyer, as the context may require.

     (e)    "*Person*" means any individual or any corporation, partnership, joint venture, association, limited liability company, trust, unincorporated organization or other legal entity or a government or governmental entity.

     (f)    "*Sale Procedures Order*" means an order entered by the Bankruptcy Court in the Bankruptcy Case approving those procedures to be authorized and approved which shall govern the manner of the marketing and sale of the Assets.

     23.2    As used in this Agreement: (i) words in the singular shall be held to include the plural and vice versa, (ii) words of one gender shall be held to include the other genders as the context requires, (iii) the terms "hereof", "herein" and "herewith" and words of similar import shall, unless otherwise stated, be construed to refer to this Agreement and not to any particular provision of this Agreement, (iv) references to Section, paragraph, Exhibit and Schedule are references to the Sections, paragraphs, Exhibits and Schedules of this Agreement, unless otherwise specified, (v) section headings in this Agreement are solely for convenience of reference, and are not intended to be a part of or to affect the meaning or interpretation of this Agreement, (vi) the word "including" and words of similar import when used in this Agreement, shall mean "including, without limitation," unless otherwise specified, and (vii) the word "or" shall not be exclusive.

23.3    Each Party and its counsel have reviewed and revised this Agreement. The normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement or of any amendments or exhibits to this Agreement.

24.    <u>Miscellaneous</u>

24.1    This Agreement and the Schedules to this Agreement may not be amended except by an instrument in writing signed on behalf of each Party.

24.2    This Agreement, together with the Schedules and other agreements referred to in this Agreement, constitute the entire agreement between the Parties pertaining to the subject matter of this Agreement and supersede all prior and contemporaneous agreements, understandings, negotiations and discussions, whether oral or written, of the Parties regarding such subject matter.

24.3    All notices and other communications under this Agreement shall be in writing and shall deemed given if delivered personally or mailed by registered or certified mail, postage prepaid, return receipt requested (such mailed notice to be effective on the date such receipt is acknowledged) or delivered by an recognized overnight delivery system (such overnight notice to be effective on the date of receipt) as follows:

If to Buyer, addressed to:        Ram Realty Acquisitions, LLC
                                        4801 PGA Boulevard
                                        Palm Beach Gardens, FL 33418
                                        Attention:  Karen Geller Esquire
                                        Email:  kgeller@ramrealestate.com

With a copy to:                  Greenspoon Marder, P.A.
                                        200 East Broward Boulevard
                                        Suite 1800
                                        Fort Lauderdale, FL 33301
                                        Attention: John L. Shiekman, Esquire
                                        Email: john.shiekman@gmlaw.com

If to Seller, addressed to:        Kenneth A. Welt, Trustee
                                        1776 North Pine Island Road, Suite 101
                                        Plantation, FL 33322
                                        Email: kaw@trusteeservices.biz

With a copy to:                          Genovese Joblove & Battista, P.A.
                                         100 S.E. 2nd Street, Suite 4400
                                         Miami, Florida 33131
                                         Attention: Glenn D. Moses, Esq.
                                         Facsimile: (305) 349-2310
                                         Email: gmoses@gjb-law.com

or to such other place and with such other copies as either Party may designate as to itself by written notice to the others.

      24.4    This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Facsimile signatures shall be accorded the same enforcement rights as an original. Regardless of whether the transactions contemplated by this Agreement are consummated, each Party shall pay its or their own costs and expenses, including Legal Costs and investment banking, accounting, consulting, and other professional fees, incurred in connection with the negotiation, preparation, investigation and performance by such Party of this Agreement and the transactions contemplated under this Agreement.

      24.5    Time is of the essence with respect to each Party's obligations hereunder.

      24.6    This Agreement shall not be recorded by Buyer and, if recorded by Buyer, Seller may immediately terminate all of its obligations under this Agreement, and Buyer shall pay Seller's Legal Costs in removing this Agreement of record. The provisions of this Section 24.6 shall survive the Closing.

      24.7    If the last day of any time period provided for in this Agreement falls on a Saturday, Sunday or holiday, the last day shall be extended until the next business day that banks operating in Miami, Florida are open for business, but in no case will the extension be for more than three days. For purposes of this Agreement, "business day" shall mean any day other than a Saturday, a Sunday, or any other day on which banking institutions in Miami, Florida, are closed or are authorized to be closed, including all legal holidays.

      24.8    Notwithstanding any other provision of this Agreement, any representation, warranty or covenant of Seller contained in this Agreement that by its terms survives Closing or the termination of this Agreement, shall not survive the closing of the Bankruptcy Case.

      24.9    Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from county public health units.

