**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

|  |  |
|---|---|
| In re: | CHAPTER 7 |
|  | Case No. 14-32819 (JKO) |
| US CAPITAL/FASHION MALL, LLC, et al., |  |
|  | Jointly Administered |
|  | Case Nos. 14-32819-JKO. |
| Debtors. | 14-32822-JKO, 14-32827-JKO |

_____/

**RESPONSE TO ORDER DIRECTING DUANE MORRIS TO SUBMIT PAPERS[1]**

**I.   INTRODUCTION**

Duane Morris made a mistake using this Court's CM/ECF system.  One of its paralegals uploaded a proposed Amended Agreed Order to E-orders mistakenly believing that she was merely filing it electronically and that the CM/ECF system would email it to all counsel.  Kevin Vance did not know about the mistake; he did not even know that the filing had been made in his name.   In fact, no one at Duane Morris, including the paralegal who uploaded the Amended Agreed Order, knew that it had been uploaded to E-orders.  That, in a nutshell, is why:

> (a)      "Kevin Vance's CM-ECF filing privileges should not be revoked,"
>
> (b)      "Kevin Vance [did not] upload[] an amended agreed order . . . directly contrary to the oral representation made at the hearing on January 27, 2015 that the amended agreed order was not submitted via E-orders," and
>
> (c)      "the representations in [ECF 191] and [ECF 192] . . . are not willfully false and misleading."

January 28, 2015 Order [DE 208], ¶ 2.

---

[1] The complete title of the Order is Order Discharging Order to Show Cause [ECF 107] in Part, Directing Duane Morris LLP to File Papers, and Sanctioning Lida Rodriguez-Taseff in the Interim.  [DE 208]

Duane Morris explains in detail below and in the affidavits filed with this Response how the mistaken upload occurred and why no one knew about it.  The explanation shows that the mistake was a one-off error caused by the confluence of unique events that will not be repeated.  Duane Morris respectfully suggests that the error is not sanctionable.  To err is human.[2]

## II.    WHAT HAPPENED

1.    <u>**Kevin Vance did not upload the proposed Amended Agreed Order**</u>.    Kevin Vance qualified for filing privileges in this Court and received them on January 28, 2014.  See accompanying Second Affidavit of Kevin Vance Afft at ¶ 6.  He authorized the use of his credentials twice in these consolidated cases.  The first time was on October 23, 2014 when, with his permission, Duane Morris paralegal Dawn Perez filed the Certificate of Service on Ganglu's Stay Relief Motion [DE 23 in *Mapuche*, 14-32827].  Second Vance Afft ¶ 11.  The second time was on October 28, 2014 when, with Mr. Vance's permission, Ms. Perez filed *Ex Parte* Motions to Appear *Pro Hac Vice* for Mr. Vance's out-of-state partners Rudolph DiMassa and Lawrence Kotler in *Mapuche* [DE 33 and 34, respectively, and in *U.S. Capital/Fashion Mall*, No. 14-32819 DE 30 and 31, respectively].    *Id*.  In both instances, Mr. Vance had reviewed the papers in advance of their filing, and in respect of the *Pro Hac Vice* applications, had assured himself that Mr. DiMassa and Mr. Kotler had each reviewed and approved his application.  *Id.* ¶ 10.

After October 28, 2014, Mr. Vance neither used, nor authorized anyone else to use, his filing credentials in these jointly administered cases.  He was not consulted before the November 3 filings were made in his name or advised of the filings afterward.  *Id.* ¶¶ 12, 13; *and see* accompanying Second Affidavit of Rebecca Guillou ¶ 9.  After Mr. Vance read the OSC, he immediately spoke with Ms. Perez who told him that she had been out of the office November 3 and that Rebecca Guillou had made the filings.  Second Vance Afft ¶ 14.

---

[2] Alexander Pope, 18th century English poet.

2.    **Duane Morris's investigation**.    After the Order to Show Cause ("OSC") was issued, Duane Morris's inside General Counsel Michael Silverman, together with outside counsel retained for the purpose, investigated the issues the OSC raised.    Undersigned counsel is familiar with the Court's Guidelines on submitting orders, and was concerned that someone had uploaded the proposed Agreed Order or Amended Agreed Order to E-orders, even though the OSC did not so state.    Accordingly, as part of the investigation, outside counsel asked everyone involved whether any order had been uploaded to E-orders.    All answered confidently that it had not been.    Hence, Duane Morris had no reason to believe that an upload to E-orders had occurred.

Based on its investigation, Duane Morris's written Response to the OSC averred, and at the January 27 hearing Duane Morris's counsel argued:

(i)     that Duane Morris had submitted Ganglu's proposed order directly to the Court via email to Mr. Brownell, exactly like debtors' counsel had submitted debtors' proposed order, and had not uploaded it to E-orders;

(ii)    the proposed order was an exhibit to a stipulation between two parties and it was implicit that it was "agreed" between those parties only, and the amended agreed order expressly identified the two agreeing parties;

(iii)   that Ms. Rodriguez-Taseff failed to register and misapprehended the Court's oral ruling continuing the stay in effect until the November 27 hearing, and the Court's ruling, on Ganglu's motion for stay relief; and

(iv)    the omission of one of debtors' lawyers from the two emails was inadvertent and promptly cured, and two other lawyers for the debtors were copied on both emails when they were originally sent.

Both in its written response and at the January 27 hearing, Duane Morris argued that its filing of the agreed and amended agreed orders on CM/ECF and its copying of counsel for each party on its emails to Mr. Brownell evidenced its lack of intent to deceive, which was further evidenced by the fact that it had not uploaded the agreed or amended agreed order to E- orders.

3

Hence, the Court's announcement, late in the January 27 hearing, that Duane Morris had uploaded the Amended Agreed Order to E-orders was a jaw-dropping shock to Duane Morris and its counsel.  Immediately after court adjourned, outside counsel again asked the Duane Morris lawyers and paralegal who were at the hearing whether they had uploaded the Amended Agreed order to E-orders or knew anything about it.  Again, each of them answered confidently that he or she had not uploaded the Order and did not know it had been uploaded.