      24.10    The determination that any covenant, agreement, condition or provision of this Agreement, which is not necessary to the enjoyment by either party of the benefit

contemplated herein, is invalid shall not affect the enforceability of the remaining covenants, agreements, conditions or provisions hereof and, in the event of any such determination, this Agreement shall be construed as if such invalid covenant, agreement, condition or provision were not included herein.

24.11    No failure or delay of either Party in the exercise of any right given to such Party hereunder shall constitute a waiver thereof unless the time specified herein for exercise of such right has expired, nor shall any single or partial exercise of any right preclude any other or further exercise thereof or of any other right.  The waiver of any breach hereunder shall not be deemed to be a waiver of any other or any subsequent breach hereof.

24.12    The rights and obligations of Buyer hereunder may be assigned to one or more affiliated entities without the consent of Seller, and to any unaffiliated third party with the prior written consent of Seller.  No assignment under this provision shall relieve Buyer of liability to Seller for amounts accruing under this Agreement.  This Agreement shall be binding upon, and shall inure to the benefit of, the successors and permitted assigns of the parties hereto.  The Parties neither intend to confer any benefit hereunder on any Person other than the parties hereto, or shall any such third party have any rights hereunder.

24.13    This Agreement shall be governed by, construed, interpreted and the rights of the Parties determined in accordance with the laws of the State of Florida without reference to its choice or conflicts of laws principles.  Each Party: (i) irrevocably submits to the jurisdiction of the Bankruptcy Court; (ii) waives any objection to laying venue in any such action or proceeding in the Bankruptcy Court; (iii) waives any objection that the Bankruptcy Court is an inconvenient forum or does not have jurisdiction over any Party; and (iv) agrees that service of process upon such Party in any such action or proceeding shall be effective if given in accordance with the notice provisions of this Agreement.

24.14    BUYER AND SELLER HEREBY EACH WAIVE THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS AGREEMENT.

25.    Property Investigations.  Buyer, its agents, employees and representatives shall have access to the Property at all reasonable times subsequent to the date of this Agreement and prior to the Closing or earlier termination of this Agreement with full right to: (a) inspect the Property, and (b) to conduct any and all inspections, investigations and tests thereon, including, but not limited to, hazardous waste studies, as Buyer may deem reasonably necessary.  All costs and expenses in connection with Buyer's investigations of the Property shall be at the sole cost of Buyer and shall be performed in a manner not to unreasonably interfere with the Seller's ownership of the Property and Seller's business operations.  Buyer shall remove or bond any lien of any type which attaches to the Property by virtue of any of Buyer's investigations.  Upon completion of any such investigations, Buyer shall restore and repair any damage to the Property. Buyer hereby indemnifies and holds Seller harmless from all loss, cost or expense, including, but not limited to, attorneys' fees and court costs resulting from Buyer's investigations in connection with the Property.

WITNESS the following signatures as of the date in the preamble.

BUYER:

RAM REALTY ACQUISITIONS, LLC, a Florida limited liability company

By:_____
     Keith L. Cummings, Manager
Date: January 26, 2015

SELLER:

_____
Kenneth A. Welt, as Chapter 7 Trustee of US CAPITAL/FASHION MALL, LLC, US CAPITAL HOLDINGS, LLC and MAPUCHE, LLC

Date:_____1/27/15_____

**EXHIBIT A**

**LEGAL DESCRIPTION**

[TO BE SUPPLIED WITHIN 10 DAYS FOLLOWING FULL
EXECUTION OF THE AGREEMENT]

## EXHIBIT B

## PERSONAL PROPERTY

[TO BE SUPPLIED WITHIN 10 DAYS FOLLOWING FULL
EXECUTION OF THE AGREEMENT]

# SCHEDULE A

# CONTRACTS

[TO BE SUPPLIED WITHIN 10 DAYS FOLLOWING FULL EXECUTION
OF THE AGREEMENT]

| CONTRACT PARTY | NATURE          OF CONTRACT/LEASE |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

## SCHEDULE B

## ASSUMED LIABILITIES

[TO BE SUPPLIED WITHIN 10 DAYS FOLLOWING FULL EXECUTION
OF THE AGREEMENT]

# EXHIBIT "B"

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**Fort Lauderdale Division**

In re:

US CAPITAL/FASHION MALL, LLC, et al.,        Case No.: 14-32819-JKO

                                             Chapter 7
            Debtors.
_____/           (Jointly Administered)

**ORDER (1) AUTHORIZING TRUSTEE TO SCHEDULE AUCTION SALE OF**
**FASHION MALL PROPERTY, (2) APPROVING BIDDING PROCEDURES AND**
**BREAKUP FEE IN CONNECTION WITH SALE, (3) APPROVING THE FORM AND**
**MANNER OF NOTICE OF SALE AND (4) SCHEDULING A FINAL HEARING TO**
<u>**APPROVE SALE**</u>