Mr. Silverman worked with Duane Morris's Information Services Department to determine whether any information was available that would help to identify who had uploaded the Amended Agreed Order.  The I.S. Department sent Mr. Silverman two reports that provided the answer.  One was a list of Duane Morris users who accessed the Bankruptcy Court's CM/ECF website on November 3, the other a log of Duane Morris users who had accessed the Amended Agreed Order on Duane Morris's document management system on November 3.

The first report showed that Ms. Guillou was the only person at Duane Morris who had been on the CM/ECF site on November 3, and that she was on the site periodically through the day for a total of more than thirty-six minutes, including for three minutes, thirty-nine seconds starting at 14:54 (which of course includes the crucial time of 14:56:40).  The second report showed that Ms. Guillou was the only Duane Morris employee who accessed the Amended Agreed Order on the document management system that day.  Copies of the relevant extracts from the two I.S. Department reports (the first showing Ms. Guillou on the CM/ECF system for 3'39" starting at 14:54 on November 3, the second showing Ms. Guillou accessing the Amended Agreed order in Duane Morris's document management system between 2:43:57 and 2:52:37 on November 3) are Composite Exhibit 1 hereto.

The information on the reports Mr. Silverman received from Duane Morris's I.S. Department accorded with the court record of what was filed.  In her first affidavit filed in

response to the OSC, Ms. Guillou attested that, at Ms. Rodriguez-Taseff's instruction, she filed the Stipulation and proposed Agreed Order on the Court's CM/ECF filing system at 12:06 [DE 38] and the Stipulation and proposed Amended Agreed Order at 4:46 [DE 39]. The first I.S. Department report confirms that Ms. Guillou was on the site at those times. *See* Composite Ex. 1. Ms. Guillou also attested that she did not upload anything to E-orders, but the redacted E-orders Transaction Report attached as Exhibit 1 to the Court's January 28 Order [DE 208] shows that the proposed Amended Agreed Order was "routed to CRD-Inbox folder" (that is, emailed to the Court's Courtroom Deputy as an "E-order") at 14:56:40 on 11/03.

With the reports from the I.S. Department, Mr. Silverman and Duane Morris's outside counsel again interviewed Ms. Guillou and otherwise further investigated the upload. These facts became clear: Ms. Guillou (1) did not remember uploading the Amended Agreed Order; (2) believed that the Court's CM/ECF system would generate an email to all counsel of record attaching anything she filed, including an uploaded order; and (3) had not advised any Duane Morris lawyer that she had uploaded the Amended Agreed Order.

**3.** **Uploading an Order on CM/ECF**. Neither Ms. Rodriguez-Taseff nor anyone else at Duane Morris told Ms. Guillou to upload the Amended Agreed Order as an E-order or otherwise to transmit the Amended Agreed Order to the Court without notifying the other parties. Second Guillou Afft ¶ 15. According to Ms. Guillou's first Affidavit, filed in response to the OSC, she did not upload any order to E-orders. That statement was incorrect, but not intentionally so. Ms. Guillou did not intend to upload the Amended Agreed Order to E-orders, and until Mr. Silverman and outside counsel showed her the reports from Duane Morris's I.S. department, she did not realize that she had. *Id.* ¶ 11.

Ms. Guillou is a veteran litigation paralegal with extensive experience electronically filing documents in Florida state courts and the United States District Court for the Southern

5

District of Florida, but she had never been on the Bankruptcy Court's ECF-filing site before November 3, 2014. *Id.* ¶¶ 4, 6. Dawn Perez, Ms. Rodriguez-Taseff's other paralegal, had been handling all the bankruptcy filings, but was absent from the office November 3, 2014, so Ms. Rodriguez-Taseff asked Ms. Guillou to file (not to upload to E-orders) the Stipulation with the Agreed Order. *Id.* ¶ 6. The Trustee's counsel then asked Ms. Guillou to file the Amended Agreed Order. *Id.* ¶ 7 and Ex. 1.

Because she had previously filed documents electronically in District Court, Ms. Guillou believed she could navigate an electronic filing in bankruptcy court. *Id.* ¶ 6. It turned out that Ms. Guillou's confidence in her ability to figure out the Court's CM/ECF filing system was misplaced. Her lack of experience with the system and misunderstanding of its terminology led to mistakes.

For example, Ms. Guillou believed that anything she filed on the system would be disseminated to counsel of record electronically. *Id.* ¶ 15. And she assumed that orders to be submitted directly to the judge would be delivered via some method other than the Court's CM/ECF system. *Id.* That assumption was born of Ms. Guillou's experience in District Court, where proposed orders are e-filed as PDF attachments but orders ready to be signed are emailed to the judge in Word format. *Id.*

In addition, Ms. Guillou filed the Stipulation for Relief From the Automatic Stay twice, once as a separate document without an attachment [ECF #38], and then again with the attachment, a proposed Agreed order [ECF #38-1]. The Court prefers exhibits to be filed with the main document unless they are voluminous. The Stipulation should have been filed one time, with the exhibit attached. See accompanying Affidavit of Connie Graver at ¶ 3. And Ms. Guillou filed a Certificate of Service [ECF #39] with the Stipulation, the proposed Agreed Order, and proposed Amended Agreed Order. Pursuant to Local Rule 9004-1(D), "documents filed

with the court shall not have as an attachment any document already filed in the case or proceeding." *See id*.

Michael Silverman arranged for Ms. Guillou to do a mock filing exercise on the Bankruptcy Court's CM/ECF system with himself, undersigned counsel, and Connie Graver, Stearns Weaver's bankruptcy e-filing expert, present. This mock exercise occurred on January 28, 2015. Based on Ms. Guillou's mock filing (described in detail below), Duane Morris and undersigned counsel both concluded that the Amended Agreed Order was uploaded to E-orders due solely to operator error.

In Ms. Guillou's presence, Ms. Graver accessed the main page of the Court's CM/ECF system, and displayed it on a large screen in the conference room where the exercise took place. It is shown below.



Ms. Guillou was asked to demonstrate how she filed the documents in Bankruptcy Court. She replied that the screen did not look familiar and she did not remember what she did on the site. Ms. Graver suggested that she click "Bankruptcy" on the banner atop the screen and

demonstrate how she would file a stipulation.  Ms. Guillou did so, and got the following Bankruptcy Events screen.