THIS MATTER came before the Court on February __, 2015 upon the Motion  of

Kenneth A. Welt, as Chapter 7 Trustee (the "Trustee") for US Capital/Fashion Mall, LLC, US

Capital Holdings, LLC and Mapuche, LLC (collectively, the "Debtors"), for the entry of an

Order (1) authorizing the Trustee to schedule an auction sale of the Debtors' real property, (2)

approving bidding procedures and breakup fee in connection with the auction, (3) approving the

form and manner of notice of sale, (4) scheduling a final hearing to approve sale, and (5) approving the sale of the Trustee's interest in the Debtors' real property, free and clear of liens, claims and encumbrances [ECF No. ___] (the "Motion").  The Court, having considered the Motion, the relief requested therein, and being otherwise advised in the premises, hereby

FINDS AND DETERMINES THAT:

A.      This Court has jurisdiction over this matter and over the property of the Debtors pursuant to 28 U.S.C. §§ 157(a) and 1334, and venue is proper in this district pursuant to 28 U.S.C. § 1408;

B.      This is a core proceeding pursuant to 28 U.S.C. § 157(b);

C.      Good and sufficient notice of the relief sought in the Motion has been given in accordance with Bankruptcy Rule 2002, and no other or further notice is or shall be required.  A reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to all parties-in-interest;

D.      The Sale Procedures and proposed Notice are appropriate and reasonably calculated to provide all interested parties with timely and proper notice thereof;

E.      The Sale Procedures set forth herein are fair, reasonable, and appropriate and are designed to maximize the recovery on the Debtors' assets;

F.      The Trustee's proposed marketing efforts and bidding process as described in the Motion and is fair and reasonable, and designed to fully expose the Fashion Mall Property to the market.

G.      The entry of this Order is in the best interests of the Debtors, their estates, creditors, and all other parties-in-interest.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

## I.    General Provisions

1.    The findings and conclusions set forth above constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

2.    The relief requested in the Motion is granted as set forth herein.

## II.    Sale Procedures

3.    The "Sale Procedures" as such term is used in this Order are as follows:

- Participation Requirements:  Unless otherwise ordered by the Court, in order to participate in the bidding process, an interested bidder must (a) wire into the trust account of Genovese Joblove & Battista, P.A., an escrow deposit of $2,400,000.00 no later than 5:00 p.m. on _____, 2015, which is five (5) business days prior to the scheduled auction (the "Bid Deadline"); (b) submit to Genovese Joblove & Battista, P.A. (i) a fully executed asset purchase agreement substantially in the form of the APA attached hereto as **Exhibit "A"** on or before the Bid Deadline (the effectiveness of such APA being contingent only upon the Qualified Bidder becoming the Successful Bidder pursuant to these procedures, subject only to Bankruptcy Court approval, with no due diligence or financing contingencies), with a purchase price of not less than $24,300,000.00, and (ii) a black-lined version of the APA to show any changes made by such bidder; and (c) submit to Genovese Joblove & Battista, P.A. such financial disclosures and documentation which demonstrate, in the Trustee's sole business judgment, the potential bidder's financial and other capabilities to consummate the sale.  A person who timely complies with these requirements shall have submitted a "Qualified Bid" and shall be deemed a "Qualified Bidder". The list of Qualified Bidders will not be shared with anyone prior to the Auction.

The Stalking Horse Bidder shall be deemed a Qualified Bidder.

- Auction:  In the event the Trustee receives a timely Qualified Bid, the Trustee will conduct an auction (the "Auction").  The Auction shall take place at the offices of Genovese, Joblove & Battista, P.A., 100 S.E. Second Street, 44th Floor, Miami, FL 33131, on _____, 2015, beginning at 10:00 a.m. ET, or such other time or place as the Trustee shall notify all Qualified Bidders.

3

- <u>Auction Procedures</u>:  At the Auction, the Trustee will identify the Qualified Bid which shall serve as the opening bid.  All Qualified Bidders shall be entitled to make any subsequent bids in increments of $100,000 (a "Subsequent Bid").  Bidding at the Auction shall continue until such time as the highest and best offer is determined by the Trustee in the exercise of his sole business judgment.  The Trustee reserves the right to modify the bidding increments or announce at the Auction additional procedural rules for conducting the Auction in his sole business judgment.

- For the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by the Stalking Horse Bidder), the Trustee will, at each round of bidding, give effect to the Break-Up Fee that may be payable to the Stalking Horse Bidder under the APA.

- Each Qualified Bidder's offer shall be irrevocable until the selection of the Successful Bidder and, if applicable, the Back-Up Bidder (as set forth in the APA), provided that if such bidder is selected as the Successful Bidder or the Back-Up Bidder, its offer shall remain irrevocable until the of closing of the sale to the Successful Bidder or the Back-Up Bidder.