Ms. Guillou said she assumed that she would have clicked "Other."  She did that, but the drop-down menu that opened did not include an option for Stipulation.  She then returned to the Bankruptcy Events screen pictured above and tried "Motions/Applications."  Its drop-down menu included an option for "Stipulation."  Based on her experience filing electronically in the District Court, she knew how to attach a PDF of the Stipulation and complete the filing (but, this being an exercise only, did not actually file it).

Ms. Guillou was then asked to demonstrate how she filed the Amended Agreed Order.  She said she could not remember, but guessed that she would have clicked "Order Upload" on the Bankruptcy Events screen.  She clicked on it and got the following screen.



She then clicked on "Upload Single" and got the following screen.



Ms. Guillou did not know what to do next.  Ms. Graver suggested that she type the case number in the box following those words.  She did so, and got this screen.



Ms. Guillou said that the screen did not look familiar and that she did not know what to do.  Ms. Graver suggested typing "38," the DE number of the Stipulation, in the box after "Related document number."  Ms. Guillou did so, got the following screen,



and opened the drop-down menu, which is displayed above.  Ms. Guillou said that the screen looked "a little familiar" but she did not understand the options on the drop-down menu and did not know which one she chose.  She guessed wrong and then asked Ms. Graver which option she had chosen.   Ms. Graver told her that she had picked "Order on Pleadings (No Hearing Required)."  Ms. Guillou did not recall seeing or selecting that option.

Ms. Guillou was then asked whether she got electronic confirmations after uploading the orders.  She said that a screen indicated that the system had processed the filing, but she did not save or print it because she thought it was just a notification (like she got for the Stipulation) that the orders had been sent electronically to all parties.

Ms. Graver then showed Ms. Guillou how to do an Order Query.  She opened the "Reports" screen pictured below.



She then clicked on the "Order Query" option, which opened the screen, pictured below, that shows the status of uploaded orders.



Ms. Graver pointed out the order next to the number 38 in the Related Doc # column. Ms. Guillou said it was now obvious to her that she had uploaded the Amended Agreed Order. She also said that she did not realize she had uploaded the Amended Agreed Order, that she had intended to file the Amended Agreed Order in the case docket like she had filed the original Agreed Order, and that she believed she had done so.

**4.    The Inadvertent Mis-Direction of the Amended Agreed Order.**

As detailed in Duane Morris's papers in response to the OSC, there was a lot of activity the afternoon of November 3. Just after noon, Ms. Guillou filed the Stipulation for Stay Relief (first without the proposed Agreed Order [DE 38], and then with it [DE 38-1]) on the Court's CM/ECF system. At 2:02 PM, the Trustee's counsel emailed revisions to the proposed Agreed Order that Ms. Guillou had already filed [DE 38-1]. The ensuing email exchange between Ms.

Guillou and Glenn Moses, counsel for the Trustee, is illuminating.  It is quoted in full below and is Exhibit 1 to the Second Guillou Affidavit.

> Mr. Moses, at 2:02 PM:  Please see the revised proposed order in redline and clean.  Please submit the clean version as the Amended Exhibit A to the stip.
>
> Ms. Guillou, at 2:16 PM:  Prior to my filing the Agreed Order, can you please clarify a few things for me.  This morning we were told by Michael [Schuster] to use the Mapuche case caption for the Agreed Order (Case No.: 14-32827) is this no longer correct?  Am I to file the amended exhibit A in both US Capital Fashion Mall, LLC case (14-32819) and also in the Mapuche case?
>
> Mr. Moses, at 2:41 PM:  The cases are being administratively consolidated, so there will be just one caption (once the consolidation order is entered).  I further revised the proposed order (attached) to reflect that the stay relief motion was filed in just Mapuche, but will technically apply to all 3 debtors (which you would probably want anyway).
>
> I would file, however, the amended exhibit in the case it was originally filed in.
>
> (Sorry for any confusion).
>
> Ms. Guillou, at 2:49 PM:  Thank you for clarifying.  I will file the Amended Agreed Order shortly.

"Shortly" turned out to be seven minutes later.  As the Court pointed out at the January 27 hearing and as the E-Orders Transaction Report attached as Exhibit 1 to the January 28 Order shows, at 14:56:40, Ms. Guillou uploaded the Amended Agreed Order to E-orders and identified the Stipulation [DE 38] as the related document.  Then, at 4:46 PM, Ms. Guillou filed, on the Court's CM/ECF system, a Certificate of Service [DE 39], which attached the previously filed Stipulation and proposed Agreed Order together with the proposed Amended Agreed Order.

There are a couple of noteworthy facts about those filings.  The first is the format of the Amended Agreed Order Ms. Guillou filed.  Based on her experience in the District Court, Ms. Guillou attached a PDF of the Amended Agreed Order, not a Word version.  In District Court, Ms. Guillou filed proposed orders as PDFs but emailed Word versions of orders to be signed directly to the judge.  Second Guillou Afft ¶ 14.

12

The second is the effect of Ms. Guillou's 4:46 PM filing, on the Court's CM/ECF system, of the Certificate of Service [DE 39]. The Certificate's attachments included the Amended Agreed Order that Ms. Guillou had uploaded, to the CM/ECF system, two hours earlier. The CM/ECF system automatically emailed notice of the filing to all counsel of record, thus curing Ms. Guillou's unwitting filing error two hours earlier. The next day, November 4, Mr. Brownell (to whom, under this Court's procedures, the uploaded Amended Agreed Order was redirected by the Courtroom Deputy) asked Ms. Rodriguez-Taseff whether she would be submitting, and Ms. Rodriguez-Taseff had Ms. Guillou email to Mr. Brownell, Ganglu's "competing order." Hence, the Court did not sign the Amended Agreed Order, and no one was prejudiced by Ms. Guillou's filing error.

Although she got it wrong in part, Ms. Guillou did her best to use the Court's CM/ECF system correctly to accomplish the filings. Unfortunately, the system did not help her. The "Order Upload" option does not advise the user that uploaded orders are "E-orders" routed directly to the Courtroom Deputy's email in-box, or that the order will not appear on the docket, or that notice of the uploading of the order will not be circulated to all counsel. Ms. Guillou was not aware of any of the foregoing. Second Guillou Afft ¶¶ 14, 15.