- <u>Broker's Commissions</u>:   All broker commissions shall be in accordance with the terms and conditions of the CBRE Engagement Order.  The Debtors' bankruptcy estate shall not be liable for any other commissions.

- <u>Successful Bid</u>:  After the conclusion of the Auction, the Trustee shall submit the highest or best bid that has been accepted (the "Successful Bid") for approval by the Bankruptcy Court on _____, 2015, at 299 E. Broward Blvd., Room 301, Fort Lauderdale, FL 33301 (the "Sale Hearing").  The Qualified Bidder who has the Successful Bid presented for approval to the Court shall be referred to as the "Successful Bidder."  The closing of the transaction (the "Closing") shall take place on the later of (a) twenty (20) calendar after the entry of the Sale Order or (b) six (6) calendar days after the Sale Order is final and not subject to appeal (the "Closing Date"), or sooner as otherwise agreed to between the Successful Bidder and the Trustee provided that the Sale Order waives the 14 day stay pursuant to Fed. R. Bankr. P. 6004(h).

- The Successful Bidder must be prepared and must in fact consummate the purchase of the Fashion Mall Property in accordance with the APA.  Upon the failure of the Successful Bidder to consummate the closing of the purchase of the Fashion Mall Property because of a breach or failure on the part of the Successful Bidder, then the Trustee

4

may elect in his business judgment to close with the next highest or otherwise best Qualified Bidder to be the Successful Bidder (the "Back Up Bidder"). At the Sale Hearing, the Trustee intends to seek approval from the Court for the next highest or best bid (the "Back Up Bid"), which approval shall authorize the Trustee to consummate the Back Up Bid immediately after a default under the Successful Bid without further order of the Court. Promptly following the conclusion of the Sale Hearing, the Trustee shall return the deposits to each unsuccessful Qualified Bidder (except the Back Up Bidder whose deposit shall either be returned upon the closing of the sale to the Successful Bidder or applied to the purchase price in a closing with such Back Up Bidder).

- <u>As is/where is:</u>  The Property will be sold in its "as is", "where is" condition and with all faults, with no guarantees or warranties, express or implied.

4.      The Sale Procedures are hereby approved.  The Trustee is authorized to act in accordance with the Sale Procedures, which shall be binding upon all parties-in-interest in these cases.

5.      The <u>Auction</u> shall be held on _____, 2015, commencing at 10:00 a.m. Eastern Time at _____.

## III.   <u>Sale Hearing</u>

6.      The Sale Hearing shall be held before this Court on <u>April  , 2015</u> at <u> .m.</u> (Eastern Time), at the 299 E. Broward Blvd., Room 301, Fort Lauderdale, FL 33301.  The Sale Hearing may be adjourned or rescheduled without notice other than by an announcement of such adjournment at the Sale Hearing.  The Sale Hearing shall be an evidentiary hearing on all matters relating to the proposed sale.

## IV.   <u>Objections</u>

7.      Objections,  if any, to the Sale, must (a) be in writing; (b) set forth the nature of the objector's claims against or interest in the Debtors' estates, and the basis for the objection and the specific grounds therefore; (c) comply with the Bankruptcy Rules and the Local

Bankruptcy Rules for the Southern District of Florida and all Orders of this Court; (d) be filed with the Court and served upon the Trustee, the Stalking Horse Bidder, and the United States Trustee for the Southern District of Florida, so as to be RECEIVED no later than 5:00 pm (Eastern) two (2) business days prior to the Sale Hearing (the "Objection Deadline").  Only timely filed and served responses, objections, or other pleadings will be considered by this Court at the Sale Hearing.  The failure of any person or entity to timely file its objection shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, the Sale or the consummation and performance of the APA.

**IV.**   **Notice**

8.       The Sale Notice is approved in all respects.

9.       Notice of the Sale Procedures, the Auction, the Sale Hearing and the remainder of the relief requested in the Motion, as described in the Motion, shall be good and sufficient notice thereof, and any requirements for other or further notice shall be waived and dispensed with pursuant to Bankruptcy Rules 2002, 6004, 6006 and 9007 and pursuant to this Court's powers under section 105 of the Bankruptcy Code.

###

Submitted by:

Glenn D. Moses, Esq.
Genovese Joblove & Battista, P.A.
*Counsel to Kenneth A. Welt, Trustee*
100 Southeast Second Street, Suite 4400
Miami, FL 33131
Telephone:  (305) 349-2300
Facsimile:   (305) 349-2310
Email:  gmoses@gjb-law.com

Copy to: Glenn Moses, Esq.
(Attorney Moses is directed to serve a conformed copy of this Order on all parties in interest)