In sum, Ms. Guillou's uploading the Amended Agreed Order to E-orders rather than filing it on the Court's CM/ECF system was the unintentional but (in retrospect) unsurprising result of a series of unforeseen events. Duane Morris's regular bankruptcy court e-filer was out of the office; Ms. Guillou, an experienced e-filer, had never before filed a document on this Court's CM/ECF system; just minutes before she accessed the site to file the Amended Agreed Order on the CM/ECF system, the Trustee's counsel had written to her that she should "file the amended exhibit"; and Ms. Guillou's selection of "Order Upload" and referencing the Stipulation to which it was an attachment, was a natural and rational way to file the Amended

Agreed Order.  It is regrettable on many levels that Ms. Guillou's choice of "Order Upload" resulted in an inadvertent E-orders upload, but that outcome was accidental and unintended.

As obvious as it now is that Ms. Guillou inadvertently got the filing mechanics of the CM/ECF system wrong, it is equally obvious that she had no reason or motive to direct the Amended Agreed Order to E-orders.  In fact, she did not realize that she was doing, or had done, that.  Ms. Rodriguez-Taseff had instructed her to file the Stipulation and original Agreed Order, and Ms. Guillou did so.  [DE 38, 38-1]; Second Guillou Afft ¶ 6.  And just minutes before Ms. Guillou mis-directed the Amended Agreed Order, Mr. Moses had advised her to "file" it.  *See* Ex. 1 to the Second Guillou Affidavit.

Ms. Guillou's contemporaneously-kept time records show her state of mind regarding her November 3 filings on the CM/ECF system.  Ms. Guillou reported her November 3 time as "file and serve all pleadings."  *See* Ex. 2 to the Second Guillou Affidavit.  "Serve" reflected her belief that the CM/ECF system would email everything she filed on CM/ECF that day, including the Amended Agreed Order, to all counsel of record.

**5.  Duane Morris Learns in Court on January 27 that the Amended Agreed Order Was Submitted to E-orders.**

Duane Morris's lawyers learned that the Amended Agreed Order had been uploaded to E-orders when the Court so announced late in the January 27 hearing.  Their failure to have realized it sooner is understandable.

First, when an order is uploaded to E-orders, the CM/ECF system does not generate email notice of the filing.  Hence, Mr. Vance did not receive an email that would have alerted him that someone had used his credentials to upload the Amended Agreed Order.

Second, during the investigation following the issuance of the OSC, Duane Morris and its outside counsel specifically addressed whether the Amended Agreed Order had been uploaded to E-orders, and everyone who might have done so denied having done so.  Because Duane Morris

was investigating the possibility, but did not know, that the Amended Agreed Order had been uploaded, it had no reason to doubt what its employees and partners had said.

Third, neither Duane Morris nor its outside counsel (including the undersigned, who has devoted nearly 23 years of practice to bankruptcy law) knew that it was possible to generate a report of CM/ECF filings by a credentialed user.  Thus, that avenue of investigation was unavailable.

### III.  SINCE THE HEARING (AND BEFORE)

At the January 27 hearing, the Court criticized Duane Morris for having done little about the issues raised in the OSC.  In Duane Morris's defense, the firm did not believe (and still does not believe) that any of its lawyers or paralegals intended to deceive anyone.  But what the firm learned on January 27 and its investigation of the errant filing has led it to make prophylactic and other changes designed to prevent a recurrence.  Mr. Silverman has required that all bankruptcy court filings originating in the Miami office must be routed to one of the experienced bankruptcy court e-filers in the firm's Boca Raton or Philadelphia office.  Mr. Silverman has also directed that Miami paralegals Dawn Perez and Ms. Guillou take the training on this Court's CM/ECF system necessary to become credentialed filers.  Both have successfully completed that training.

In addition, Mr. Silverman has reminded all personnel in Duane Morris's Miami and Boca Raton offices that before a document may be electronically filed, the filer must receive the direct approval of the attorney whose credentials are being used for such filing, and that the lawyer whose credentials are being used must review and approve the papers being filed.  He has further instructed that attorneys with filing credentials are to share them only with those who are required to have such credentials in order to assist that attorney with the filing he or she is making.  And firm management has reiterated to the firm's partners that experienced bankruptcy practitioners must be directly involved in all matters pending in bankruptcy courts and that such

experienced practitioners must participate in all court appearances and filings.

Ms. Rodriguez-Taseff has researched live CLE programs, has already attended a number of programs and earned CLE credit hours in ethics, and plans to attend several others in February which, when added to the credits she has already earned, will bring her up to 21.75 hours of CLE credits in ethics.  She has identified a number of live CLE programs that will be available in March and will attend as many as necessary as early in the month as possible to earn the additional 8.25 hours of CLE credits in ethics to comply with the  requirement in the Court's January 28 Order.

On December 3, 2014, Mr. Vance changed his CM/ECF password for this Court's website and has shared it with his secretary and paralegal only.  Second Vance Afft ¶ 17.  He has also restricted access to his other e-filing passwords to his secretary and paralegal.  *Id*.  Further, he has directed his secretary and paralegal to refrain from sharing any of his filing credentials for any court with anyone else in the firm without his prior approval.  *Id*.    Finally, though Local Rule 2090-(1)(A)(3) provides Mr. Vance additional time - to the end of his three-year CLE reporting cycle, or January 31, 2016 - to complete 12 bankruptcy CLE credit hours, Mr. Vance has recently fulfilled that requirement.  *Id*. ¶ 5.

More broadly, Duane Morris budgets more than $1,000,000 to underwrite external CLE programs, and conducts an extensive internal CLE program.  For the years 2010-2014, the firm presented 286 programs in-house (an average of 57 per year), many of which awarded CLE credit in ethics as well as in the substantive area of the program.  The firm also conducts regular programs at office meetings, practice group meetings, and firm-wide meetings on subjects relating to ethics, professionalism, practice management, and like matters, which qualify for ethics CLE credit in many jurisdictions.  Last year alone, Duane Morris conducted twenty-six such programs.  In addition, Duane Morris is also a "Privileged Member" of the Practicing Law

Institute. That status provides Duane Morris's lawyers access to hundreds of PLI-sponsored seminars and web programs at no additional cost.

Duane Morris also encourages its lawyers to participate in pro bono activities. In 2014, Duane Morris's U.S.-based lawyers provided 16,574 pro bono hours and in 2013, 18,180 hours. About ten percent of the 2013 hours were devoted to providing legal assistance to human trafficking survivors, and more than 500 of those hours assisted veterans of the armed services who were seeking disability benefits, compensation for combat injuries, and other forms of aid. The firm founded in Philadelphia, and continues to support, both financially and with pro bono hours, the Consumer Bankruptcy Assistance Project, which provides free legal services to low income individuals. In addition, firm lawyers regularly donate their time and legal talents to small business owners, artists, and nonprofit organizations that serve the communities in which the firm's offices are located and further economic development in low-income neighborhoods.

In short, Duane Morris is a principled law firm. It maximizes opportunities for continuing legal education and it encourages its lawyers to give back to their communities (and, of course, to work hard to provide the best possible representation of the firm's clients).

### IV. THE LAW DOES NOT SUPPORT SANCTIONS HERE.

As Duane Morris briefed in its Response to Order to Show Cause, a bankruptcy court's discretion to sanction a lawyer is circumscribed. "Sanctions under Bankruptcy Rule 9011 are warranted when (1) the papers are frivolous, legally unreasonable or without factual foundation, or (2) the pleading is filed in bad faith or for an improper purpose." *In re Mroz*, 65 F.3d 1567, 1572 (11th Cir. 1995). A bankruptcy court may impose sanctions under its inherent authority to manage its affairs and to insure the orderly disposition of cases only if it finds that the lawyer acted in bad faith. *In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1273 (11th Cir. 2009). A bad faith finding "is warranted where an attorney knowingly or recklessly raises a frivolous argument . . .

[or] delay[s] or disrupt[s] the litigation or hamper[s] enforcement of a court order." *Id.* at 1273-74 (internal quotation marks and citations omitted).

The Eleventh Circuit has described bad faith as "'not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will.'" *United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999) (quoting *Black's Law Dictionary* 139 (6th ed. 1990)). Even when it was "very clear" to the Eleventh Circuit "that the bankruptcy court was outraged at the events that transpired before it," it reversed a sanctions order because it was unclear "whether this outrage" was occasioned by the bankruptcy court's belief that the lawyers had acted in "bad faith" or "negligently and without due diligence." *In re Mroz*, 65 F.3d at 1576.

The circumstances of the uploading of the Amended Agreed Order to E-orders do not amount to bad faith. Mr. Vance provided his filing credentials to Ms. Perez, an experienced litigation paralegal, and was actively involved in her filing of documents on October 23 and October 28. He was unaware that Ms. Guillou had obtained his filing credentials and was using them. While a local rule violation may have resulted,[3] Mr. Vance's conduct was not willfully deceptive, i.e., not in bad faith.

Courts in this circuit routinely decline to impose sanctions for non-compliance with a local rule, especially where there is no prejudice to the opposing party. *See, e.g.*, *Kowalski v. Jackson Nat'l Life Ins. Co.*, No. 12-60597-CIV, 2014 WL 4101567, at *4 (S.D. Fla. Aug. 20, 2014) (granting a motion for attorneys' fees filed earlier than permitted by Local Rule 7.3 ("Attorneys Fees and Costs") because "no prejudice [was] suffered from the alleged local rules

---

[3] Under Court Guideline CG-5, "Guidelines for Preparing, Submitting and Serving Orders," Part 1, ¶ 1, only "local form orders, routine ex-parte or uncontested orders and orders for matters heard at a nonemergency hearing" qualify for uploading as E-orders. Local Rules 5005-4(D) and 9011-4(A)(2)(a) make Mr. Vance responsible for Ms. Guillou's inadvertent upload to E-orders.

18

violation"); *Morris v. Arizona Bev. Co., LLC*, No. 03-60907 Civ, 2005 WL 5544961, at *9 (S.D. Fla. Feb. 9, 2005) (granting a motion for attorneys' fees not supported by all of the materials specified in Local Rule 7.3 because "plaintiff has not demonstrated that defendant's non-compliance prejudiced him in any way"); *In re Reams*, No. 01-70935-LMK, 2005 WL 3273708, at *4 (Bankr. N.D. Fla. Sept. 28, 2001) (holding that a lawyer's refusal to communicate with opposing counsel by phone or email in violation of Local Rule requiring communication between lawyers was a "disappointment" but "not . . . sanctionable"); *Maale v. Kirchgessner*, No. 08-801310-CIV, 2011 WL 1549058, at *5 (S.D. Fla. 2011) (holding that it is within the court's discretion to determine that non-compliance with local rule on motion for attorneys' fees did not warrant denial of motion); *Sachi v. Labor Ready Southeast, Inc.*, No. 09-82388-CIV, 2010 WL 3259916, at *3 n.11 (S.D. Fla. Aug. 18, 2010) (refusing to deny a motion for failure to comply with the local rule requiring a conference with opposing counsel before filing a motion).

These instances of one-time, non-prejudicial and therefore non-sanctionable violations of local rules contrast with the repeated or flagrant violations of local rules that justify a finding of bad faith and the imposition of sanctions. *See, e.g., In re Whitehill*, 515 B.R. 687, 692 (Bankr. M.D. Fla. 2014) (sanctioning lawyer for repeated violation of local rule requiring lawyers to obtain and keep, for four years, original signatures from clients on certain electronically-filed documents); *In re DeSantis*, 395 B.R. 162, 171 (M.D. Fla. 2008) (sanctioning lawyer in part for failing to follow local rule requiring continued representation of client until seeking and obtaining court's consent to withdraw).

A lawyer is, of course, responsible for securing his passwords and for supervising non-lawyers who work with him. However, a good faith filing error by a non-lawyer using a lawyer's log-in and password that does not prejudice any party does not warrant a sanction against the lawyer. The cases that sanction a lawyer for an improper filing under his or her

electronic filing account involve other, bad faith, conduct by the lawyer whose credentials were used.

For example, in *In re Ruehmann*, No. 13-103, 2013 WL 4779064, at *1-2 (Bankr. N.D. Cal. Sept. 5, 2013), the bankruptcy court expressed its "concern[] that Ruehmann has lent his ECF login and password to nonlawyer 'case managers.' and that ***something more than lax supervision of an employee has been going on***") (emphasis added). *See also In re Bay*, No. 13-80149-G3-13, 2013 WL 3089049, at *2-3 (Bankr. S.D. Tex. June 18, 2013) (revoking lawyer's ECF filing privileges and awarding other sanctions where lawyer provided her login and password to an organization to enable the organization to file cases under her name as the attorney of record for the debtor even though she never met her so-called clients); *In re Black*, No. 11-18491-B-7, 2012 WL (Bankr. E.D. Cal. July 30, 2012) (sanctioning a lawyer whose "busy legal practice and outside business interests," 2012 WL at *4, resulted in his secretary's filing of pleadings using his login credentials without his review or knowledge, *id*. at *7, and who falsely "represented that his paralegal had prepared the documents, but that [he] had approved their content and filing," *id*. at *2).

This situation is markedly different. Rebecca Guillou erroneously but inadvertently uploaded an order via E-orders without realizing what she had done. Neither Mr. Vance nor Ms. Rodriguez-Taseff nor anyone else directed Ms. Guillou to upload any order via E-orders. Neither Mr. Vance nor Ms. Rodriguez-Taseff was notified about the upload and thus neither had an opportunity to attempt to withdraw the order to remedy the error.

## V. CONCLUSION

Sanctions are unwarranted against Kevin Vance. He did not know his filing credentials were used to file the Amended Agreed Order, he did not know it had been uploaded to E-orders,

and he has taken steps to assure that no future filing will be made with his filing credentials without his previous permission and specific approval.

Further sanctions are also unwarranted against Lida Rodriguez-Taseff. She did not direct Ms. Guillou to submit the Amended Agreed Order or any other document to the Court without notice to the other parties; she did not know that the Court's CM/ECF system had routed the Amended Agreed Order directly to the Judge's Courtroom Deputy without notice to the other parties; and she did not know that the Amended Agreed Order had been submitted to the Court in any manner other than by filing on its CM/ECF system on November 3 and by emailing those documents to the Court's law clerk with notice to counsel for all other parties on November 4.

Dated: February 13, 2015

Respectfully submitted,

We hereby certify that we are admitted to the Bar of the United States District Court for the Southern District of Florida and are in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

STEARNS WEAVER MILLER WEISSLER
  ALHADEFF & SITTERSON, P.A.
*Counsel for Duane Morris, LLP*
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone:     (305) 789-3200
Facsimile:     (305) 789-3395

By:   */s/ Drew M. Dillworth*
          DREW M. DILLWORTH
          Florida Bar No. 167835
          ddillworth@stearnsweaver.com
          DAVID C. POLLACK
          Florida Bar No. 362972
          dpollack@stearnsweaver.com

**CERTIFICATE OF SERVICE**

I CERTIFY that on February 13, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case, as indicated on the attached Service List.

By:    _/s/ Drew M. Dillworth_____
DREW M. DILLWORTH

## **SERVICE LIST**

**Electronic Mail Notice List**

The following is the list of parties who are currently on the list to receive email notice/service for this case, and should have been served by Notice of Electronic Filing generated by the Court's CM/ECF system:

- Joaquin J Alemany
  joaquin.alemany@hklaw.com
  jose.casal@hklaw.com

- Valerie Barton Barnhart
  vbarnhart@kelleykronenberg.com
  jgardella@kelleykronenberg.com
  sosber@kelleykronenberg.com

- Becket and Lee LLP
  notices@becket-lee.com

- Richard E Berman
  reb@bermankean.com
  deannel@bermankean.com

- Timothy R Bow
  tbow@mrthlaw.com
  jgarey@mrthlaw.com
  ycandia@mrthlaw.com
  mrthbkc@gmail.com
  ecfnotices@mrthlaw.com

- Daniel DeSouza
  ddesouza@desouzalaw.com

- Drew M Dillworth
  ddillworth@stearnsweaver.com
  mfernandez@stearnsweaver.com
  bank@stearnsweaver.com
  rross@stearnsweaver.com
  dillworthcdp@ecf.epiqsystems.com
  cgraver@stearnsweaver.com

- Jeffrey R Eisensmith
  je@eisensmithlaw.com

- Michael J Friedman
  mfriedman@vlplaw.com

- John C Hanson
  jhanson@barthet.com

- Jason Z. Jones
  jjones@joneslawpa.com

- Mark A Levy
  mark.levy@brinkleymorgan.com
   sandra.gonzalez@brinkleymorgan.com
  brinkleymorganecf@gmail.com

- Nicole L Levy
  nllevy@duanemorris.com
   LRTaseff@duanemorris.com
  dperez@duanemorris.com
  YArnavatParga@duanemorris.com
  shmarder@duanemorris.com
  DiMassa@duanemorris.com
  LJKotler@duanemorris.com

- Charles H Lichtman
  clichtman@bergersingerman.com
   lwebster@bergersingerman.com
  efile@bergersingerman.com

- Brett D Lieberman
  blieberman@messana-law.com
   thurley@messana-law.com
  emair@messana-law.com
  nbarrus@messana-law.com
  tmessana@messana-law.com
  tmessana@bellsouth.net

- Jerry M Markowitz
  jmarkowitz@mrthlaw.com
   rrubio@mrthlaw.com
  mrthbkc@gmail.com
  gruiz@mrthlaw.com
  ycandia@mrthlaw.com

- Thomas M. Messana
  tmessana@messana-law.com
  emair@messana-law.com
  blieberman@messana-law.com
  thurley@messana-law.com
  tmessana@bellsouth.net
  nbarrus@messana-law.com
  ekates@bakerlaw.com
  jmooremaley@messana-law.com
  tzeichman@messana-law.com

- Glenn D Moses
  gmoses@gjb-law.com
   gjbecf@gjb-law.com
  chopkins@gjb-law.com
  vlambdin@gjb-law.com

- Office of the US Trustee
  USTPRegion21.MM.ECF@usdoj.gov

- Chad S Paiva
  chad.paiva@gmlaw.com
  katrina.bankert@gmlaw.com

- Alan J. Perlman
  aperlman@ralaw.com
  mhannau@ralaw.com

- Grace E. Robson
  grobson@mrthlaw.com
  jgarey@mrthlaw.com
  mrthbkc@gmail.com
  sramirez@mrthlaw.com

- Michael E Rothenberg
  michael.rothenberg@hklaw.com
  joaquin.alemany@hklaw.com

- Michael L Schuster
  mschuster@gjb-law.com
  gjbecf@gjb-law.com
  mchang@gjb-law.com
  scomer@gjb-law.com

- Steven J. Solomon
  steven.solomon@gray-robinson.com
  lnegron@gray-robinson.com
  lauren.rome@gray-robinson.com
  Amador.Ruiz-Baliu@gray-robinson.com

- Kevin E. Vance
  kevance@duanemorris.com
  cmackey@duanemorris.com
  pnmendoza@duanemorris.com

- Kenneth A Welt
  fl10@ecfcbis.com
  pacerfilings@gmail.com
  kaw@trustesolutions.net
  court@trusteeservices.biz

# EXHIBIT 1

| SessionID | UserID | Username | FirstName | LastName | ResourceID | ResourceName | GroupName | Location | IPAddress | EventDate | Duration | Page Count | Cost | LogType | OS | Browser | Client Version | URL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1971374 | 4571 | RLGuillou | Rebecca | Guillou | 200 | ECF Document Filing and Free Sites - Bypasses Auto-Login | (P) Real Estate-Dynamic | Miami | 10.114.2.14 | 11/3/2014 14:54 | 0:03:39 | 17 | 0 | Normal | Windows 7 Enterprise | Internet Explorer | 8.4.1.0 | -- |
| 1971374 | 4571 | RLGuillou | Rebecca | Guillou | 200 | ECF Document Filing and Free Sites - Bypasses Auto-Login | (P) Real Estate-Dynamic | Miami | 10.114.2.14 | 11/3/2014 14:54 | 0:03:39 | 17 | 0 | Normal | Windows 7 Enterprise | Internet Explorer | 8.4.1.0 | https://ecf.flsb.uscourts.gov/cgi-bin/login.pl |
| 1971374 | 4571 | RLGuillou | Rebecca | Guillou | 200 | ECF Document Filing and Free Sites - Bypasses Auto-Login | (P) Real Estate-Dynamic | Miami | 10.114.2.14 | 11/3/2014 14:54 | 0:03:39 | 17 | 0 | Normal | Windows 7 Enterprise | Internet Explorer | 8.4.1.0 | https://ecf.flsb.uscourts.gov/cgi-bin/login.pl |
| 1971374 | 4571 | RLGuillou | Rebecca | Guillou | 200 | ECF Document Filing and Free Sites - Bypasses Auto-Login | (P) Real Estate-Dynamic | Miami | 10.114.2.14 | 11/3/2014 14:54 | 0:03:39 | 17 | 0 | Normal | Windows 7 Enterprise | Internet Explorer | 8.4.1.0 | https://ecf.flsb.uscourts.gov/cgi-bin/DisplayMenu.pl?BankruptcyEvents&id=1690097 |
| 1971374 | 4571 | RLGuillou | Rebecca | Guillou | 200 | ECF Document Filing and Free Sites - Bypasses Auto-Login | (P) Real Estate-Dynamic | Miami | 10.114.2.14 | 11/3/2014 14:54 | 0:03:39 | 17 | 0 | Normal | Windows 7 Enterprise | Internet Explorer | 8.4.1.0 | https://ecf.flsb.uscourts.gov/cgi-bin/DisplayMenu.pl?poUpload&id=1690097 |
| 1971374 | 4571 | RLGuillou | Rebecca | Guillou | 200 | ECF Document Filing and Free Sites - Bypasses Auto-Login | (P) Real Estate-Dynamic | Miami | 10.114.2.14 | 11/3/2014 14:54 | 0:03:39 | 17 | 0 | Normal | Windows 7 Enterprise | Internet Explorer | 8.4.1.0 | https://ecf.flsb.uscourts.gov/cgi-bin/Dispatch.pl?poUploadSingle |
| 1971374 | 4571 | RLGuillou | Rebecca | Guillou | 200 | ECF Document Filing and Free Sites - Bypasses Auto-Login | (P) Real Estate-Dynamic | Miami | 10.114.2.14 | 11/3/2014 14:54 | 0:03:39 | 17 | 0 | Normal | Windows 7 Enterprise | Internet Explorer | 8.4.1.0 | https://ecf.flsb.uscourts.gov/cgi-bin/Dispatch.pl?119129886490556 |
| 1971374 | 4571 | RLGuillou | Rebecca | Guillou | 200 | ECF Document Filing and Free Sites - Bypasses Auto-Login | (P) Real Estate-Dynamic | Miami | 10.114.2.14 | 11/3/2014 14:54 | 0:03:39 | 17 | 0 | Normal | Windows 7 Enterprise | Internet Explorer | 8.4.1.0 | https://ecf.flsb.uscourts.gov/cgi-bin/Dispatch.pl?520953542303013 |
| 1971374 | 4571 | RLGuillou | Rebecca | Guillou | 200 | ECF Document Filing and Free Sites - Bypasses Auto-Login | (P) Real Estate-Dynamic | Miami | 10.114.2.14 | 11/3/2014 14:54 | 0:03:39 | 17 | 0 | Normal | Windows 7 Enterprise | Internet Explorer | 8.4.1.0 | https://ecf.flsb.uscourts.gov/cgi-bin/Dispatch.pl?879481216053947 |
| 1971374 | 4571 | RLGuillou | Rebecca | Guillou | 200 | ECF Document Filing and Free Sites - Bypasses Auto-Login | (P) Real Estate-Dynamic | Miami | 10.114.2.14 | 11/3/2014 14:54 | 0:03:39 | 17 | 0 | Normal | Windows 7 Enterprise | Internet Explorer | 8.4.1.0 | https://ecf.flsb.uscourts.gov/cgi-bin/Dispatch.pl?841023885595574 |
| 1971374 | 4571 | RLGuillou | Rebecca | Guillou | 200 | ECF Document Filing and Free Sites - Bypasses Auto-Login | (P) Real Estate-Dynamic | Miami | 10.114.2.14 | 11/3/2014 14:54 | 0:03:39 | 17 | 0 | Normal | Windows 7 Enterprise | Internet Explorer | 8.4.1.0 | https://ecf.flsb.uscourts.gov/cgi-bin/DisplayMenu.pl?BankruptcyEvents&id=1690097 |
| 1971374 | 4571 | RLGuillou | Rebecca | Guillou | 200 | ECF Document Filing and Free Sites - Bypasses Auto-Login | (P) Real Estate-Dynamic | Miami | 10.114.2.14 | 11/3/2014 14:54 | 0:03:39 | 17 | 0 | Normal | Windows 7 Enterprise | Internet Explorer | 8.4.1.0 | https://ecf.flsb.uscourts.gov/cgi-bin/DisplayMenu.pl?poUpload&id=1690097 |
| 1971374 | 4571 | RLGuillou | Rebecca | Guillou | 200 | ECF Document Filing and Free Sites - Bypasses Auto-Login | (P) Real Estate-Dynamic | Miami | 10.114.2.14 | 11/3/2014 14:54 | 0:03:39 | 17 | 0 | Normal | Windows 7 Enterprise | Internet Explorer | 8.4.1.0 | https://ecf.flsb.uscourts.gov/cgi-bin/Dispatch.pl?poUploadSingle |
| 1971374 | 4571 | RLGuillou | Rebecca | Guillou | 200 | ECF Document Filing and Free Sites - Bypasses Auto-Login | (P) Real Estate-Dynamic | Miami | 10.114.2.14 | 11/3/2014 14:54 | 0:03:39 | 17 | 0 | Normal | Windows 7 Enterprise | Internet Explorer | 8.4.1.0 | https://ecf.flsb.uscourts.gov/cgi-bin/Dispatch.pl?717964016328615 |
| 1971374 | 4571 | RLGuillou | Rebecca | Guillou | 200 | ECF Document Filing and Free Sites - Bypasses Auto-Login | (P) Real Estate-Dynamic | Miami | 10.114.2.14 | 11/3/2014 14:54 | 0:03:39 | 17 | 0 | Normal | Windows 7 Enterprise | Internet Explorer | 8.4.1.0 | https://ecf.flsb.uscourts.gov/cgi-bin/Dispatch.pl?523247938270493 |
| 1971374 | 4571 | RLGuillou | Rebecca | Guillou | 200 | ECF Document Filing and Free Sites - Bypasses Auto-Login | (P) Real Estate-Dynamic | Miami | 10.114.2.14 | 11/3/2014 14:54 | 0:03:39 | 17 | 0 | Normal | Windows 7 Enterprise | Internet Explorer | 8.4.1.0 | https://ecf.flsb.uscourts.gov/cgi-bin/Dispatch.pl?562282516935895 |
| 1971374 | 4571 | RLGuillou | Rebecca | Guillou | 200 | ECF Document Filing and Free Sites - Bypasses Auto-Login | (P) Real Estate-Dynamic | Miami | 10.114.2.14 | 11/3/2014 14:54 | 0:03:39 | 17 | 0 | Normal | Windows 7 Enterprise | Internet Explorer | 8.4.1.0 | https://ecf.flsb.uscourts.gov/cgi-bin/Dispatch.pl?755776889249 4695 |
| 1971374 | 4571 | RLGuillou | Rebecca | Guillou | 200 | ECF Document Filing and Free Sites - Bypasses Auto-Login | (P) Real Estate-Dynamic | Miami | 10.114.2.14 | 11/3/2014 14:54 | 0:03:39 | 17 | 0 | Normal | Windows 7 Enterprise | Internet Explorer | 8.4.1.0 | https://ecf.flsb.uscourts.gov/cgi-bin/Dispatch.pl?789251971563942 |

EXHIBIT
1

| D | Database | Description | Email Sent | Doc. Num | Ve |
|---|---|---|---|---|---|
| 📄 | DM1 | Ganglu – Amended Agreed Order re: Stay Relief (G Moses' version) | | 5,124,644 | |

**History - Document: 5124644_1.DOCX (Ganglu – Amended Agreed Order re: Stay Relief (G Moses' version))**

| User | Application | Activity | Date – Time | Duration | Pages Prin... | Location | Comments |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

**REDACTED**

| User | Application | Activity | Date – Time | Duration | Pages Prin... | Location | Comments |
|---|---|---|---|---|---|---|---|
| RLGUILLOU | WINWORD | Checkin | 11/3/2014 4:11:39 P | 0:0:6 | 0 | MIA-MXL910 | |
| RLGUILLOU | OUTLOOK | Checkout | 11/3/2014 4:11:33 P | 0:0:0 | 0 | MIA-MXL910 | |
| RLGUILLOU | WINWORD | Checkin | 11/3/2014 2:52:37 P | 0:5:34 | 0 | MIA-MXL910 | |
| RLGUILLOU | WINWORD | Modify | 11/3/2014 2:52:36 P | 0:0:0 | 0 | MIA-MXL910 | |
| RLGUILLOU | Microsoft Word | Print | 11/3/2014 2:51:58 P | 0:0:0 | 0 | MIA-MXL910 | |
| RLGUILLOU | Microsoft Word | Print | 11/3/2014 2:51:58 P | 0:0:0 | 0 | MIA-MXL910 | |
| RLGUILLOU | OUTLOOK | Checkout | 11/3/2014 2:47:03 P | 0:0:0 | 0 | MIA-MXL910 | |
| RLGUILLOU | OUTLOOK | Mail | 11/3/2014 2:44:20 P | 0:0:0 | 0 | MIA-MXL910 | |
| RLGUILLOU | WINWORD | Checkin | 11/3/2014 2:44:11 P | 0:0:12 | 0 | MIA-MXL910 | |
| RLGUILLOU | WINWORD | Checkout | 11/3/2014 2:43:59 P | 0:0:0 | 0 | MIA-MXL910 | |
| RLGUILLOU | WINWORD | Checkin | 11/3/2014 2:43:59 P | 0:0:2 | 0 | MIA-MXL910 | |
| RLGUILLOU | WINWORD | Checkout | 11/3/2014 2:43:57 P | 0:0:0 | 0 | MIA-MXL910 | |
| RLGUILLOU | WINWORD | Create | 11/3/2014 2:43:57 P | 0:0:0 | 0 | MIA-MXL910 | |